### ADJUSTABLE RATE RIDER

#### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this __1st__ day of __April, 2006__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to _____
__American Brokers Conduit__

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

__46020 Southeast Edgewick Road, North Bend, WA  98045__

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __125.000%__ OF THE ORIGINAL AMOUNT (OR $ __393,750.00__ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

#### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of __1.000__ % until __April 30, 2006__, and the initial monthly payment provided for in the Note will be based on this rate. Commencing __May 1, 2006__ I will pay interest at a yearly rate of __7.188__ %. Thereafter, the interest rate I will pay may change in accordance with Section 4 of the Note.

Page 1 of 5                                    AHM2029R(MULT) (0106)

Doc # 944735/Image: 944735.prn  App# 0001230600

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may further change on the _____1st_____ day of _____June, 2006_____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

(B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____Three and 300 Thousandths_____ percentage points _____3.300_____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

(D) Interest Rate Limit

My interest rate will never be greater than _____9.950_____ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

(E) Payment Change Dates

Effective every year commencing _____June 1st, 2007_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly

Doc # 944736/Image: 944736.prn   App# 0001230600

Notice of Removal - 38

payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying.  This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the maturity date in substantially equal payments.  Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion.  For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate.  For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to _____125.000%_ of the principal amount originally borrowed.  In the event my unpaid Principal would otherwise exceed that _____125.000%_ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation.  The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the _____Five_____ anniversary of the due date of the first monthly payment, and on that same day every _____Five_____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold Note Holder responsible for any damages to me which may result from Note

AHM2029R(MULT) (0106)

Doc # 944737/Image: 944737.prn  App# 0001230600

Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.  Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

AHM2029R(MULT) (0106)

Doc # 944738/Image: 944738.prn  App# 0001230600

**Notice of Removal - 40**

_____(Seal)          _____(Seal)
John D. Knecht               -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                             -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                             -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                             -Borrower                                -Borrower

Page 5 of 5                              AHM2029R(MULT) (0106)

Doo # 944739/Image: 944739.prn   App# 0001230600

# EXHIBIT 2

### ADJUSTABLE RATE NOTE

#### (12-MTA Index - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN   125.000%   OF THE ORIGINAL AMOUNT (OR $ 393,750.00   ).  MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

April 1, 2006          Bellevue              Washington
                                    (City)                        (State)

46020 Southeast Edgewick Road, North Bend, WA  98045
                            (Property Address)

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 315,000.00        plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is   American Brokers Conduit
                            . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2.  INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay interest at a yearly rate of   1.000 % until   April 30, 2006  , and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate"). Commencing   May 1, 2006        , I will pay interest at a yearly rate of   7.188 % (the "Subsequent Rate").  Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note.  The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month.  In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on   the 1st   of each month beginning on   June 1, 2006      .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on   May 1, 2046    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at   PO Box 660029, Dallas, TX  75266-0029
                            , or at a different place if required by the Note Holder.

Page 1 of 6

Doc # 944746/Image: 944746.prn          App# 0001230600

AHM-2030N(MULT) (0106)

**Notice of Removal - 43**

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ __796.50__ , unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the __1st__ day of __June, 2006__ , and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ __Three and 300 Thousandths__ percentage points __3.300__ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than __Nine and 950 Thousandths__ _____ percentage points __9.950__ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing __June 1, 2007__ , and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of

Doc # 944747/Image: 944747.prn          Page 2 of 6          App# 0001230600          AHM-2030N(MULT)(0106)

**Notice of Removal - 44**

my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___125.000%___ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___125.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

**Notice of Removal - 45**

I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:**  I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn.  Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be ___5.000___ % of my overdue payment of Principal and interest.  I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law.  Those expenses include, for example, reasonable attorneys' fees.

