UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN D. KNECHT,

                Plaintiff,

    v.

FIDELITY NATIONAL TITLE
INSURANCE COMPANY, MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS INC., DEUTSCHE BANK
NATIONAL TRUST CO. AS TRUSTEE
FOR GSR MORTGAGE LOAN TRUST
2006-0A1, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2006-0A1, AMERICAN HOME
MORTGAGE SERVICING INC.,

                Defendants.

No.  2:12-cv-1575

NOTICE OF REMOVAL

TO:    The Clerk, United States District Court
        for the Western District of Washington at Seattle

**1.    Removal of State Court Action**

    This action is removed to this Court by Defendants Mortgage Electronic Registration

Systems Inc. ("MERS"); American Home Mortgage Servicing Inc., now known as Homeward

Residential Inc. ("Homeward"); and Deutsche Bank National Trust Co., as Trustee for GSR

Mortgage Loan Trust 2006-0A1, Mortgage Pass-Through Certificates Series 2006-0A1

NOTICE OF REMOVAL
(NO. 2:12-CV-1575) – 1

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

91004-5100/LEGAL24652656.1

("Deutsche Bank").  MERS, Homeward and Deutsche Bank are collectively referred to in this Notice as Defendants.

Defendants are parties to this civil action filed on August 24, 2012, and currently pending in the Superior Court of the State of Washington for King County, as Cause No. 12-2-28165-3. Through this Notice, Defendants remove this action to this Court from the Superior Court of the State of Washington for King County.  All defendants that have been properly served and joined consent in this request for removal.

### 2.    Basis for Jurisdiction in Federal Court

This court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction).

The Plaintiff and all of the defendants are citizens of different states.  Plaintiff at all relevant times has been a resident of the State of Washington.  *See* Complaint, ¶ 1.  Defendant MERS is and has been since this action was commenced, a corporation incorporated in the State of Delaware with its principal place of business in Virginia.  *Id.*, ¶ 3.  Defendant Homeward is and has been since this action was commenced, a corporation incorporated in the State of Delaware with its principal place of business in Coppell, Texas, and is not a citizen of the State of Washington.  *See Id.*, ¶ 5 and Homeward Corporate Disclosure Statement filed herewith. Defendant Fidelity National Title Insurance Company[1] is and has been since this action was commenced, a corporation incorporated in the State of California with its principal place of business in California.  Exhibit A hereto.

---

[1] Plaintiff has not filed an Affidavit of Service or other proof that defendant Fidelity National Title Insurance Company has been served with the Complaint, nor has that defendant appeared in this action.

NOTICE OF REMOVAL
(NO. 2:12-CV-1575) – 2

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

91004-5100/LEGAL24652656.1

The amount in controversy exceeds $75,000.  " 'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.' " *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.2002) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1997)).  This action concerns a $315,000.00 mortgage loan secured by real property in King County, Washington. Complaint ¶ 1 & Exhibit A, p. 2 (Deed of Trust).  Plaintiff's Complaint alleges a number of claims for relief relating to the assignment of the deed of trust and related recordings; foreclosure; and efforts to collect the loan.  The Complaint seeks injunctive relief, quiet title, statutory damages, and economic damages.  The Complaint seeks a judgment that the Deed of Trust securing the $315,000 loan is void; and quieting title to Plaintiff as to all rights, title and interest in the subject real property free and clear of any of Defendants' interest.  Thus, the object of the litigation is, at a minimum, the deed of trust securing a $315,000 loan.  Further, Plaintiff seeks an unquantified award of statutory damages and economic damages.

This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the plaintiff and the defendants are citizens of different states and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

### 3.   Propriety of Removal

This action is removable to this Court under 28 U.S.C. § 1441 because this Court would have had original jurisdiction over plaintiff's claims had plaintiff elected to file the action initially in federal court.  This Court is the United States District Court for the district and division embracing the place where the state court action is pending, and is therefore the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

### 4.   Receipt of Initial Pleading and Timeliness of Removal

On August 27, 2012, Defendant MERS and Deutsche Bank were served with a copy of the Summons and Complaint in this action.  Plaintiff served Homeward on September 7, 2012. This notice is filed within thirty (30) days of such receipt as required by 28 U.S.C. § 1446(b).

NOTICE OF REMOVAL
(NO. 2:12-CV-1575) – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**5.      The State-Court Complaint and other Pleadings**

Attached to this Notice is a true copy of the Complaint which plaintiff served on

Defendants in the action pending in state court.  All other process, pleadings or orders served on

defendant or filed in the state court in this action are attached to the Verification of State Court

Records filed with this Notice.

