THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JOHN D. KNECHT,

              Plaintiff,

      vs.

FIDELITY NATIONAL TITLE
INSURANCE COMPANY, et al.,

           Defendants.

NO.  2:12-cv-1575 RAJ

PLAINTIFF'S RESPONSE TO
FIDELITY'S MOTION TO DISMISS

*Noted for Consideration: November 2, 2012,*

*Movants request it be considered on Oct. 26, 2012, Plaintiff has no objection to it being considered on that date.*

ORAL ARGUMENT REQUESTED

COMES NOW John D. Knecht and responds to Fidelity National Title Company, Inc.'s Motion to Dismiss.

## I. INTRODUCTION

Plaintiff John D. Knecht ("Knecht") brings this action because the Defendant Fidelity National Title Company, Inc. ("Fidelity"), the Trustee of his Deed of Trust, has not complied with the procedural requirements of Washington's Deed of Trust Act ("DTA"), in both its current and past attempts to conduct a foreclosure. He has successfully moved in State Court to stop the scheduled sale before he permanently waived his right to do so. He believes that

**STAFNE LAW FIRM**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM.COM

his mortgage is not enforceable under Washington's Deed of Trust Act (DTA) and sufficient basis to believe Fidelity is not in possession of sufficient proof of Deutsche Bank's right to commence the sale. He does not dispute he owes a debt.

Fidelity has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Knecht requests that the Court deny the motion on the grounds that he has asserted plausible claims as to whether the Trustee has complied with the DTA (under the strict compliance standards set forth under the DTA as discussed in Albice, Udall and Bain). For e.g., it is highly plausible Fidelity, located in California, has no authority to perform a non-judicial foreclosure due to its failure to maintain and notify Knecht of local service information at each time it initiated a foreclosure. For this reason alone, Fidelity's attempt to schedule sale was properly enjoined by State Superior Court. Further, Fidelity performed a number of other procedural and substantive errors, present on the face of recorded documents, or failure to send specific documents, each of which plausibly support Knecht's allegations and serve as bases for denying the motion.

Regarding the companion motion (dkt. 10) made pursuant to Fed. R. Civ. P. 12(b)(6) by Mortgage Electronic Registration System, Inc. ("MERS"); Deutsche Bank National Trust Co. as Trustee for GSR Mortgage Loan Trust 2006-0A1, Mortgage Pass-Through Certificates, Series 2006-0A1 ("Deutsche Bank"); and America Home Mortgage Servicing, Inc. ("AHMSI")(collectively "Bank Defendants") Knecht herein requested that the Court deny the motion on the grounds that he has asserted plausible claims related to whether the parties are complying with the DTA and for those reasons stated in the companion brief.

///

PLAINTIFF'S RESPONSE TO FIDELITY'S
MOTION TO DISMISS - 2

## II. STATEMENT OF FACTS

**A. Responsive Facts related to scheduled Trustee sale(s)'s notices and recordation.**

It has not been determined whether Defendant/Successor Trustee Fidelity is the same "Fidelity" entity purported to be on his original deed of trust. Compare Complaint (dkt. 2-1, 2-2), ¶ II.1, Ex. 1 at *1; with, Ex. 4 at *1. On or about Sept. 16, 2010, Fidelity recorded an appointment of successor trustee in the King County Grantor/Grantee Index, wherein it purported to appoint Fidelity as a new trustee. The document also stated Fidelity was a corporation formed under RCW 61.24(b) and claims an address at: 701 Fifth Avenue, Suite 3040, Seattle, WA 98104. See Complaint, Ex. 4 at *1.

Between October 26, 2010 and June 6, 2012, Fidelity attempted to sell the residence on three separate occasions, by recording three different "Notices of Trustee's Sale"; each stated Fidelity's address was: 1920 Main Street, Suite 1120, Irvine, CA 92614. See complaint, Ex. 9 at **1, 3; see also, Ex. 5 at **1, 3 and, Ex. 7 at **1, 3. Nowhere on the face of these notices did the trustee provide a State of Washington address for their office or telephone service at such an address. Id.

Fidelity also provided three different statements describing the interest of the beneficiary Knecht's note or obligation. In the first notice:

> [***] to secure an obligation in favor of MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as Beneficiary.

Complaint at Ex 5, at *1. Then:

> [***] to secure obligation in favor of MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as Beneficiary, the beneficial interest in which was assigned to Deutsche Bank National Trust Company, as Trustee for GSR Mortgage Loan Trust 2006-0A1, Mortgage Pass Through Certificates, Series 2006-0A1 under assignment recorded under Auditor's File No 20100412000136.

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

Complaint, Ex 7, at *1; see also, Complaint, Ex 3 at *1 (Auditor's File No 20100412000136), FMTD (dkt. 11) at 2:24-25. Finally:

> [***] to secure an obligation in favor of MERS AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as the original Beneficiary. An assignment recorded under Auditor's File No 20060410001855.[1] The current Beneficiary is: Deutsche Bank National Trust Company, as Trustee for GSR Mortgage Loan Trust 2006-0A1, Mortgage Pass Through Certificates, Series 2006-0A1, ("the Beneficiary").

Complaint, Ex 9, at *1. Auditor's File No 20060410001855 is not an assignment. See Complaint, Ex 3 at *1, Ex. 1 at *1. The notices did not state that their publication has been satisfied pursuant to RCW 61.24.040(3). See Complaint at *6:9-10, see generally, Exs. 5, 7, 9. Further, the Notices were recorded 99, 93 and 92 days, respectively, before each sale. Complaint at **8:22-9:2. If additional pre-sale notices were required, such amount of time between sales would be considered a violation. See RCW 61.24.030(8) (including 61.24.030(8)(*l*) which requires the Trustee or beneficiary provide: "the name and address of the owner of any promissory notes or other obligations secured by the deed of trust and the name, address, and telephone number of a party acting as a servicer of the obligations secured by the deed of trust [***]", which the different Notices of Trustee Sale also suggest has changed).