Notice of Removal - 46

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates

the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

### WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| John D. Knecht           -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

Doc # 944751/Image: 944751.prn          Page 6 of 6          App# 0001230600          AHM-2030N(MULT) (0106)

**Notice of Removal - 48**

# EXHIBIT 3

ABN #252308-9048-01

When recorded mail to:
McCarthy & Holthus, LLP
1770 Fourth Avenue
San Diego, CA 92101

Prepared by:
McCarthy & Holthus, LLP

**2010 0412 000136**
MCCARTHY
PAGE-001 OF 002
04/12/2010 09:16
KING COUNTY, WA
ADT     15.00

M&H# WA-10-24963

Space above this line for recorders use

Loan # ******0519
MERS#100024200012306003

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to Deutsche Bank National Trust Company, as Trustee for GSR Mortgage Loan Trust 2006-0A1, Mortgage Pass-Through Certificates, Series 2006-0A1 all beneficial interest under that certain Deed of Trust dated 04/01/2006 executed by John D. Knecht, an unmarried man recorded as Instrument No. 20060410001855 on 04/10/2006, in the Official Records of the County Recorder of King County, Washington, describing land therein as: 46020 Southeast Edgewick Road, North Bend, Washington 98045, with a legal description, attached hereto as exhibit "A".

Together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated: April 1, 2010

Mortgage Electronic Registration Systems, Inc as nominee for American Brokers Conduit

_Michelle C_

Michelle Halyard
Name
Title:     Vice President

State of            Florida
                                        ss
County of           Duval

On 4/1/2010 (date) before me Brenda L Frazier (Insert name of Notary Public and Title) the undersigned Notary Public, personally appeared Michelle Halyard who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me the he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed he instrument.

I certify under PENALTY of PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

_Brenda L. Frazier_
Signature

Printed Name   Brenda L Frazier
Notary commission
expiration date   4-30-2013

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission #DD835641
Expires:   APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

(Seal)

EXHIBIT "A"

Beginning at the Southwest corner of the Northeast quarter of Section
25, Township 23 North, Range 8 East, W.M., in King County, Washington;
THENCE East on a quarter line, 76.5 feet to Northerly margin of county
road;
THENCE following said margin Easterly 50 feet to the true point of
beginning;
THENCE following said margin Easterly 150 feet;
THENCE North 50°45' West 360 feet to center line of Christmas Creek;
THENCE following said center line Westerly to a point that bears North
44° West from the true point of beginning;
THENCE South 44° East 480 feet to true point of beginning.

Situate in the County of King, State of Washington.



# EXHIBIT 4

**Electronically Recorded**
**20100916000214**
SIMPLIFILE                    AST              15.00
Page 001 of   002
09/16/2010 10:27
King County, WA

WHEN RECORDED MAIL TO AND
RECORDING REQUESTED BY:

Fidelity National Title Insurance
Company
17592 E. 17th Street, Suite 300
Tustin, CA 92780

Trustee Sale No. 10-10230-6 .        Client Reference No. 0031070519

### APPOINTMENT OF SUCCESSOR TRUSTEE

**NOTICE IS HEREBY GIVEN** that FIDELITY NATIONAL TITLE INSURANCE COMPANY, a corporation

formed under RCW 61.24(b), whose address is 701 Fifth Avenue Suite 3040, Seattle, WA 98104, is

appointed successor trustee under that certain deed of trust in which JOHN D. KNECHT, AN

UNMARRIED MAN, was the grantor, and FIDELITY NATIONAL TITLE COMPANY OF WASHINGTON,

was the original Trustee, and MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT, was the

original Beneficiary, which deed of trust was dated April 1, 2006, and recorded on April 10, 2006, as

Instrument No. 20060410001855 of Official Records in the office of the Recorder of King County, WA, it to

have all the powers of said original trustee, effective forthwith.

**IN WITNESS WHEREOF**, the undersigned beneficiary has hereunto set his hand; if the undersigned is a

corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized

officer(s).

Dated: September 14, 2010



Deutsche Bank National Trust Company, as Trustee for GSR
Mortgage Loan Trust 2006-0A1, Mortgage Pass-Through Certificates,
Series 2006-0A1 by American Home Mortgage Servicing Inc. as
attorney in fact.

CINDI ELLIS, ASST VICE PRESIDENT

STATE OF CALIFORNIA

COUNTY OF ORANGE )

On _____9/14/10_____, before me, Kraig M. Kirtley, Notary Public, personally appeared CINDI
ELLIS who proved to me on the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that she executed the same in her
authorized capacity, and that by her signature on the instrument the person, or the entity upon
behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

Witness my hand and official seal

Kraig M. Kirtley, Notary Public

KRAIG M. KIRTLEY
Commission # 1832689
Notary Public - California
Orange County
My Comm. Expires Feb 19, 2013