DATED this 17th day of September, 2012.

By:  s/ Frederick B. Rivera
Frederick B. Rivera #23008
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  FRivera@perkinscoie.com

Attorneys for Defendants Mortgage Electronic
Registration Systems Inc., Deutsche Bank
National Trust Co. as Trustee for GSR
Mortgage Loan Trust 2006-0A1, Mortgage
Pass-Through Certificates, Series 2006-0A1,
and American Home Mortgage Servicing Inc.
(now known as Homeward Residential Inc.)

NOTICE OF REMOVAL
(NO. 2:12-CV-1575) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

91004-5100/LEGAL24652656.1

## CERTIFICATE OF SERVICE

On September 17, 2012, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following documents: **Notice of Removal**

| | | |
|---|---|---|
| Scott E. Stafne | ☐ | Via hand delivery |
| Stafne Law Firm | ☐ | Via U.S. Mail, 1st Class, |
| 239 N. Olympia Avenue | | Postage Prepaid |
| Arlington, WA  98223 | ☐ | Via Overnight Delivery |
| | ☐ | Via Facsimile |
| ***Attorney for Plaintiff*** | ☒ | Via E-filing |

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED at Seattle, Washington, September 17, 2012.

By:  *s/ Frederick B. Rivera*
Frederick B. Rivera #23008
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  FRivera@perkinscoie.com

Attorneys for Defendants Mortgage Electronic
Registration Systems Inc., Deutsche Bank
National Trust Co. as Trustee for GSR
Mortgage Loan Trust 2006-0A1, Mortgage
Pass-Through Certificates, Series 2006-0A1,
and American Home Mortgage Servicing Inc.
(now known as Homeward Residential Inc.)

CERTIFICATE OF SERVICE – 1

91004-5100/LEGAL24652656.1

# EXHIBIT A

Business Search - Business Entities - Business Programs                Page 1 of 1

## California Secretary of State Debra Bowen

| Secretary of State | Administration | Elections | Business Programs | Political Reform | Archives | Registries |

**Business Entities (BE)**

Online Services
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Annual/Biennial Statements

Filing Tips

Information Requests
(certificates, copies &
status reports)

Service of Process

FAQs

Contact Information

Resources
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

Customer Alerts
- Business Identity Theft
- Misleading Business
  Solicitations

### Business Entity Detail

Data is updated weekly and is current as of Friday, September 14, 2012. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | FIDELITY NATIONAL TITLE INSURANCE COMPANY |
| Entity Number: | C1997801 |
| Date Filed: | 12/31/1996 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 2510 N. REDHILL AVE. |
| Entity City, State, Zip: | SANTA ANA CA 92705 |
| Agent for Service of Process: | C T CORPORATION SYSTEM |
| Agent Address: | 818 W SEVENTH ST |
| Agent City, State, Zip: | LOS ANGELES CA 90017 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically
  revoked. Please refer to California Corporations Code section 2114 for information relating to
  service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a
  more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status
  Definitions.

Modify Search    New Search    Printer Friendly    Back to Search Results

Privacy Statement | Free Document Readers
Copyright © 2012   California Secretary of State

## EXHIBIT A

http://kepler.sos.ca.gov/cbs.aspx                                        9/17/2012

**Notice of Removal - 6**

FILED

12 AUG 24 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 12-2-28165-3 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| JOHN D. KNECHT, an unmarried man,<br>Plaintiff,<br><br>vs.<br><br>FIDELITY NATIONAL TITLE INSURANCE COMPANY, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., DEUTSCHE BANK NATIONAL TRUST CO. AS TRUSTEE FOR GSR MORTGAGE LOAN TRUST 2006-0A1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-0A1, AMERICAN HOME MORTGAGE SERVICING INC.<br>Defendants. | NO:<br><br>COMPLAINT FOR:<br>(1) DECLARATORY JUDGMENT<br>(2) INJUNCTIVE RELIEF & RESTRAINT OF TRUSTEE'S SALE<br>(3) VIOLATIONS OF THE WA. DEED OF TRUST ACT; RCW 61.24 *et seq*<br>(4) VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT<br>(5) DAMAGES |

## I.    PARTIES, JURISDICTION AND VENUE

1. **John D. Knecht, Plaintiff**

   John Knecht, Plaintiff, is a resident of the state of Washington and has been the owner of the real property in question since 1998; this is Plaintiff's primary residence. On or about April 1, 2006, Plaintiff was induced to refinance his real property through American Brokers Conduit, who has not been in business since August, 2007, by signing a Deed of Trust (Exhibit 1, DOT, King County Auditor Records recording number 20060410001855). That Deed of Trust stated that it secured payment of a Promissory Note dated on April 1, 2006 (Exhibit 2, Promissory

COMPLAINT - 1

STAFNE LAW FIRM
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

**EXHIBIT B**

1    Note). The Note and DOT serving as the basis of the Plaintiff's mortgage loan are subject of this

2    lawsuit.