Fidelity also recorded two documents, entitled "Notice of Discontinuance of Trustee's Sale" after the scheduled sale date. Complaint at **5-6, Ex. 6 & 8. These specifically state, in part, that the notice "[***] shall be deemed to be only an election to not allow the sale to be made pursuant to the above referenced Notice of Trustee's Sale." Complaint, Ex. 6 at *1, Ex.

---

[1] Knecht notes that Auditor's no. 2006410001855 is not the assignment, but his Deed of Trust. See Complaint at Ex. 4 (deed of trust was dated April 1, 2006, and recorded on April 10, 2006).

8 at *1. Fidelity did not record anything entitled a Notice of Postponement, or provide Knecht with a Notice of PreForeclosure Options, or perform any sale of the collateral. See generally, Complaint. Knecht alleges that 588 days have passed from the first date scheduled by the Trustee and the last date scheduled by the Trustee. Complaint at *6:6-7.

Knecht then filed this action and alleging procedural and substantive violations of the DTA, Declaratory and Injunctive Relief, Damages, Quiet Title, and Consumer Protection Act and Criminal Profiteering. See generally, Complaint. He then filed and served this action and attempted to notify the Trustee of his intent to restrain the sale. See id.; see also, Verification of State Court Records (dkt. 2-4) at **219-220. He then obtained a restraining order and order to show cause why a preliminary injunction should not issue, from Court Commissioner Carlos Velategui. Verification of State Court Records (dkt. 2-4) at **224-226. Subsequently, Knecht obtained an order granting preliminary injunction of the sale until: "trustee provides prima facie evidence as to authority to bring a sale" was granted. See dkt. 9-1 at *1. Bank Defendants removed this action (Dkt. 1, 6), and then brought a motion to dismiss Fed. R. Civ. P. 12(b)(6). See Dkt. 10 (hereafter "DMTD"). Thereafter, Fidelity moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (hereafter "FMTD") joining in many of Bank Defendants arguments and requesting this court consider its motion on the same noting date. Compare FMTD at 5:18-10:12, 11:11-12:8 with DMTD at 5:9-7:30, 11:38-15:28.

### III. ARGUMENT AND AUTHORITY

**A. Motion to dismiss standard**

Under Fed. R. Civ. P. 12(b)(6), the Court assumes the facts set forth in the complaint are true and its task is to determine whether those facts set forth a plausible cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009); Bell Atlantic

PLAINTIFF'S RESPONSE TO FIDELITY'S
MOTION TO DISMISS - 5

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAW.COM

Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007). For purposes of ruling on a motion to dismiss, the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. Fed. R. Civ. P. 12(b)(6); see Warth v. Seldin, 422 U.S. 490, 501, 422 U.S. 490; 95 S. Ct. 2197 (1975)(citing, Jenkins v. McKeithen, 395 U.S. 411, 421-422, 89 S. Ct. 1843; 23 L. Ed. 2d 404 (1969)). At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive, e.g., of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed. See Warth, 422 U.S. at 501-502.

As discussed below, Knecht has asserted plausible claims, and if his complaint filed in State Court is does not conform to the pleading standards then he should be allowed to amend his complaint.

**B. Movants misstate the allegation predicated on violations of the DTA and declaration of rights under the contract pursuant to RCW 7.24.020**

Fidelity, like Bank Defendants, confuses the allegations in Knecht's complaint to mean something other than what is stated. Compare FMTD at 5:18-9:6; with, DMTD at 5:9-7:29. Again, this resembles the tactic of setting up and "attacking the straw man". Fidelity (and Bank Defendants) describes Knecht's statements in such a way that they can argue: (1) one or more of Knecht's statements are (1) not justiciable controversies and (2) that declaratory relief is not a cause of action. FMTD at 7:12-9:6. This tactic should not prevail in

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAW.COM

justifying dismissal: Knecht is not alleging MERS is performing the sale and is making  claim

under Title 7 of the RCW.[2]

**1. MERS is not the Beneficiary and Knecht asserts a justiciable controversy**

Fidelity, like the other movants, makes two erroneous assumptions. First, Defendants

arguments (FMTD at 7:12-9:6 and DMTD at 6:5-7:29) assume that the filed action requested

declaratory relief under the Federal Declaratory Judgment Act. Knecht filed in State Court

and appropriate device for issuing declaratory relief therein is found under Ch. 7.24 RCW.

Secondly, Knecht's Complaint does not concern a MERS performance of a foreclosure.

Rather the allegation at § III.1.A concerns a foreclosure predicated on a party claiming

beneficiary status through MERS assignment, where MERS has no beneficiary interest to

assign. Allegations at §§ III.1.C, D, E, relate to Deutsche Bank's right or authority to request

Fidelity commence foreclosure against Knecht, and Fidelity's authority to commence it under

the DTA. As discussed below these assumptions are not grounds for dismissal.

The Washington's Uniform declaratory judgments act (UDJA) permits:

A person interested under a deed, will, written contract or other writings
constituting a contract, or whose rights, status or other legal relations are

---

[2] Knecht will concede that his statement under "Injunctive Relief" that "MERS's appointment of defendant Fidelity as successor trustee is invalid" (dkt 2-1 at 9:6-7) may be ambiguous. As the next statement evidenced, Knecht challenges any of the defendant's ability under the "MERS system of non-judicial foreclosures" to appoint a successor trustee. Bain v Metropolitan Mortgage Group, Inc., 175 Wash.2d 83, __ P. 3d __(2012).