# EXHIBIT 5

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

FIDELITY NATIONAL TITLE INSURANCE
COMPANY
17592 E. 17th Street, Suite 300
Tustin, CA 92780

**Electronically Recorded**
**20101026000419**
SIMPLIFILE                    NTS              65.00
Page 001 of   004
10/26/2010 10:59
King County, WA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Loan No: 0031070519 APN: 2523089048                    TS No: 10-10230-6

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I. NOTICE IS HEREBY GIVEN that on January 28, 2011, 10:00 AM, at the 4th Ave. entrance to the King County Administration Building, 500 4th Avenue, Seattle, WA, Fidelity National Title Insurance Company, the undersigned Trustee will sell at public auction to the highest and best bidder, payable, in the form of cash, or cashiers' check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of King, State of Washington, to-wit:

See Property Description Attached Hereto

which is subject to that certain Deed of Trust dated April 1, 2006, recorded on April 10, 2006, as Instrument No. 20060410001855 of Official Records in the office of the Recorder of King County, WA from JOHN D. KNECHT, AN UNMARRIED MAN as Grantor(s), to FIDELITY NATIONAL TITLE COMPANY OF WASHINGTON, as Trustee, to secure an obligation in favor of MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as Beneficiary.

More commonly known as 46020 SE EDGEWICK RD, NORTH BEND, WA

II. No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrowers' or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III. The default(s) for which this foreclosure is made is/are as follows:
Failure to pay when due the following amounts which are now in arrears:

### PAYMENT INFORMATION

| From | To | Number of Payments | Monthly payment | Total |
|------|----|--------------------|-----------------| ------|
| 02/01/2010 | 01/28/2011 | 12 | $1,462.64 | $17,551.68 |

### LATE CHARGE INFORMATION

| From | To | Number of Payments | Monthly payment | Total |
|------|----|--------------------|-----------------| ------|
| 02/01/2010 | 01/28/2011 | 12 | $49.47 | $593.64 |

**Notice of Removal - 56**

**PROMISSORY NOTE INFORMATION**

Note Dated:                                April 1, 2006
Note Amount:                          $315,000.00
Interest Paid To:                      January 1, 2010
Next Due Date:                        February 1, 2010

IV. The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of $359,975.83, together with interest as provided in the Note from the January 1, 2010, and such other costs and fees as are provided by statute.

V. The above described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute.  Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on January 28 ,2011.  The defaults referred to in Paragraph III must be cured by January 17 ,2011, (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before  January 17 ,2011 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank.  The sale may be terminated any time after the  January 17,2011 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI. A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

ADDRESS

46020 SE EDGEWICK RD
NORTH BEND, WA 98045

46020 SOUTHEAST EDGEWICK ROAD
NORTH BEND, WA 98045

by both first class and certified mail on September 21, 2010, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII. The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above described property.

IX. Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.  Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060;

SALE INFORMATION CAN BE OBTAINED ON LINE AT www.fidelityasap.com/
AUTOMATED SALES INFORMATION PLEASE CALL 714-259-7850

DATED:  10/21/2010

FIDELITY NATIONAL TITLE INSURANCE COMPANY
17592 E. 17th Street, Suite 300
Tustin, CA 92780
Phone No: 714-508-5100

Lisa Bradford, Authorized Signature

STATE OF CALIFORNIA:
COUNTY OF ORANGE :

On 10/21/2010 before me, Shena Marie La Rue, the undersigned, a Notary Public in and for said county,
personally appeared Lisa Bradford who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Shena Marie La Rue # 1807664
My Commission Expires July 27, 2012



SHENA MARIE LA RUE
Commission # 1807664
Notary Public - California
Orange County
My Comm. Expires Jul 27, 2012

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF **KING**, STATE OF **WASHINGTON**, AND IS DESCRIBED AS FOLLOWS:

SITUATE IN THE CITY OF NORTH BEND, COUNTY OF KING, STATE OF WASHINGTON.