3        2.   **Fidelity National Title Insurance Company, Defendant**

4           Defendant Fidelity National Title Insurance Company (hereafter "Fidelity"), is holding

5    itself out to be "a corporation formed under RCW 61.24(b)".  This statutory provision as cited in

6    the Appointment of Successor Trustee simply does not exist (<u>Exhibit 4, Appointment of</u>

7    <u>Successor Trustee</u>). Based on this recorded Appointment of Successor Trustee, Fidelity began to

8    record or cause to be recorded, a series of notices in order to effectuate the non-judicial sale upon

9    Plaintiff's property.  The most recent, Third Notice of Trustee Sale (Exhibit 9) informs that a sale

10   date has been scheduled for September 7, 2012. Fidelity is subject to the jurisdiction and venue

11   of this Court by commencing non-judicial sale of Plaintiff's homestead.

12       3.   **Mortgage Electronic Registration Systems, Inc., Defendant**

13          Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is a Delaware

14   corporation with a mailing address of 1818 Library St, Reston, Virginia. MERS was listed as the

15   "beneficiary" and "nominee" on behalf of the original lender, American Brokers Conduit, in the

16   subject Deed of Trust. In this purported capacity, MERS executed an Assignment of Deed of

17   Trust transferring ownership of the Note and the rights under the Deed of Trust to Defendant

18   Deutsche Bank National Trust Company (<u>Exhibit 3, Assignment of DOT, King County Auditor</u>

19   <u>number 20100412000136</u>). MERS is not licensed to conduct business in the state of Washington;

20   however, in addition to its involvement in Plaintiff's case, MERS' name has appeared on

21   thousands of deeds of trust in Washington and it has, likewise, recorded hundreds of assignments

22   of deed of trust affecting and impairing titles of property all over this great state.  Therefore,

23   MERS is subject to the jurisdiction and venue of this Court.

24

COMPLAINT - 2

**STAFNE LAW FIRM**
239 NORTH OLYMPIA AVENUE
ARLINGTON WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

1     4.  <u>**Deutsche Bank National Trust Company, Defendant**</u>

2         Deutsche Bank National Trust Company (hereafter "Deutsche") was never involved in

3 the original mortgage loan transaction. Presently, however, Deutsche holds itself out as the

4 beneficiary under the Assignment of Deed of Trust executed by MERS and seeking to foreclose

5 upon Plaintiff's homestead. Deutsche is, by definition, "doing business" in King County.

6 Deutsche's corporate headquarters is located in Santa Ana, California. As to its role in this case,

7 Deutsche alleges to be the Trustee of a mortgage-backed securitized pool known as "GSR

8 Mortgage Loan Trust 2006-OA1, Mortgage Pass-Through Certificates, Series 2006-OA1"

9 (hereafter "Securitized Trust"). In seeking to obtain title and possession of Plaintiff's homestead

10 via non-judicial foreclosure, Deutsche submits itself to the jurisdiction and venue of this Court.

11     5.  <u>**American Home Mortgage Servicing, Inc/Homeward Residential, Defendant**</u>

12         American Home Mortgage Servicing, Inc. is a corporation headquartered in Coppell,

13 Texas, that recently changed its name to Homeward Residential[1] ("AHMSI"). AHMSI is a

14 corporation doing business in Washington with a consumer loan company license of CL-3984

15 AHMSI signed as "attorney in fact" for Defendant Deutsche on the Appointment of Successor

16 Trustee, although no power of attorney can be found in the public records of King County, nor

17 was a power of attorney attached to the Appointment of Successor Trustee. AHMSI is subject to

18 the jurisdiction and venue of this Court by its action taken in King County, Washington in

19 relation to this case.

20         Defendant AHMSI has sent written communications to Plaintiff inducing him to enter

21 into a home retention/loan modification agreement with the company under the guise that

22 AHMSI has the right "under the Security Instrument to foreclose on the Property." While

23 _____

24 [1] http://www.ahmsi3.com/home.asp

COMPLAINT - 3

S T A F N E  L A W  F I R M
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

**Notice of Removal - 9**

1   AHMSI's name does not appear on either the Note or the Deed of Trust, it has prepared

2   documents for Plaintiff to sign indicating that so long as Plaintiff make payments directly to the

3   company under its new terms, Plaintiff can stay in his own home.