As intimated by Bain, appointment would require such a person to be a "beneficiary" within the meaning of the DTA. Bain at 104-05, FN 7. This is defined by RCW 61.24.005, and the definition of the term "holder" was found to be imported from U.C.C. Article One. Id. As argued, Infra. and in Knecht's response to DMTD, there is sufficient and plausible basis to believe that Deutsche Bank is not a beneficiary within the definition of the DTA. Further (and unrelated) is whether Fidelity can even qualify as a trustee under RCW 61.24.010.

Nor was MERS appointing Fidelity argued in obtaining injunctive relief in State Court. See e.g., dkt. 2-2 at **84-88; dkt. 2-3 at **152-159; dkt. 2-4 at **221-223. Further, if ambiguous Knecht requests leave to amend to remove or rephrase this specific allegation. See e.g., Albice, (failure to perform the sale in 161 constitutes proper grounds for invalidating a sale.)

PLAINTIFF'S RESPONSE TO FIDELITY'S
MOTION TO DISMISS - 7

**S T A F N E  L A W  F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020. The UDJA is to be liberally construed and is designed to clarify uncertainty with respect to rights, status, and other legal relations. DiNino v. State, 102 Wash.2d 327, 330, 684 P.2d 1297 (1984). The standard for justiciable controversy under the UDJA is different, specifically:

> [***] four elements must be present to have a justiciable controversy: "(1) an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

Master Builders Ass'n of King & Snohomish Counties v. City of Stanwood, 2005 U.S. Dist. LEXIS 33449, 3-4 (W.D. Wash. Sept. 6, 2005)(J. Pechman)(citing, Grandmaster Sheng-Yen Lu v. King County, 110 Wash. App. 92, 98, 38 P.3d 1040 (2002)); see also, Jehovah's Witnesses of Washington v. King County Hospital, 278 F. Supp. 488, 506 (W.D. Wash. 1967)(applying abstention doctrine to deny plaintiff federal forum, where plaintiffs sought such); c.f., Massachusetts v. V & M Management, Inc., 929 F.2d 830 (1991) (District Court may permit plaintiff to amend complaint so as to allege only state-law claims for purpose of returning to initial state forum); See generally, 118 East 60th Owners, Inc. v. Bonner Properties, Inc., 677 F.2d 200, 204-06 (1982)(for discussion on 28 U.S.C. § 2201 conflicts with State declaratory judgment act and Congress has the power to require such a result, or

whether the application of such a rule to require such a result is authorized).[3] Here defendants fail to demonstrate how this standard is not met.

Further, it is worth noting that Knecht seeks another "special proceeding" under Title 7 of Washington Statutes, Quite Title. <u>See</u> RCW 7.28.010[4]. Under his DOT, Knecht covenanted to generally warrant and defend his seized title against all claims and demands. <u>See</u> Compl., Ex. 1 at *4. If he cannot ascertain that Deutsche Bank now occupies the role of "Lender or Lenders Successors or Assigns under the Instrument" (Ex. 1 at *2, 3), and has not been given reasonable notice of sale of the note (Ex. 1 at *12)[5], then it is proper for him, as a person having ownership interest and possession to bring such dispute against such persons claiming such contingent interest.

**ii. Knecht Presents Justiciable Controversy**

Knecht contends the reason Bank defendants and the trustee do not comply with these statutory requirements relating to the disclosure of "stakeholders" is because MERS non-judicial foreclosures are based on a four party deed of trust instrument, which by design

---

[3] If the Federal Court lacks subject matter jurisdiction to hear Knecht's RCW 7.28.020 claim then seeking to determine whether the Deed of Trust's complies with the DTA, the classical, and appropriate, course of action is abstention not dismissal. <u>See e.g.,</u> <u>Alcala v Wyoming State Bd. of Barber Examiners</u>, 365 F. Supp 560 (1973) (where the existence of many corollary questions which might render opinion merely advisory in nature, led federal court, in exercise of its sound judicial discretion, to abstain from deciding constitutionality of statute.) The Court may also look to the "foreign" status of Defendant Fidelity in determining whether diversity is appropriate.

[4] RCW 7.28.010 States:
>    Any person having a valid subsisting interest in real property, and a right to the possession
>    thereof, may recover the same by action in the superior court of the proper county, to be
>    brought against the tenant in possession; if there is no such tenant, ***then against the person
>    claiming the title or some interest therein, and may have judgment in such action quieting
>    or removing a cloud from plaintiff's title*** [***]

RCW 7.28.010.

[5] Knecht's Deed of Trust states "[t]he Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Conflating "prior" with "no" notice would be erroneous. <u>See</u> Compl. at Ex. 1.

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM.COM

obscures the identity of the owners of the note in order to make it appear as if MERS owns the DOT. The issue before this Court with regard to the Bank defendants is precisely the one the Supreme Court identified in <u>Bain</u>:

> The question, to some extent, is whether MERS and its associated business partners and institutions can both replace the existing recording system established by Washington statutes and still take advantage of legal procedures established in those same statutes. ...

<u>Bain</u>, at*98. Finally, even if the Court applies the <u>Aetna</u> standard, Knecht's claims are cognizable because he is not asking for an advisory opinion on whether MERS can foreclose, rather he seeks a determination of whether Deutsche Bank can foreclose under the MERS system and/or whether MERS assignment constitutes proof sufficient under RCW 61.24.030(7)(a); <u>see also</u>, Dkt. 12 at pp 4-10 (§§ III.B.1(i)-(ii)) (Further response to Deutsche Bank's justiciable controversy and MERS arguments).