BEGINNING AT THE SOUTHWEST CORNER OF THE NORTHEAST QUARTER OF SECTION 25, TOWNSHIP 23 NORTH, RANGE 8 EAST, W.M.; IN KING COUNTY, WASHINGTON:

THENCE EAST ON A QUARTER LINE, 76.5 FEET TO NORTHERLY MARGIN OF COUNTY ROAD:

THENCE FOLLOWING SAID MARGIN EASTERLY 50 FEET TO THE TRUE POINT OF BEGINNING:

THENCE FOLLOWING SAID MARGIN EASTERLY 150 FEET:

THENCE NORTH 50° 45` WEST 360 FEET TO CENTER LINE OF CHRISTMAS CREEK:

THENCE FOLLOWING SAID CORNER CENTER LINE WESTERLY TO A POINT THAT BEARS NORTH 44° WEST FROM THE TRUE POINT OF BEGINNING:

THENCE SOUTH 44° EAST 480 FEET TO TRUE POINT OF BEGINNING.

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

# EXHIBIT 6

**Electronically Recorded**
**20120607000806**
SIMPLIFILE                           DTS                    63.00
Page 001 of   002
06/07/2012 11:19
King County, WA

WHEN RECORDED MAIL TO
Fidelity National Title Insurance Company
1920 Main Street, Suite 1120
Irvine, CA  92614

TS No: 10-10230-9A

Parcel Number: 2523089048

## NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE

JOHN D. KNECHT, AN UNMARRIED MAN was the original grantor, and Fidelity National Title Insurance Company is the duly appointed successor trustee (the "Trustee"), and MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT was the original  beneficiary under that certain Deed of Trust recorded April 10, 2006, as Instrument No. 20060410001855 of Official Records in the office of the Recorder of King County, Washington (the "Deed of Trust), and covering property more particularly described as follows:

SITUATE IN THE CITY OF NORTH BEND, COUNTY OF KING, STATE OF WASHINGTON.

BEGINNING AT THE SOUTHWEST CORNER OF THE NORTHEAST QUARTER OF SECTION 25, TOWNSHIP 23 NORTH, RANGE 8 EAST, W.M., IN KING COUNTY, WASHINGTON:

THENCE EAST ON A QUARTER LINE, 76.5 FEET TO NORTHERLY MARGIN OF COUNTY ROAD:

THENCE FOLLOWING SAID MARGIN EASTERLY 50 FEET TO THE TRUE POINT OF BEGINNING:

THENCE FOLLOWING SAID MARGIN EASTERLY 150 FEET:

THENCE NORTH 50° 45' WEST 360 FEET TO CENTER LINE OF CHRISTMAS CREEK:

THENCE FOLLOWING SAID CORNER CENTER LINE WESTERLY TO A POINT THAT BEARS NORTH 44° WEST FROM THE TRUE POINT OF BEGINNING:

THENCE SOUTH 44° EAST 480 FEET TO TRUE POINT OF BEGINNING.

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

The undersigned Trustee hereby discontinues the Trustee's Sale set by the Notice of Trustee's Sale recorded  on September 14, 2011, under Auditors # 20110914000641 of Official Records of King County, Washington.

This discontinuance shall not be construed a waiving of any breach or default under the above referenced deed of trust, or as impairing any right or remedy thereunder, or as modifying or altering in any respect any of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election to not allow the sale to be made pursuant to the above referenced Notice of Trustee's Sale.

DATED: June 5, 2012

Fidelity National Title Insurance Company, Trustee

_____

Juan Enriquez, Authorized Signature

State of California            )ss.

County of Orange               )ss

On June 5, 2012, before me, Stephanie Islas , Notary Public, personally appeared  Juan Enriquez, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Stephanie Islas  # 1973360

My Commission Expires March 26, 2016

STEPHANIE ISLAS
Commission # 1973360
Notary Public - California
Orange County
My Comm. Expires Mar 26, 2016

# EXHIBIT 7

**Electronically Recorded**
**20110914000641**

SIMPLIFILE                NTS                66.00
Page 001 of   005
09/14/2011 10:07
King County, WA

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

FIDELITY NATIONAL TITLE INSURANCE
COMPANY
1920 Main Street, Suite 1120,
Irvine, CA 92614

581615
Loan No: 0031070519 APN: 2623089048

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: 10-10230-6

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I. NOTICE IS HEREBY GIVEN that on December 16, 2011, 10:00 AM, at the 4th Ave. entrance to the King County Administration Building, 500 4th Avenue, Seattle, WA, Fidelity National Title Insurance Company, the undersigned Trustee will sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of King, State of Washington, to wit:

See Property Description Attached Hereto

which is subject to that certain Deed of Trust dated April 1, 2006, recorded on April 10, 2006, as Instrument No: 20060410001855 of Official Records in the office of the Recorder of King County, WA from JOHN D. KNECHT, AN UNMARRIED MAN as Grantor(s) ,to FIDELITY NATIONAL TITLE COMPANY OF WASHINGTON, as Trustee, to secure an obligation in favor of MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as Beneficiary, the beneficial interest in which was assigned to Deutsche Bank National Trust Company, as Trustee for GSR Mortgage Loan Trust 2006-0A1, Mortgage Pass-Through Certificates, Series 2006-0A1, under an Assignment recorded under Auditor's File No 20100412000136..