4      6.   **Jurisdiction and Venue**

5      All Defendants have claimed interest and/or authority either directly or by way of assignment

6   in the real property owned by Plaintiff. All acts complained of herein took place, in part or in

7   whole, in King County, Washington.

8            II.    **EXHIBITS AND EXPLANATIONS**

9      1.   **Deed of Trust (Exhibit 1)**

10      The original lender of the subject mortgage loan, American Brokers Conduit (ABC), filed for

11   bankruptcy and went out of business in August, 2007[2]. The Note is secured by Plaintiff's home

12   under the Deed of Trust dated April 1, 2006, recorded in King County records under number

13   20060410001855 on April 10, 2006. The trustee named in the Deed of Trust is Fidelity National

14   Title Company of Washington. The borrower, who signed the Note, is the Plaintiff in this action.

15   The beneficiary of the Deed of Trust is designated as Defendant MERS as nominee for ABC.

16      2.   **Promissory Note (Exhibit 2)**

17      3.   **Assignment of Deed of Trust (Exhibit 3)**

18      An Assignment of Deed of Trust was executed by Michelle Halyard as Vice President of

19   Defendant MERS on April 1, 2010. The document was prepared by McCarthy & Holthus, LLP

20   in San Diego, California, but Ms. Halyard's signature was notarized in Duval County, Florida.

21   The Assignment purported to transfer MERS' beneficial interest in both the Deed of Trust and

22   the Promissory Note to Defendant Deutsche as Trustee for a securitized trust identified as "GSR

23   _____

24   [2] http://dm.epiq11.com/ahm/Project

COMPLAINT - 4

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 STAFNELAWFIRM.COM

1  Mortgage Loan Trust 2006-OA1."

2      4.  **Appointment of Successor Trustee (Exhibit 4)**

3      An Appointment of Successor Trustee was signed by Cindi Ellis, Assistant Vice President of

4  Defendant American Home Mortgage Servicing Inc.,("AHMSI"), on September 14, 2010, as

5  attorney in-fact for Defendant Deutsche. At the time of the

6  purported Appointment, no Power of Attorney was attached to the Appointment nor was there a

7  Power of Attorney recorded in King County conferring the authority upon Defendant AHMSI to

8  act as Attorney in Fact for Defendant Deutsche.

9      5.  **First Notice of Trustee Sale (Exhibit 5)**

10     On or about October 21, 2010 Defendant Fidelity executed a Notice of Trustee Sale. The

11  First NOTS was recorded in King County, Washington on October 26, 2010 under recording

12  number 20101026000419, and declared a sale date of January 28, 2011.

13     6. **Notice of Discontinuance of Trustee Sale of January 28, 2011 (Exhibit 6)**

14     On September 14, 2011, simultaneous with the recording of another Notice of Trustee Sale,

15  Fidelity also recorded a Notice of Discontinuation of Trustee Sale. It is not clear how Fidelity

16  could discontinue the scheduled Trustee Sale 8 months *after* the fact.

17     7.  **Second Notice of Trustee Sale (Exhibit 7)**

18     On September 14, 2011, defendant Fidelity caused for a Second Notice of Trustee Sale to be

19  recorded in King County Public Records under King County Auditor number 20110914000641.

20  The Second NOTS stated that a non-judicial sale of Plaintiff's real property would be conducted

21  on December 16, 2011.

22     8. **Discontinuance of Trustee Sale of December 16, 2011 (Exhibit 8)**

23     On June 7, 2012, Fidelity caused for a Notice of Discontinuance of Trustee Sale Date of

24

COMPLAINT - 5

**STAFNE LAW FIRM**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

1   December 16, 2011 to be recorded in the public records of King County (Exhibit 8). Again, it is

2   unclear how Fidelity could discontinue the scheduled Trustee Sale of nearly six months prior.

3   **9. Third Notice of Trustee Sale for Sale Date of September 7, 2012 (Exhibit 9)**

4       Also on June 7, 2012, Fidelity once again caused for the Third Notice of Trustee Sale to be

5   recorded in the public records of King County; this Third NOTS stated that the sale shall occur

6   on September 7, 2012. This newly recorded sale date is 588 days, or one year, seven months and

7   ten days from the first sale date scheduled and recorded by Fidelity as the successor trustee.