**2. The <u>Bain</u> decision is relevant.**

Fidelity, like the other movants, also makes the error of stating that the <u>Bain</u> decision is not relevant. <u>Compare</u> FMTD at 9:7-12:8 <u>with</u>, DMTD at 13:1-15:27. As this Court is well aware, <u>Bain</u> found that MERS cannot be the beneficiary if it never holds the promissory note. <u>Bain</u> then discusses several legal implications which it declines to rule on. This logically implicates that satisfaction of the DTA may not be achieved where beneficiary status is based on an assignment from MERS to Deutsche Bank, or where something other than UCC Art. I "holder" status is being used as right to commence the foreclosure. <u>Bain</u> is relevant in that the DOT followed the Note even though the defendants appear to intend otherwise. In further responding to Fidelity's arguments, Knecht incorporates his response to DMTD as if stated fully herein. Dkt. 12 at pp. 18-22 (§ III.C.4) as well as those arguments *infra.* at § III C.

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

**C. Plausible, Fidelity is without authority to commence with the non-judicial foreclosure because it failed to comply with the DTA.**

The Washington Supreme Court recognizes three claims under the DTA:

> If the grantor chooses not to cure, the grantor may take one or more of the following actions. The grantor may contest the default, RCW 61.24.030(6)(j), RCW 61.24.040(2); restrain the sale, RCW 61.24.130; or contest the sale, RCW 61.24.040(2).

See Cox v. Helenius, 103 Wash.2d 383, 387, 693 P.2d 683 (1985). Here Knecht is both contesting the sale and restraining the sale, in part because the Trustee failed to comply with the requirements of the DTA. He is not contesting the default. Regarding the first two causes of action, and for more than three decades, the Washington's Supreme Court, has found:

> Because the act dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor.

Albice v. Premier Mortgage Services of Washington, 174 Wash.2d. 560, 567-68, 276 P.3d 1277, (2012); Udall v. T.D. Escrow Servs., Inc., 159 Wash.2d 903, 915-16, 154 P.3d 882 (2007); see Koegel v. Prudential Mut. Sav. Bank, 51 Wash. App. 108, 111-12, 752 P.2d 385 (1988); Queen City Sav. & Loan Ass'n v. Mannhalt, 49 Wash. App. 290, 294-95, 742 P.2d 754 (1987), rev. granted, 109 Wash.2d 1020 (1988).

Defendants' motions both argue that the pending foreclosure sale complies with the DTA sale requirements. See FMTD at 12:9-13:4; DMTD at 15:29-49. Further, defendants argue throughout their motions that this court should be dismayed by Knecht's default and characterize this as unpalatable action; this is not a RCW 61.24.030(6)(j)/RCW 61.24.040(2) action. See Cox, 103 Wash.2d at 387. Their argument seeks to also invalidate three decades of Washington Court rulings requiring a party strictly follow a statutory regime of notices, before deprivation of property interests is routine. Albice, at 567-68; Udall, at 915-16;

Koegel, at 111-12; Queen City, 294-95; see, DMTD 11:43-49; FMTD at 12:9-13:5. Strictly following the statutory procedures is also routine in other property right deprivation proceedings, for example: a minor irregularity in the notices for unlawful detainer (which, like non-judicial foreclosures, is an efficient substitute for lengthy judicial actions) habitually results in dismissal due to lack of jurisdiction. See e.g., Markland v. Wheeldon, 29 Wash. App. 517, 522-23, 629 P.2d 921 (1981); Kessler v. Nielsen, 3 Wash. App. 120, 122-23, 472 P.2d 616 (1970).

As discussed below, Defendants have failed to show how Knecht has not asserted several plausible, pre-sale[6] claims, for strictly comply with the statute, which have been routinely held to be construed in a Homeowners' favor. Because such claims are plausible the motion to dismiss should be denied.

**1. Not providing local address or contact information on notices is violation of the DTA depriving Fidelity of authority to perform sale.**

Under a traditional three-party instrument, the Lender is granted by the borrower the equitable interest in the power of sale and a Trustee granted by the borrower a legal interest in power of sale for the benefit of the lender, not unlike a traditional Trust. See Bain v. Metro. Mortg. Grp., Inc., 175 Wash.2d 83, 88, ____ P.3d ____ (2012). The Washington legislature deemed fit to require the recipient of such legal interest, the Trustee, maintain Washington based presence. Specifically, the requirement is maintenance of the office and supplying said

---

[6] Emphasizing the importance of pre-sale injunction, the legislature placed the following language into the DTA:

> Nothing contained in this chapter shall prejudice the right of the borrower, grantor, any guarantor, or any person who has an interest in, lien, or claim of lien against the property or some part thereof, to restrain, on any proper legal or equitable ground, a trustee's sale.

RCW 61.24.130(1). "Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale." RCW 61.24.040(2).

**STAFNE LAW FIRM**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAW.COM

contact information in statutorily required Notices. See RCW 61.24.040(1)(f)("The Trustee whose name and address are set forth below [***]); RCW 61.24.010(2); see also, RCW 61.24.030(6) (requirement of having Washington Contact information, language that such is a requisite prior to sending notices); RCW 61.24.040(2) (Notice of Foreclosure requires providing borrower with contact information).

Here, based on the complaint, it is plausible Knecht knew only to contact Fidelity in California. This is because the notices sent to Knecht only have California contact information. See Complaint at Ex. 9 at **1, 3; see also, Ex. 5 at *3, and 7 at *3. Defendants may argue that the appointment of successor Trustee lists contact information in Washington; but such an argument could only satisfy the requirements listed under RCW 61.24.030(6), and only where such an office is still maintained through the pendency of the non-judicial proceedings (and if not, then would not). See 61.24.030(6). However, the Trustee's contact information is provided in Notice(s) of Foreclosure and Notice(s) scheduling the Sale. RCW 61.24.040(1)-(2). Because the appointment of successor trustee is not the device the legislature intended the Trustee supply its contact information to others, it would not satisfy such requirements. See RCW 61.24.040(1)(f); RCW 61.24.010(2); see also, RCW 61.24.030(6).