More commonly known as 46020 SOUTHEAST EDGEWICK ROAD, NORTH BEND, WA

II. No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrowers' or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III. The default(s) for which this foreclosure is made is/are as follows:
Failure to pay when due the following amounts which are now in arrears:

|  | | PAYMENT INFORMATION | | |
|---|---|---|---|---|
| From | To | Number of Payments | Monthly payment | Total |
| 02/01/2010 | 12/16/2011 | 23 | $1,462.64 | $33,640.72 |

|  | | LATE CHARGE INFORMATION | | |
|---|---|---|---|---|
| 02/01/2010 | 12/16/2011 | 23 | $49.47 | $1,137.81 |

**Notice of Removal - 64**

## PROMISSORY NOTE INFORMATION

| | |
|---|---|
| Note Dated: | April 1, 2006 |
| Note Amount: | $315,000.00 |
| Interest Paid To: | January 1, 2010 |
| Next Due Date: | February 1, 2010 |

IV. The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of $359,975.83, together with interest as provided in the Note from the January 1, 2010, and such other costs and fees as are provided by statute.

V. The above described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute.  Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on December 16 ,2011.  The defaults referred to in Paragraph III must be cured by December 5 ,2011, (11 days before the sale date) to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before  December 5 ,2011 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank.  The sale may be terminated any time after the December 5,2011 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI. A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

ADDRESS

46020 SE EDGEWICK RD
NORTH BEND, WA 98045

46020 SOUTHEAST EDGEWICK ROAD
NORTH BEND, WA 98045

by both first class and certified mail on September 21, 2010, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII. The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above described property.

IX. Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections If they bring a lawsuit to restrain the sale pursuant to RCW.61.24.130.  Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants.  After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**Notice of Removal - 65**

SALE INFORMATION CAN BE OBTAINED ON LINE AT www.lpsasap.com
AUTOMATED SALES INFORMATION PLEASE CALL 714.730.2727

DATED:  09/12/2011

FIDELITY NATIONAL TITLE INSURANCE COMPANY
1920 Main Street, Suite 1120,
Irvine, CA 92614
Phone No: 949-252-4300

_____
Juan Enriquez Authorized Signature

STATE OF CALIFORNIA:
COUNTY OF ORANGE :

On 09/12/2011 before me, Lorena Enriquez, the undersigned, a Notary Public in and for said county,
personally appeared Juan Enriquez who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Lorena Enriquez # 1807200
My Commission Expires July 21, 2012

LORENA ENRIQUEZ
Commission # 1807200
Notary Public - California
Orange County
My Comm. Expires Jul 21, 2012

**Notice of Removal - 66**

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF KING, STATE OF WASHINGTON, AND IS DESCRIBED AS FOLLOWS:

SITUATE IN THE CITY OF NORTH BEND, COUNTY OF KING, STATE OF WASHINGTON.

BEGINNING AT THE SOUTHWEST CORNER OF THE NORTHEAST QUARTER OF SECTION 25, TOWNSHIP 23 NORTH, RANGE 8 EAST, W.M., IN KING COUNTY, WASHINGTON:

THENCE EAST ON A QUARTER LINE, 765 FEET TO NORTHERLY MARGIN OF COUNTY ROAD:

THENCE FOLLOWING SAID MARGIN EASTERLY 50 FEET TO THE TRUE POINT OF BEGINNING:

THENCE FOLLOWING SAID MARGIN EASTERLY 150 FEET:

THENCE NORTH 50° 45` WEST 360 FEET TO CENTER LINE OF CHRISTMAS CREEK:

THENCE FOLLOWING SAID CORNER CENTER LINE WESTERLY TO A POINT THAT BEARS NORTH 44° WEST FROM THE TRUE POINT OF BEGINNING:

THENCE SOUTH 44° EAST 480 FEET TO TRUE POINT OF BEGINNING:

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

Unofficial Document

Re: TS#: 10-10230-6

## RESIDENT OF PROPERTY SUBJECT TO FORECLOSURE SALE

The foreclosure process has begun on this property, which may affect your right to continue to live in this property.