8   There is no evidence that the Plaintiff requested any of these extensions that totaled 588 days.

9       In addition to the above-mentioned defects, Fidelity does not mention that the requirement of

10  publication of NOTS has been satisfied pursuant to *RCW 61.24.040(3)* (" In addition, the trustee

11  shall cause a copy of the notice of sale described in subsection (1)(f) of this section (excluding

12  the acknowledgment) to be published in a legal newspaper in each county in which the property

13  or any part thereof is situated, once on or between the thirty-fifth and twenty-eighth day before

14  the date of sale, and once on or between the fourteenth and seventh day before the date of sale").

15

16                                  III.    **CLAIMS**

17  **1. Declaratory Judgment**

18      Plaintiff John Knecht repeats and realleges each and every item and allegation above and

19  below as if fully and completely set forth herein.

20      A. Plaintiff alleges that the Court should declare Defendant MERS without lawful authority

21  to act as beneficiary under the Deed of Trust and that its action of assigning the Deed of

22  Trust to Defendant Deutsche is void *ab initio*. In its most recent decision of *Bain v.*

23  *Metropolitan Mortgage Group, Inc.*, 2012 Wash. LEXIS 578 (August 16, 2012), the

24

COMPLAINT - 6                                    **STAFNE LAW FIRM**
                                                 239 NORTH OLYMPIA AVENUE
                                                 ARLINGTON, WA 98223
                                                 TEL. 360.403.8700 /STAFNELAWFIRM.COM

1    Supreme Court holds that MERS cannot be the beneficiary, as that term is defined by the

2    Act, because MERS never holds the promissory note or other instrument or document

3    evidencing the obligation being secured. The Bain court holds further that MERS cannot be a

4    holder of the note under the Washington UCC and where, under WADOTA, it is

5    contemplated that the security instrument follows the note and not the other way around,

6    MERS does not have nothing to assign; RCW 61.24.010(2); *GMAC Mortgage Co. v.*

7    *Wynkoop*, 2007 Wash. App. LEXIS 2813 (Wash. Ct. App., Oct. 8, 2007) .

8    B.  Plaintiff alleges that Defendant MERS is guilty of RCW 40.16.030, which provides:

9         "Every person who shall knowingly procure or offer any false or forged
          instrument to be filed, registered, or recorded in any public office, which
10        instrument, if genuine, might be filed, registered or recorded in such office
          under any law of this state or of the United States, is guilty of a class C
11        felony and shall be punished by imprisonment in a state correctional
          facility for not more than five years, or by a fine of not more than five
12        thousand dollars, or by both."

13

14   C.  Plaintiff alleges that the Court should declare defendant Deutsche as incapable of being

15   the "holder" of the Note as Deutsche has not shown that it ever took delivery of the original

16   promissory Note "for value". RCW 62A.3-302(2)(ii).

17   D.  Plaintiff alleges that the Court should declare all three Notices of Trustee Sale as

18   effectuated and recorded by Defendant Fidelity as void for failure to comply with the

19   WADOTA and because it was recorded by Defendant Fidelity, who was not the lawful

20   Successor Trustee.

21   E.  Plaintiff alleges that the Court should declare Defendant Deutsche lacks standing to

22   initiate or order non-judicial foreclosure of Plaintiff's real property as there is no proof that

23   Deutsche is the beneficiary of the Deed of Trust or the owner of the Note.

24   F.  Plaintiff alleges that the Court should declare Defendant AHMSI to have made false

COMPLAINT - 7

STAFNE LAW FIRM
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

1    representations in its participation of the non-judicial foreclosure of Plaintiff's home.

2        G.  Plaintiff alleges that the Court should declare Defendant AHMSI to have misrepresented

3    its interests in entering into a loan workout/loan modification or forebearance agreement

4    whereupon Plaintiff is to make payments to AHMSI in order to keep Plaintiff's house when

5    AHMSI is clearly neither the owner of the Note nor the beneficiary under the Deed of Trust.

6    **2.  Defendants failed to strictly comply with WADOTA**

7        A.  In this case, the Defendants failed to comply strictly with *RCW 61.24.040(6)*, which

8    states that a trustee may continue a sale "for any cause the trustee deems advantageous ... for a

9    period or periods *not exceeding a total of one hundred twenty days*." (Emphasis added.) A plain

10   reading of this provision permits a trustee to continue a sale once or more than once but

11   unambiguously limits the trustee from continuing the sale past 120 days. Here, the first sale date

12   was scheduled for January 28, 2011, but it has since been continued to September 7, 2012 by

13   Fidelity. Assuming that the sale will finally take place on September 7, 2012, the sale would be

14   invalid and subject to being set aside because Fidelity would have continued the sale date for a

15   total of 588 days when the statute only allows 120 days. *Albice v. Premier Mortgage Services of*

16   *Washington*, 174 Wn.2d 560, 276 P.3d 1277, 1281-1282 (2012)("When a party's authority to act

17   is prescribed by a statute and the statute includes time limits, as under *RCW 61.24.040(6)*, failure

18   to act within that time violates the statute and divests the party of statutory authority. Without

19   statutory authority, any action taken is invalid.").