Here Knecht plausibly asserts that Defendants failure to give him Washington Contact information volatiles his rights under the DTA, invalidates each notice and otherwise deprives Fidelity of its authority to sell his property at auction.[7] This was, in part, the rationale of the

_____

[7] Defendants may argue that Albice balances the substantial nature of the breach in procedural requirements; but, this Court would err in taking such invitation to consider substantial requirement; because balancing occurs in post-sale invalidation under waiver doctrine, and here Knecht brought his defenses to the non-judicial

S T A F N E   L A W   F I R M
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAW.COM

State Court in ordering the preliminary injunction, and until the Trustee complies no sale should occur. Therefore, Knecht asserts a plausible and proper failure of Trustee to strictly comply with the notice provisions of the State; and/or because Knecht was not properly provided the Trustee's Washington based contact information, the motion to dismiss should be denied.

**i. Based on Fidelity's position, this Court may lack diversity subject matter jurisdiction.**

Washington Law requires the Trustee to be authorized to transact certain business in the State (else it may violate RCW 23B.15.010). Here, Fidelity claimed in in the assignment of successor trustee, that it was a business under RCW 61.24(b) and now, claiming clerical error, says: "[a]ctually RCW 61.24.010(b) <sic> is the express authority for Fidelity's proper qualifications and such minor clerical error in fact[***]" FMTD at 6:2-3) Fidelity then discusses how it qualifies under RCW 61.24.010(2), under Deutsche Bank's authority. See Complaint at Ex. 4. However, if Fidelity is a valid Washington Corporation or business entity, then this Federal District Court lacks diversity subject matter jurisdiction and matter should be remanded back to State Court.

For a suit to be brought to federal court on diversity jurisdiction, complete diversity is required. Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001). If the Court lacks such diversity subject matter jurisdiction, then removal based on diversity of citizenship by Bank Defendants was improper, and pursuant to 28 U.S.C. § 1447(c), this court should remand this matter back to King County Superior. 28 U.S.C. § 1447.[8]

---

foreclosure proceedings before the sale occurred. See RCW 61.24.127-.130 (limitation applies to post sale remedies).
[8] Defendants may argue that Trustees are merely nominal, i.e., a paradigmatic defendant. C.f., FMTD at 2:1-6. "[T]he burden of demonstrating that the defendant is a nominal party rest[s] with the removing party." Wells

PLAINTIFF'S RESPONSE TO FIDELITY'S
MOTION TO DISMISS - 14

S T A F N E  L A W  F I R M
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM.COM

**2. Failure to provide substantially sufficient notice and calls into plausible question Fidelity's proof of Deutsche Bank's "beneficiary" status.**

RCW 61.24.020, states in relevant part:

Except as provided in this chapter, a deed of trust is subject to all laws relating to mortgages on real property. A deed conveying real property to a trustee in trust to secure the performance of an obligation of the grantor or another to the beneficiary may be foreclosed by trustee's sale.

RCW 61.24.020. This broad statement of legislative intent further invokes issues related to

the MERS system. A practical problem arises in dealing with the notice requirements under

RCW 61.24.040, where such notice must be substantially in this form:

which is subject to that certain Deed of Trust dated . . . . ., . . ., recorded . . . . . ., . . ., under Auditor's File No. . . . ., records of . . . . . . County, Washington, from . . . . . . . . ., as Grantor, to . . . . . . . . ., as Trustee, to secure an obligation in favor of . . . . . . . . ., as Beneficiary, the beneficial interest in which was assigned by . . . . . . . . ., under an Assignment recorded under Auditor's File No. . . . . [Include recording information for all counties if the Deed of Trust is recorded in more than one county.]

RCW 61.24.040(1).

Based on the Notices provided to Knecht, and the facts in <u>Bain</u>, it is plausible

Deutsche Bank's beneficiary status is based on several plausible theories. Theories discussed

---

Fargo Bank, Nat'l Ass'n v. Charlotte Overlook Apartments, LLC, No. 10-411, 2011 U.S. Dist. LEXIS 60632, 2011 WL 2224470, at *3 (W.D.N.C. Apr. 21, 201). Here no "nominal" argument was offered in removal. If this Court entertains the nominal argument then it should look to <u>Prasad</u> of how to determine Fidelity's status based on the pleadings and facts of the case. See <u>Prasad v. Wells Fargo Bank, N.A.,</u> 2011 WL 4074300 (W.D. Wash. Sept. 13. 2011). Therein:

Instances in which courts have held that a trustee under a deed of trust is not a nominal defendant have involved complaints wherein plaintiffs asserted causes of actions directly against the trustee. For example, in <u>Silva v. Wells Fargo Bank NA</u>, the Court acknowledged that "the trustee on a deed of trust is often a nominal party." 2011 U.S. Dist. LEXIS 64636, 2011 WL 2437514, at *5 (C.D. Cal. June 16, 2011).

<u>Prasad v. Wells Fargo Bank, N.A.,</u> 2011 U.S. Dist. LEXIS 103122, 6-7 (W.D. Wash. Sept. 13, 2011). Here Knecht asserts allegations for Damages and other such relief allowed under law or in equity against defendants for violations of the consumer protection act, and Washington's Deed of Trust Act. Knecht's damages claims are against all and each defendant.