Ninety days or more after the date of this notice, this property may be sold at foreclosure.

If you are renting this property, the new property owner may either give you a new rental agreement or provide you with a sixty-day notice to vacate the property.

You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights that you may have."

# EXHIBIT 8

**Electronically Recorded**
**20120607000806**

SIMPLIFILE                     DTS          63.00
Page 001 of   002
06/07/2012 11:19
King County, WA

WHEN RECORDED MAIL TO

Fidelity National Title Insurance Company

1920 Main Street, Suite 1120
Irvine, CA  92614

TS No: 10-10230-6A

Parcel Number:  2523069048

## NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE

JOHN D. KNECHT, AN UNMARRIED MAN was the original grantor, and Fidelity National Title Insurance Company is the duly appointed successor trustee (the "Trustee"), and MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT was the original  beneficiary under that certain Deed of Trust recorded April 10, 2006, as Instrument No. 20060410001855 of Official Records in the office of the Recorder of King County, Washington (the "Deed of Trust"), and covering property more particularly described as follows:

SITUATE IN THE CITY OF NORTH BEND, COUNTY OF KING, STATE OF WASHINGTON.

BEGINNING AT THE SOUTHWEST CORNER OF THE NORTHEAST QUARTER OF SECTION 25, TOWNSHIP 23 NORTH, RANGE 8 EAST, W.M., IN KING COUNTY, WASHINGTON:

THENCE EAST ON A QUARTER LINE, 76.5 FEET TO NORTHERLY MARGIN OF COUNTY ROAD;

THENCE FOLLOWING SAID MARGIN EASTERLY 50 FEET TO THE TRUE POINT OF BEGINNING;

THENCE FOLLOWING SAID MARGIN EASTERLY 150 FEET;

THENCE NORTH 50° 45' WEST 360 FEET TO CENTER LINE OF CHRISTMAS CREEK;

THENCE FOLLOWING SAID CORNER CENTER LINE WESTERLY TO A POINT THAT BEARS NORTH 44° WEST FROM THE TRUE POINT OF BEGINNING;

THENCE SOUTH 44° EAST 480 FEET TO TRUE POINT OF BEGINNING.

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

The undersigned Trustee hereby discontinues the Trustee's Sale set by the Notice of Trustee's Sale recorded  on September 14, 2011, under Auditors # 20110914000641 of Official Records of King County, Washington.

This discontinuance shall not be construed a waiving of any breach or default under the above referenced deed of trust, or as impairing any right or remedy thereunder, or as modifying or altering in any respect any of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election to not allow the sale to be made pursuant to the above referenced Notice of Trustee's Sale.

**Notice of Removal - 70**

DATED: June 5, 2012

Fidelity National Title Insurance Company, Trustee

_____

Juan Enriquez, Authorized Signature

State of California          )ss.

County of Orange           )ss

On June 5, 2012, before me, Stephanie Islas , Notary Public, personally appeared  Juan Enriquez, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Stephanie Islas  # 1973360

My Commission Expires March 26, 2016



STEPHANIE ISLAS
Commission # 1973365
Notary Public - California
Orange County
My Comm. Expires Mar 26, 2016

# EXHIBIT 9

**Electronically Recorded**
**20120607000807**
SIMPLIFILE                    NTS              65.00
Page 001 of   004
06/07/2012 11:19
King County, WA

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

FIDELITY NATIONAL TITLE
INSURANCE COMPANY
1920 Main Street, Suite 1120
Irvine, CA 92614

TS No: 10-10230-6A
Loan No: 0031070519
APN: 2523089048

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I, NOTICE IS HEREBY GIVEN that on September 7, 2012, 09:00 AM, Red Lion Hotel Downtown, 1415 Fifth Avenue, Seattle, WA 98101/Auction.com Room, Fidelity National Title Insurance Company, the undersigned Trustee will sell at public auction to the highest and best bidder, payable, in the form of cash, or cashiers' check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of King, State of Washington, to-wit:

SITUATE IN THE CITY OF NORTH BEND, COUNTY OF KING, STATE OF WASHINGTON.