20       B.  Plaintiff was entitled to a letter or Notice of PreForeclosure Option (NPFO) under *RCW*

21   *61.24.031*. As such, Defendant Fidelity violated *RCW 61.24.040 (1)* by recording each of the

22   Notices of Trustee Sale less than 120 days prior to the date set for sale. The First NOTS was

23   recorded 99 days before the scheduled sale date; the Second NOTS was recorded 93 days before

24

COMPLAINT - 8

**STAFNE LAW FIRM**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

1   the scheduled sale date and the Third NOTS was recorded only 92 days before the scheduled sale

2   date.

3   **3. Grounds for Injunctive Relief and Restraint of Trustee Sale under WADOTA**

4        A.    Plaintiff alleges that he is entitled to injunctive relief by way of a court order

5   restraining trustee sale because of 1) procedural defects in the conduct of nonjudicial sale and 2)

6   the illegality created by defendant MERS' role in the transaction. MERS's appointment of

7   defendant Fidelity as successor trustee is invalid. *The appointment by a non-beneficiary*

8   *invalidates the status of successor trustee and the unlawful successor trustee is without any*

9   *power to act.* In *Bain v. Metropolitan Mortgage, supra,* the Supreme Court holds that MERS

10   cannot be the beneficiary, as that term is defined by the Act, because MERS never holds the

11   promissory note or other instrument or document evidencing the obligation being secured. The

12   Bain court holds further that MERS cannot be a holder of the note  under the Washington UCC

13   and where, under WADOTA, it is contemplated that the security instrument follows the note and

14   not the other way around, MERS does not have nothing to assign; RCW 61.24.010(2); *GMAC*

15   *Mortgage Co. v. Wynkoop,* 2007 Wash. App. LEXIS 2813 (Wash. Ct. App., Oct. 8, 2007) .

16        B.    Plaintiff alleges that based on the illegal act of MERS, an order restraining trustee's

17   sale is warranted until all issues in this case can be determined on the merit because of the risk

18   that the nonjudicial sale if allowed, can result in forfeiture of the Plaintiff's interests without any

19   judicial oversight. *Udall v. T.D. Escrow Services, Inc.,* 159 Wash. 2d 903, 915-916, *quoting*

20   *Queen City Sav. & Loan Ass'n v. Mannhalt,* 111 Wash.2d 501, 514, 760 P.2d 350 (1988); *Koegel*

21   *v. Prudential Mut. Sav. Bank,* 51 Wash. App 108, 111, 752 P.2d 385, *review denied,* 111

22   Wash.2d 1004 (1988). As demonstrated herein, the spirit of the statute of simplify the

23

24

     COMPLAINT - 9

STAFNE LAW FIRM
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

1   foreclosure process and making it more transparent has been violated by the complex use of

2   subsidiary corporations, affiliates and agencies by the financial institutions.

3   **4. Violations of the Washington Consumer Protection Act**

4        Plaintiff John Knecht repeats and realleges each and every item and allegation above and

5   below as if fully and completely set forth herein. To prevail on a CPA action, the Plaintiff must

6   show "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public

7   interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman*

8   *Ridge Training Stables, Inc v Safeco Title Ins. Co.,*105 Wn.2d 778, 780, 719 P.2d 531 (1986).

9   Further, "To prove that an act or practice is deceptive, neither intent nor actual deception is

10  required. The question is whether the conduct has 'the capacity to deceive a substantial portion

11  of the public." *Hangman*

12       A.  Plaintiff alleges that the pattern of unlawful conduct exhibited by all named Defendants

13  and described herein has been played out many times over and is capable of affecting a public

14  interest. The business of making mortgage loans to borrowers is admittedly one that occurs in

15  trade or commerce, and a simple query performed on King County public records database using

16  "Deutsche Bank National Trust Company" and "assignment of deed of trust" resulted in excess

17  of 3,500 hits. The result would be much higher for MERS. In this one single county, the volume

18  of activities conducted by the Defendants illustrates the extent of deception and resulting injuries

19  to the citizenry of Washington.