PLAINTIFF'S RESPONSE TO FIDELITY'S
MOTION TO DISMISS - 15

and explored in <u>Bain</u>, but not conclusively decided. <u>See Bain</u> at 110-115. One theory is receiving a beneficial interest assignment from MERS. It is also plausible from these statements that Deutsche Bank's beneficiary status is based on receiving a beneficial interest from MERS as Nominee for American Brokers Conduit. It is also plausible that the Trustee was in possession of a beneficiary declaration statement, which may be discovered and vetted. <u>See</u> RCW 61.24.030(7)(a).

It is further plausible, based on the fact that Deutsche Bank is involved as a Trustee for a Mortgage Pass Through Certificates, that: (i) ownership of the security, (ii) ownership of the note, and (iii) possession of the note have all been segregated to different parties. It is unknown, therefore, whether the security is still enforceable, who may enforce it, and/or Deutsche Bank is claiming agency as its basis to enforce the instrument on behalf of an owner. <u>See</u> <u>Bain</u> 175 Wash.2d at 97 ("[a] general axiom of mortgage law is that obligation and mortgage cannot be split, meaning that the person who can foreclose the mortgage must be the one to whom the obligation is due.")(<u>citing</u> 18 Stoebuck & Weaver, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 18.18, at 334."). It is also plausible that Deutsche Bank is in possession of the note; but may also be plausible that they hold it as security for a different obligation; or a mere custodian without authority to enforce. It may also be the note has been lost or destroyed by predecessors in interest.

This has application to the material facts in the Complaint. Where Trustee describes a "beneficiary status" in three substantively different ways, it is plausible the Trustee was incorrect or in possession of conflicting proof as to the beneficiary and ownership of the note

S T A F N E   L A W   F I R M
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

or obligation. Proof and authority conflicts may arise from MERS assignment[9], negotiability of the instrument,[10] whether a note follows an assignment of security, segregation of the Note from the Lien, or anything outside the scope of their authority to determine under RCW 61.24.030(7). So it is quite plausible and inferable, that such inconsistent statements reflect insufficient proof held by the Trustee and further, that the Trustee is exceeding their statutory grant of authority in making such a determination.

The proper action, in exercising its duties under the DTA (including a Trustee's duty of Good Faith under RCW 61.24.010) should be to explain such issues, basis and/or conflict to the borrower or reject the sale. The statute is not so robotic in its application that a simple dialogue cannot be established between trustee and borrower.[11] Instead Trustees, like Fidelity, have been relying on veils of vagueness to ignore or cheapen its responsibilities and participate in a system of obfuscating the rights and statuses of parties purporting to enforce.

---

[9] Given that a MERS four-party deed of trust where the secured performance is to the Lender and MERS as Nominee have been called into question by Bain, and there are serious questions under such facts where MERS is on the Deed of Trust as to whether Trustees, like Fidelity, many foreclose at trustee's sale. See generally, Dkt. 12 at pp. 18-19.

[10] Fidelity argues the specter of transfer by negotiation and 62A.3-301. See FMTD at 10:20-11:9. Under U.C.C. Article 3, the definition of an "instrument" is complex and highly technical. Whitman, D.A., HOW NEGOTIABILITY HAS FOULED UP THE SECONDARY MORTGAGE MARKET, AND WHAT TO DO ABOUT IT, 37 Pepp. L. Rev. 737, 747 (2010)(Appendix 2 to Dkt. 12). The threshold question is whether the instrument is even negotiable. See generally, Id.  If so, transfer is performed by endorsement. Id. if not, transfer is performed by assignment. Id. To be negotiable an instrument must "(a) be signed by the maker or drawer; and (b) contain an unconditional promise ... and no other promise, order, obligation or power given by the maker or drawer ... ; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer." Id. (citing U.C.C. § 3-104(a)(1)-(2)); c.f., Bain, 175 Wash.2d at FN 7 (raising further concerns of transparency of transfers in Secondary Market practices and MERS). Nowhere in the Statute has it been construed that the Trustee has authority to decide such complexities and "holder in due course status" is typically determined by the Court. See In Re Veal, 450 B.R. 897, 911-12, FN 25 (9th Cir., 2011)(expanding on such complexities in transfer and use of Court Rules to resolve certain difficult scenarios such as holder in due course status).

[11] Such issues could be resolved by attaching proof, such as an indorsed note or declaration of beneficiary, to the Notices. This is arguably required in the Notice of Foreclosure. See RCW 61.24.040(2)("A copy of your Deed of Trust and *documents evidencing the obligation* secured thereby are enclosed").

PLAINTIFF'S RESPONSE TO FIDELITY'S
MOTION TO DISMISS - 17

This may be to the Trustee and Bank defendants benefit.[12] Hiding information from homeowner is also inconsistent with the policies of the DTA in providing a borrower a full and fair opportunity to challenge a wrongful foreclosure; and, recording uninformative notice documents certainly does not ensure the stability or marketability of land titles. Cox, 103 Wash.2d at 387; see also, Albice v. Premier Mortgage Servs. of Wash., Inc., 157 Wash. App. 912, 925 (2010); Affirmed by, Remanded by, 174 Wash.2d 560; 276 P.3d 1277 (2012)("a trustee's bald statements that he or she has complied with the law, as distinguished from recitals of fact demonstrating such compliance, tend to dilute the statutory protections afforded borrowers by the Act")(citing Rosenberg v. Smidt, 727 P.2d 778, 786 (Alaska 1986)).[13]

---

[12] Many situations exist where the Servicer and Trustee's interests are benefitted at the expense of the note owner and borrower by delaying the modification and/or foreclosure of home loans so that the servicers can be paid late fees and other charges, which result from default.   In the event the borrower is eventually foreclosed upon the servicer's charges have priority to foreclosure proceeds:

> For servicers, the true sweet spot lies in stretching out a delinquency without either a modification or a foreclosure. While financing advances is a large expense for servicers, one they will want to end as soon as possible, late fees and other default-related fees can add significantly to a servicers' bottom line, and the longer a homeowner is in default, the larger those fees can be. The nether-world status between a foreclosure and a modification also boosts the monthly servicing fee (because monthly payments are not reducing principal) and slows down servicers' largest non-cash expense: the amortization of mortgage servicing rights (because homeowners who are in default are unlikely to prepay via refinancing).   Finally, foreclosure or modification, not delinquency by itself, usually triggers loss recognition in the pool under the accounting rules.   Waiting to foreclose or modify postpones the day of reckoning for a servicer.