BEGINNING AT THE SOUTHWEST CORNER OF THE NORTHEAST QUARTER OF SECTION 25, TOWNSHIP 23 NORTH, RANGE 8 EAST, W.M., IN KING COUNTY, WASHINGTON:

THENCE EAST ON A QUARTER LINE, 76.5 FEET TO NORTHERLY MARGIN OF COUNTY ROAD:

THENCE FOLLOWING SAID MARGIN EASTERLY 50 FEET TO THE TRUE POINT OF BEGINNING:

THENCE FOLLOWING SAID MARGIN EASTERLY 150 FEET:

THENCE NORTH 50° 45' WEST 360 FEET TO CENTER LINE OF CHRISTMAS CREEK:

THENCE FOLLOWING SAID CORNER CENTER LINE WESTERLY TO A POINT THAT BEARS NORTH 44° WEST FROM THE TRUE POINT OF BEGINNING:

THENCE SOUTH 44° EAST 480 FEET TO TRUE POINT OF BEGINNING,

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

which is subject to that certain Deed of Trust dated April 1, 2006, recorded on April 10, 2006, as Instrument No. 20060410001855 of Official Records in the Office of the County Recorder of King County, WA from JOHN D. KNECHT, AN UNMARRIED MAN as the original Grantor(s), to FIDELITY NATIONAL TITLE COMPANY OF WASHINGTON, as the original Trustee, to secure an obligation in favor of MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as the original Beneficiary. An Assignment recorded under Auditor's File No 20060410001855.  The current Beneficiary is: Deutsche Bank National Trust Company, as Trustee for GSR Mortgage Loan Trust 2006-0A1, Mortgage Pass-Through Certificates, Series 2006-0A1, (the "Beneficiary").

More commonly known as 46020 SOUTHEAST EDGEWICK ROAD, NORTH BEND, WA

**Notice of Removal - 73**

II. No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrowers' or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III. The default(s) for which this foreclosure is made is/are as follows: failed to pay payments which became due; together with late charges due; less unapplied funds held on account thereof; . The total amount of payments due is: $36,278.53; the total amount of late charges due is $666.43;  the total amount of advances made is/are are $1,420.00.

IV. The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of $360,869.48, together with interest as provided in the note or other instrument secured from January 1, 2010, and such other costs and fees as are provided by statute.

V. The above described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on September 7, 2012. The defaults referred to in Paragraph III must be cured by August 27, 2012, (11 days before the sale date) to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before August 27, 2012 (11 days before the sale) the default(s) as set forth in Paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after August 27, 2012 (11 days before the sale date) and before the sale, by the Borrower, Grantor, any Guarantor, or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust and curing all other defaults.

VI. A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

46020 SE EDGEWICK RD
NORTH BEND, WA 98045-9754

46020 SOUTHEAST EDGEWICK ROAD
NORTH BEND, WA 98045

46020 SE EDGEWICK RD
NORTH BEND, WA 98045,

by both first class and certified mail on April 19, 2012, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII. The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above described property.

IX. Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060;

SALE INFORMATION CAN BE OBTAINED ON LINE AT www.auction.com
AUTOMATED SALES INFORMATION PLEASE CALL

DATED:  June 5, 2012

FIDELITY NATIONAL TITLE INSURANCE COMPANY, Trustee
1920 Main Street, Suite 1120
Irvine, CA 92614

Phone No: 949-252-4900

Juan Enriquez, Authorized Signature

STATE OF CALIFORNIA            }
COUNTY OF Orange               }

On June 5, 2012, before me, Stephanie Islas Notary Public, personally appeared Juan Enriquez who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Stephanie Islas # 1973365
My Commission Expires March 26, 2016

STEPHANIE ISLAS
Commission # 1973365
Notary Public - California
Orange County
My Comm. Expires Mar 26, 2016

Re: TS#: 10-10230-6A

## RESIDENT OF PROPERTY SUBJECT TO FORECLOSURE SALE

The foreclosure process has begun on this property, which may affect your right to continue to live in this property.

Ninety days or more after the date of this notice, this property may be sold at foreclosure.

If you are renting this property, the new property owner may either give you a new rental agreement or provide you with a sixty-day notice to vacate the property.

You may wish to contact a lawyer or your local legal aid or housing counselling agency to discuss any rights that you may have.

Notice of Removal - 76