20  **5. Criminal Racketeering.**

21       A. Plaintiff alleges that all the named Defendants have conspired with one another in the

22  conduct of nonjudicial foreclosure in order to deprive Plaintiff of his property rights and due

23  process. It is a conspiracy because the nonjudicial foreclosure could not have been effectuated

24  COMPLAINT - 10

S T A F N E   L A W   F I R M
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

1   without each of the named Defendants' participation. The conduct exhibited herein was designed

2   specifically to enable Defendants to acquire title and possession of Plaintiffs' home without

3   proper authority to do so.

4        B.      Each defendant herein constitutes an "enterprise" as that term is defined by

5   *RCW9A.82.010(8)*. The collective act of attempting to foreclose upon the Plaintiffs' home and

6   demanding payments repeatedly based on doubtful or non-existent proof of ownership similarly

7   constitute a pattern of criminal profiteering activity as defined by *RCW 9A.82.010, et. seq.* Based

8   on information and belief, Plaintiffs allege that defendants have engaged in more than three

9   predicate acts within the last three years toward other individuals who are similarly situated to

10   Plaintiffs and said conduct has resulted in actual injury to the public.

11       C.      Where Plaintiff has demonstrated that he is likely to prevail on his claim of

12   Criminal Profiteering against the Defendants, the Court should allow the restraint of the Trustee

13   Sale without requiring the posting of security *Bowcutt v. Delta North Star Corp.*, 95 Wn. App.

14   311, 976 P.2d 643 (1999); *see also, Pizan v. HSBC Bank USA, N.A.*, 2011 U.S. Dist. LEXIS

15   66861 (U.S.Dist. W.D. Wash., June 23, 2011).

16       6. Resulting Damages

17       A.      Plaintiff has experienced emotional distress, anguish, fear and depression over the

18   foreclosure of his homestead as pursued by the Defendants. Plaintiff has suffered financial

19   damages as he was required to retain counsel to investigate claims made by Defendants and to

20   enjoin the actions taken by Defendants.

21       B.      Plaintiff has experienced damages flowing from the inaccurate reporting by

22   Defendants concerning the foreclosure and his credit standing.

23       C.      Additionally, Plaintiff is entitled to treble damages under the WACPA, and other

24

COMPLAINT - 11

STAFNE LAW FIRM
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

1   statutory damages, as well as attorney's fees and costs, which will be proven at trial.

2                     **IV.**    **REQUESTS FOR RELIEF**

3        Based on the foregoing facts and arguments, the Plaintiffs respectfully request and pray

4   for the following:

5           o   Restraint the Trustee's Sale as being attempted by Defendant Fidelity.

6           o   Judgment quieting title to Plaintiff as to all right title and interest in the subject

7               property free and clear of any interest of all Defendants.

8           o   Judgment that the Deed of Trust identified above is void and of no legal effect.

9           o   Judgment against all Defendants in an amount equal to Plaintiff's damages,

10              including attorney's fees and costs in such amount as is ordered by the Court for

11              the necessity of bringing this action.

12           o   And such other relief as the Court deems just and equitable under the

13              circumstances.

14

15      DATED this 23 day of August, 2012

16                                  Respectfully Submitted,

17                                 STAFNE LAW FIRM

18                                 */s/ Scott E. Stafne*

19                        Scott E. Stafne, WSBA #6964
                                 Ha Dao, WSBA #21793

20                        239 N. Olympic Ave.
                                 Arlington, WA 98223

21                        Phone: (360) 403-8700
                                 Fax: (360) 386-4005

22

23

24

    COMPLAINT - 12                                   **STAFNE LAW FIRM**
                                        239 NORTH OLYMPIA AVENUE
                                        ARLINGTON, WA 98223
                                TEL. 360.403.8700 /STAFNELAWFIRM.COM

# EXHIBIT 1

Return To:
American Brokers Conduit
520 Broadhollow Road
Melville, NY 11747

Assessor's Parcel or Account Number:  252308-9048-01
Abbreviated Legal Description:   Lot:, Section:25-23-8

[Include lot, block and plat or section, township and range]        Full legal description located on page   3
Trustee:  Fidelity National Title Company of Washington
                                                                 Additional Grantees located on page   2
—————————————————— [Space Above This Line For Recording Data] ——————————————————

# DEED OF TRUST

MIN  100024200012306003

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.
(A) "Security Instrument" means this document, which is dated   April 1, 2006
together with all Riders to this document.
(B) "Borrower" is John D. Knecht, an unmarried man