> How long a delay in the foreclosure will be profitable depends on the interplay of the servicer's ability to charge additional fees during the foreclosure, the servicer's financing costs for advances, and the time limits for proceeding through foreclosure imposed by the investor contracts and credit rating agencies. If the servicer can juggle the time limits - perhaps by offering short-term workout agreements - the prospect of increased fees may outweigh interim interest costs. Once the servicer's financing costs outweigh the incremental fees that can be extracted by maintaining a borrower in delinquency, the servicer will then choose the faster option - either a foreclosure or a modification -  all other things being equal.

Thompson, D.E., FORECLOSING MODIFICATIONS: HOW SERVICER INCENTIVES DISCOURAGE LOAN MODIFICATIONS, 86 Wash. L. Rev. 755, at *777-8 (December 2011) (Appendix 1 to Dkt. 12).

[13] The Supreme Court declined to reach the recital irregularities, finding that the delay of 161 days constituted improper sale. Albice, 174 Wash.2d at 568.

Finally, where such concerns arise, and defendants cause is ultimately just (but complicated by unrecorded transfers or requiring interpretation of other provisions of state law) no legal hurdle prevents the foreclosing party from foregoing with the Trustee and dealing with such proof issues under the expanded powers of a judicially supervised foreclosure. RCW 61.12.030. The limitations on Deutsche Bank's ability to commence another action, if indeed it has a right to do so, may be found in: RCW 61.12.120 RCW 61.24.030(4) RCW 61.24.100(2); see also, RCW 61.24.120; RCW 61.24.130.

However, Court's acquisition of jurisdiction to determine Quiet Title relief may limit such. See RCW 7.28.010; RCW 7.28.260 ("the judgment rendered therein shall be conclusive as to the estate in such property and the right of possession thereof, so far as the same is thereby determined, upon all persons claiming by, through, or under the party against whom the judgment is rendered, by title or interest passing after the commencement of the action, if the party in whose favor the judgment is rendered shall have filed a notice of the pendency of the action as required by RCW 4.28.320").

**3. Plausible claim that Fidelity's failing to conduct the foreclosure pursuant to applicable timelines and satisfaction of requirements passed under the DTA.**

Knecht alleges the sale would have occurred 588 days after initial scheduling. This is based on the plausibility that the discontinuation of the sale was not achieved, or sale reinitiated, by the Trustee's issuance of proper notices. But see, FMTD at 12:11-21 ("the sale is not late and fidelity has in fact strictly complied [***]"). Fidelity response again fails to appreciate its failure to follow the statute under the DTA standards.

Where a trustee elects to discontinue a sale by recording notice of discontinuance, or postpone a sale beyond 120 days, what procedural requirements are they required to perform

S T A F N E   L A W   F I R M
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM.COM

in reinitiating the sale? Resolving Knecht's claim requires an examination into what authority the Trustee has to control or restart a Trustee's sale under the DTA. In interpreting statutes, a Washington Court begins with the question of whether the statute's meaning is plain on its face before turning to statutory construction. See Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). The "notice of discontinuance is discussed twice in the statute, first its contents are defined under RCW 61.24.090(2):

> **If the default is cured and the obligation and the deed of trust reinstated in the manner provided, the trustee shall properly execute, acknowledge, and cause to be recorded a notice of discontinuance of trustee's sale under that deed of trust.** A notice of discontinuance of trustee's sale when so executed and acknowledged is entitled to be recorded and shall be sufficient if it sets forth a record of the deed of trust and the auditor's file number under which the deed of trust is recorded, and a reference to the notice of sale and the auditor's file number under which the notice of sale is recorded, and a notice that the sale is discontinued.

RCW 61.24.090(6)(emphasis supplied). Next it is briefly mentioned in RCW 61.24.100(1)-(2) (discussing when other actions on obligation are precluded). The unambiguous intent of the statute at .090(6) is to allow discontinuation of the trustee sale if the default is cured and the obligation and deed of trust reinstated in the manner provided. RCW 61.24.090. This is not what the Trustee intends here as evidence by the statements in the Notices, e.g., Exhibit 8:

> The undersigned Trustee hereby discontinues the Trustee's Sale by the Notice of Trustee's Sale. [***] This discontinuance shall not be construed a waiving of any breach or default under the above referenced deed of trust, or as impairing any right or remedy thereunder, or as modifying or altering in any respect any of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election to not allow the sale to be made pursuant to the above referenced Notice of Trustee's Sale.