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  American Brokers Conduit

DOC  #:323701
WASHINGTON -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  WITH MERS
          UM51 0012.04
[VMP]-6A(WA) (0012)       Form 3048 1/01
Page 1 of 15         Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

Lender is a   Corporation
organized and existing under the laws of  State of New York
Lender's address is  538 Broadhollow Road, Melville, NY  11747

(D) "Trustee" is  Fidelity National Title Company of Washington

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  April 1, 2006
The Note states that Borrower owes Lender   Three Hundred Fifteen Thousand and No/100                                                                                            Dollars
(U.S. $315,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  May 1, 2046

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| Prepayment Rider | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:323702              APPL #:0001230600

Initials: _____

VMP -6A(WA) (0012)              Page 2 of 15              Form 3048  1/01

**Notice of Removal - 21**

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the       County            of       King                        :

[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

Ptn 25-24-8

See full legal description attached hereto and made a part hereof

Parcel ID Number: 252308-9048-01                        which currently has the address of
46020 Southeast Edgewick Road                                                  [Street]
North Bend                        [City] , Washington  98045        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances
DOC  #:323703

Initials: _____

-6A(WA) (0012)                        Page 3 of 15                        Form 3048  1/01

**Notice of Removal - 22**

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any

DOC #:323704

**Notice of Removal - 23**

time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

DOC  #:323705

**Notice of Removal - 24**

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

DOC  #:323706

**Notice of Removal - 25**

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

DOC #:323707

-6A(WA) (0012)                          Page 7 of 15          Initials: _____          Form 3048  1/01

**Notice of Removal - 26**

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property, Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

DOC  #:323708

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

DOC   #:323709

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless

DOC #:323710

-6A(WA) (0012)                    Page 10 of 15                    Initials: _____                    Form 3048 1/01

Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.
There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check

DOC  #:323711

**Notice of Removal - 30**

or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

DOC  #:323712

**Notice of Removal - 31**

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

DOC #:323713

-6A(WA) (0012)                    Page 13 of 15              Initials: _____        Form 3048  1/01

## Prepayment Fee Note Addendum

This Note Addendum is made this ___1st___ day of ___April, 2006___ and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of ___American Brokers Conduit___

(the "Lender") and dated as of even date herewith ( the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the ___THIRD___ anniversary of the date of the Note, the Prepayment Fee shall be equal to ___Two___ percent ( __2.000__ %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

MULTISTATE PREPAY NOTE RIDER
MTA-11/04

AHM-2012P(Multi) (0805)

Page 1 of 2

Doc # 943397/ Image: 943397.prn  App# 0001230600

**Notice of Removal - 33**

**NOTICE TO THE BORROWER**
**Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)        _____ (Seal)
John D. Knecht                         -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                               -Borrower

MULTISTATE PREPAY NOTE RIDER                                    AHM-2012P(Multi) (0805)
MTA-11/04

Page 2 of 2

Doc # 943398/ Image: 943398.prn  App# 0001230600

**Notice of Removal - 34**

**Prepayment Rider**

This Prepayment Rider is made this 1st day of April, 2006 _____ and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to American Brokers Conduit

_____ (the "Lender" or "Noteholder").

of the same date and covering the Property described in the Security Instrument and located at; 46020 Southeast Edgewick Road  North Bend, WA 98045
[Property Address]

**PREPAYMENT COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the THIRD anniversary of the date after the execution of the Security Instrument, the Prepayment Fee shall be equal to Two percent ( 2.000 %) of the original loan amount. Thereafter, prepayment shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to

MULTISTATE PREPAY SECURITY RIDER              Page 1 of 2                    ABM-20138(Muk) (0805)
MTA - 11/04

Doc # 943395/ Image: 943395.prn  App# 0001230600                    rev. 11/12/04

**Notice of Removal - 35**

make the installments each and every month until the Note is paid in full.
Partial prepayments shall have no effect upon the due dates or the amounts of
my monthly payments unless the Noteholder agrees in writing to such changes.

By signing below, Borrower accepts and agrees to the terms and covenants contained
in this Prepayment Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)     _____(Seal)
John D. Knecht            -Borrower                            -Borrower

_____(Seal)     _____(Seal)
                          -Borrower                            -Borrower

_____(Seal)     _____(Seal)
                          -Borrower                            -Borrower

_____(Seal)     _____(Seal)
                          -Borrower                            -Borrower

MULTISTATE PREPAY SECURITY RIDER
MTA - 11/04                                        AHM-2013S(Mult) (0805)

Page 2 of 2

Doc # 943396/ Image: 943396.prn  App# 0001230600          rev. 11/12/04

**Notice of Removal - 36**