Complaint, Ex. 8, Ex. 6 (Further such notices do not state the specific authority they are made under). The statue does allow continuation of the sale in the form of a "notice of postponement", but in doing so the legislature placed a 120 day limit on such continuation:

**S T A F N E  L A W  F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 / STAFNELAWFIRM.COM

(6) The trustee has no obligation to, but may, for any cause the trustee deems advantageous, continue the sale for a period or periods ***not exceeding a total of one hundred twenty days*** by (a) a public proclamation at the time and place fixed for sale in the notice of sale and **if the continuance** is beyond the date of sale, by giving notice of the new time and place of the sale by both first class and either certified or registered mail, return receipt requested, to the persons specified in subsection (1)(b)(i) and (ii) of this section to be deposited in the mail (i) not less than four days before the new date fixed for the sale if the sale is continued for up to seven days; or (ii) not more than three days after the date of the continuance by oral proclamation if the sale is continued for more than seven days, or, alternatively, (b) by giving notice of the time and place of the postponed sale in the manner and to the persons specified in subsection (1)(b), (c), (d), and (e) of this section and publishing a copy of such notice once in the newspaper(s) described in subsection (3) of this section, more than seven days before the date fixed for sale in the notice of sale. No other notice of the postponed sale need be given

RCW 61.24.040(6)(emphasis supplied). The legislature only contemplated discontinuation where default is cured and obligation reinstated; otherwise contemplated postponement (or, possibly, starting back at initiation of the sale). Here Trustee does none of these things, and goes out of the way to identify that such has not occurred. Complaint, Ex. 6 & Ex. 8. This is likely because the Trustee and servicers are incentivized to continue the sale for as long as possible. See Thompson, D.E., FORECLOSING MODIFICATIONS: HOW SERVICER INCENTIVES DISCOURAGE LOAN MODIFICATIONS, 86 Wash. L. Rev. 755, at *777-8 (December 2011) (Appendix 1 to Dkt. 12).[14]

But, this Court need not decide that Trustee may not have some implied authority to discontinue the sale. Rather to determine if a procedural violation occurred, the question is whether the Trustee must restart the nonjudicial process anew or can skip certain steps. Unless the statute can be construed to allow the Trustee to skip certain steps, then Knecht asserts plausible deprivation of his statutorily mandated notices, some of which came into effect after

---

[14] See Supra. Note 12.

**STAFNE LAW FIRM**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

2010. Possible issues includes: the Notice of PreForeclosure option under RCW 61.24.031, which provides instructions on, e.g., Washington's mediation program which could be used to cure a default; new required language in the notices, and whether a new notice of default stating the reinstatement and cure value (such would occur had 61.24.090(6) been followed). Further, Because of this, Knecht plausibly asserts this foreclosure was scheduled to occur 588 after the first noted sale. Exceeding 120 days is not permitted, e.g., <u>Albice</u> held that a sale done 161 days from the original sale date is in violation of the statute and divests a Trustee of its statutory authority to sell the property. <u>Albice</u>, 174 Wash.2d. at 567-68.

**4. Cause of action for damages**

Fidelity argues "there is no cause of action for damages against Fidelity for such mistake." FMTD at 13. Including express damages listed, the Court may infer damages. For e.g., Knecht may allege he incurred late fees and other charges as a result of the Trustee's delays and misconduct in the foreclosure and modification process. For example (DMTD at *4:7) defendant Banks admit that Knecht owes over $2,000 in late fees and advances. Such liabilities have not been discharged. It is also plausible Knecht's failure to get new statutory notice language caused him to miss meaningful modification and/or mediation opportunities to negotiate with the bank to avoid such fees and keep his residence. Such fees and arrears are added into the backend of such workouts with borrowers paying longer in the end.

**D. Response to Fidelity's Washington Consumer Protection Act Argument**

In Section E[15] Fidelity asserts that Knecht's "WCPA claim fails as a matter of law" FMTD at 13:5-11 and again misconstrue Knecht's complaint. Further, such arguments appear substantially identical to arguments made in DMTD. <u>Compare</u> FMTD at 13:5-15:6; <u>with</u>,

---

[15] FMTD appears to omit sections C and D either due to clerical error or to match its arguments with DMTD.

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAW.COM

DMTD at 16:1-17:32. In interests of judicial economy Knecht incorporates his response to DMTD as if stated more fully herein. Dkt. 12 at pp. 22-23 (§ III.E).

**E. Response to Fidelity's Criminal Profiteering Act Argument**

Again Fidelity makes a substantially identical to arguments made in DMTD. <u>Compare</u> FMTD at 15:6-16:17; <u>with</u>, DMTD at 17:33-18:41. In interests of judicial economy Knecht incorporates his response to DMTD as if stated more fully herein. Dkt. 12 at 23-24 (§ III.F).

## IV. CONCLUSION

Based on the foregoing, which shows plausible claims that the Trustee is not strictly complying and includes responses to the other motion on other issues presented, Knecht respectfully requests that the Court deny Fidelity's Motion to Dismiss on the grounds that Knecht asserts plausible claims upon which relief may be granted.

DATED this 22nd day of October, 2012.

By:

STAFNE LAW FIRM


_____ s/ Scott E. Stafne_____
Scott E. Stafne, WSBA 6964
scott.stanfe@stafnelawfirm.com
Attorney for John Knecht


_____ s/ Andrew Krawczyk_____
Andrew J. Krawczyk, WSBA 42982
239 N Olympic Ave
Arlington, WA 98223
andrew@stafnelawfirm.com
(360) 403 8700
(360) 300 6005 (fax)

PLAINTIFF'S RESPONSE TO FIDELITY'S
MOTION TO DISMISS - 23

**S T A F N E   L A W   F I R M**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

<u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on October 22, 2012, I caused to be electronically filed, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daniel Allen Womac: Daniel.womac@fnf.com

Frederick B. Rivera: FRivera@perkinscoie.com

DATED this 22nd day of October, 2012.

_____ s/ Andrew J. Krawczyk
Andrew J. Krawczyk, WSBA #42982
Stafne Law Firm

CERTIFICATE OF ELECTRONIC SERVICE - 1

**STAFNE LAW FIRM**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM