THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JOHN D. KNECHT, an unmarried man, | NO.  2:12-cv-1575 RAJ |
| Plaintiff, | |
| vs. | LETTER TO THE COURT PROVIDING CITATION OF SUPPLEMENTAL AUTHORITY |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, et al., | |
| Defendants. | |

Plaintiff Knecht provides the following supplemental authority Montgomery County v. Merscorp, Inc., 11 -cv- 6968 (W.D. Penn. 10/19/2012) (attached).

The supplemental citation addresses the point in Knecht's Response Brief against MERS defendants at p. 9-24 of Montgomery County that a Federal District Court is required to determine how the a State Supreme Court would rule regarding state statutory construction issues being decided by the Federal Court. See **Redacted** Response Brief against MERS defendants, at **10:16-25; 16:4-25; 18:522:3.  Further, the Court in Montgomery County also faced the issue as to whether the legislature intended to create a private right of action to quiet title for counties; Montgomery County, at 14-25, as well as to allow such a cause of action where plaintiff did not plead the cause of action offensively, but defendant raised the cause of

LETTER TO THE COURT PROVIDING
CITATION OF SUPPLEMENTAL
AUTHORITY - 1

**STAFNE LAW FIRM**
239 NORTH OLYMPIA AVENUE
ARLINGTON, WA 98223
TEL. 360.403.8700 /STAFNELAWFIRM.COM

action defensively. Id. at 24-28.   In this case an analogous situation arises with regard to

MERS' defendants' concession of late fees and advanced costs in their motion to dismiss. See

**Redacted** Response Brief against MERS defendants, at *23:4-6.  Should this Court consider

defendants' admission regarding this element of damages that Knecht did not specifically

plead?

Finally, Montgomery County held that the County's interests in recording fees

established a sufficient pecuniary interest and that the County had pled sufficient facts to

obtain declaratory and injunctive relief for a quiet title claim.  Here, Knecht claims that he has

established standing to bring a quiet title action basis on his own and defendants' claims to

rights to ownership in his homestead property.

DATED this 31st day of October, 2012.


                                              STAFNE LAW FIRM


                                                   s/ Scott E. Stafne
                                              Scott E. Stafne, WSBA 6964
                                              239 N Olympic Ave
                                              Arlington, WA 98223
                                              scott.stanfe@stafnelawfirm.com
                                              (360) 403 8700
                                              (360) 300 6005 (fax)
                                              Attorney for John Knecht


LETTER TO THE COURT PROVIDING
CITATION OF SUPPLEMENTAL
AUTHORITY - 2

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on October 31, 2012, I caused to be electronically filed, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daniel Allen Womac: Daniel.womac@fnf.com

Frederick B. Rivera: FRivera@perkinscoie.com


DATED this 31st day of October, 2012.


s/ Scott E. Stafne<br>
Scott E. Stafne, WSBA 6964<br>
Stafne Law Firm

CERT. OF ELECTRONIC SERVICE - 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONTGOMERY COUNTY, PENNSYLVANIA,      :
RECORDER OF DEEDS, by and through     :
Nancy J. Becker in her official       :
capacity as Recorder of Deeds of      :
Montgomery County, on its own         :
behalf and on behalf of all others    :
similarly situated,                   :
                                      :
          Plaintiff,                  :     CIVIL ACTION
                                      :
     v.                               :
                                      :     NO. 11-cv-6968
MERSCORP, INC., and MORTGAGE          :
ELECTRONIC REGISTRATION SYSTEMS,      :
INC.,                                 :
                                      :
          Defendants.                 :

### MEMORANDUM AND ORDER

**Joyner, C.J.**                              **October 19, 2012**

Before the Court is the Motion to Dismiss of the Defendants, Mortgage Electronic Registration Systems, Inc. ("MERS") and MERSCORP, Inc. (ECF No. 6). For the reasons set forth in this Memorandum, the Motion is granted in part and denied in part.

## I.  BACKGROUND[1]

The Plaintiff, the Montgomery County, Pennsylvania, Recorder of Deeds, brings this putative class action, on behalf of herself and a proposed class of all similarly situated county recorder's

---

[1] In line with a Rule 12(b)(6) Motion to Dismiss, all factual allegations are viewed in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).

1

offices in Pennsylvania, seeking, through various legal and equitable theories, to compel the Defendants to record mortgage assignments past, present, and future and pay the associated fees. (See Compl. ¶¶ 16-17.)  The gravamen of the Plaintiff's claims is that the Defendants have created a private system for tracking conveyances of interests in land which bypasses the statutorily created recording system in a manner incompatible with Pennsylvania law.  See id. ¶¶ 16-17, 23-29, 34-36.

A.   MERS and the Recording System

     The typical residential mortgage finance transaction results in two legally operative documents: (1) a promissory note, a negotiable instrument which represents the borrower's repayment obligation over the term of the loan; and (2) a mortgage, representing the security interest in certain property which entitles the holder of the note to foreclose on the property in the event of default on the note.  See Phyllis K. Slesinger & Daniel Mclaughlin, Mortgage Electronic Registration System, 31 Idaho L. Rev. 805, 808 (1995).  MERS enters a mortgage finance transaction when the lender and the borrower name MERS, in the mortgage instrument, "as the mortgagee (as nominee for the lender and its successors and assigns)."  In re Mortgage Elec. Reg. Sys. (MERS) Litig. (In re MERS), 659 F. Supp. 2d 1368, 1370 n.6 (J.P.M.L. 2009).

     The attendant promissory note is sold on the secondary

2

mortgage market and may, over its term, have many owners. <u>Id.</u>
Sale of the note onto the secondary mortgage market principally
takes two forms.  In one, relatively straightforward,
transaction, a lender who retains a note as part of its own loan
portfolio transfers the note to another party for that party to
hold for its own account or portfolio. <u>See</u> Adam J. Levitin &
Tara Twomey, <u>Mortgage Servicing</u>, 28 Yale J. on Regulation 1, 11-
13 (2011).  In the other, a more complex process called
securitization, the note is transferred, along with many other
notes, through several different entities into a special purpose
vehicle, typically a trust; the trust then issues securities
backed by the trust corpus, i.e., the notes, to investors. <u>Id.</u>
at 13-14; (<u>see also</u> Compl. ¶¶ 23-29.)  Regardless of the
secondary market route which the note takes, MERS remains the
named mortgagee as "nominee"[2] for the subsequent owners of the
note as long as the note is held by a MERS member.[3] <u>In re MERS</u>,

---

[2] MERS' simultaneous status as mortgagee and as nominee for the
beneficial owner of the note has generated a great deal of litigation and
commentary.  <u>See</u>, <u>e.g.</u>, <u>MERSCORP, Inc. v. Romaine</u>, 8 N.Y.3d 90, 96-97, 861
N.E.2d 81 (2006); Christopher L. Peterson, <u>Foreclosure, Subprime Mortgage
Lending, and the Mortgage Electronic Registration System</u>, 78 U. Cin. L. Rev.
1359, 1375-76 (2010).  Although the Pennsylvania Superior Court has held that
MERS, acting as the lender's nominee, may foreclose upon property in its own
name, rather than in the name of the beneficial owner of the promissory note
in default, <u>Mortgage Elec. Reg. Sys. v. Ralich</u>, 982 A.2d 77, 81 (Pa. Super.
2009), the Pennsylvania Supreme Court has not addressed the permissibility or
implications of this arrangement.

[3] According to publicly available materials produced by MERS:

> Membership [in MERS] is open to originators,
> servicers, lenders, brokers, vendors serving the
> mortgage industry and government institutions, who may
> apply for membership to one of the following: . . .

659 F. Supp. 2d at 1370 n.6.

Before the formation of MERS, "secondary market investors generally requir[ed] recorded assignments for most transfers of prior ownership interests [in security interests, i.e. mortgages]." Slesinger & Mclaughlin, 31 Idaho L. Rev. at 808. This system entailed substantial administrative burdens on secondary mortgage market participants. Id. at 809-10.

As a result, in 1993 "the [Mortgage Bankers' Association ("MBA")] InterAgency Technology Task Force . . . published a 'white paper' at the MBA's Annual Convention that describes an electronic book entry system for the residential mortgage industry." Id. at 810. At the time, among other benefits to the mortgage industry, MERS proponents claimed that "[o]nce MERS is established as the mortgagee of record, all subsequent transfers of ownership would be recorded electronically, eliminating the

_____

[1] MERS® Residential: Also known as the MERS® System, is the electronic registry that tracks servicing rights and beneficial ownership interests in residential mortgage loans. . . . [2] MERS® Commercial: The commercial version of MERS® Residential, MERS® Commercial eliminates the repurchase risk and costs associated with preparing, recording and tracking mortgage assignments for the CMBS and multifamily marketplace. Membership is open to companies that serve the multi-family and commercial-backed real estate marketplace. . . . [and] [3] MERS® eRegistry: The legal system of record that identifies the owner (Controller) and custodian (Location) for registered eNotes, providing greater liquidity, transferability and security for lenders. Membership to the MERS® System is a requirement for membership to the MERS® eRegistry.

Mortgage Electronic Registration System, Join MERS, http://www.mersinc.org/join-mers/join-mers (last visited Sept. 21, 2012).

need to physically prepare, deliver, record, and track assignment documents.  The estimated cost savings for assignment processing for a single transfer would be an average of $45.50 per loan." Id. at 812-13.

The Defendants, along with the MERS members, developed MERS along these lines.  So, instead of effecting formal assignments of a mortgage when MERS members transfer the accompanying note between one another, the MERS members simply register the change in beneficial ownership in the MERS electronic database.[4] (Compl. ¶ 17.)  MERS does not oversee the process of updating ownership records in any manner, leaving that task to the members who own the beneficial interests in the promissory notes.  Id. Some 65 million mortgages in the United States name MERS as original mortgagee as nominee for the lender, including at least 130,000 in Montgomery County.  Id. ¶ 16.

B.  This Action

The Plaintiff, acting in her official capacity as the Recorder of Deeds of Montgomery County, Pennsylvania, initiated this lawsuit on November 7, 2011.  In her complaint, she asserts

---

[4] MERS takes the position that this system obviates the need for any formal assignment of the mortgage unless and until a non-MERS-member acquires the accompanying note. (Def.'s Mem. at 5-6.)  In its briefing, MERS represents that the United States District Court for the Northern District of Ohio has written, of this system, that "no accompanying assignment of the mortgage is necessary."  Id. at 5 (citing Long. v. Mortgage Elec. Registration Sys., No. 1:10-cv-2854, 2011 WL 304826, at *2 (N.D. Ohio Jan. 28, 2011)).  The cited authority contains no such statement.  See generally Long, 2011 WL 304826.  Because none of MERS' arguments in the motion to dismiss require resolving this question at this time, we will defer it to a later date.

that the Pennsylvania recording statute, 21 Pa. Stat. § 351,
requires that all mortgage assignments be recorded (Compl. ¶¶ 11,
25), and that the beneficial owners of mortgages avoid recorded
assignments of mortgages in favor of tracking changes in
ownership on the system created and administered by the
Defendants, id. ¶¶ 26-28.  Accordingly, the Plaintiff pleads,
"MERS . . . was formed for the express purpose of avoiding fees
traditionally due to county recorders of deeds when sales or
assignments of mortgages were made."  Id. ¶ 15.  She further
pleads that the absence of these recorded assignments as part of
the Defendants' avoidance of recording fees both deprives her
office and Montgomery County of revenue needed to support vital
public functions, id. ¶ 21, and creates deficient property
records, id. ¶ 29.

Based on these factual allegations, the Plaintiff asserts
claims for (1) "negligent and/or willful violation of [21 Pa.
Stat. § 351]," id. ¶¶ 34-36, (2) civil conspiracy, id. ¶¶ 37-40,
(3) unjust enrichment, id. ¶¶ 41-45, and (4) declaratory and
injunctive relief against the Defendants for failing to record
mortgage assignments pursuant to 21 Pa. Stat. § 351, id. ¶¶ 46-
53.  The Plaintiff also pleads the factual predicates to assert
these claims, pursuant to Federal Rule of Civil Procedure 23, on
behalf of a class composed of "[a]ll Pennsylvania counties where
Defendants from 1995 to the present, have failed to record

mortgage assignments and pay all associated recording fees for such recording of mortgages." Id. ¶ 31; see also id. ¶¶ 30-33.

C.  Other Actions by Recorders Based on Failure to Record Assignments

Various county officials across the country have filed similar actions, asserting similar theories of recovery, against the Defendants, as well as against certain financial institutions who are MERS members.[5]  Depending on state law relating to mortgages and the wording of the individual state's recording statutes, some of these actions have been dismissed. See, e.g., Plymouth Cnty., Iowa ex rel. Raymond v. MERSCORP, Inc., ___ F. Supp. 2d ___, No. C 12-4022-MWB, 2012 WL 3597430, at *11 (N.D. Iowa Aug. 21, 2012); Fuller v. Mortgage Elec. Registration Sys., Inc., ___ F. Supp. 2d ___, No. 3:11-CV-1153-J-20MCR, 2012 WL 3733869, at *18 (M.D. Fla. June 27, 2012); Christian Cnty. Clerk ex rel. Kem v. Mortgage Elec. Registration Sys., Inc., No. 5:11-CV-00072-M, 2012 WL 566807, at *5 (W.D. Ky. Feb. 21, 2012). Others are proceeding. See, e.g., Dallas Cnty., Tex. v. MERSCORP, Inc., Civ. No. 3:11-cv-2733-O, ECF No. 65 (N.D. Tex. May 25, 2012) (order granting in part and denying in part

---

[5] In addition to actions by county officials, individuals have filed other suits relating to the obligation of the Defendants to pay recording fees seeking to proceed under qui tam or state or federal false claims act theories. See, e.g., California ex rel. Bates v. Mortgage Elec. Registration Sys., Inc., No. 2:10-cv-01429-GEB-CMK, 2011 WL 892646, at *2-5 (E.D. Cal. Mar. 11, 2011), aff'd ___ F.3d ___, 2012 WL 4054142, at *1 (9th Cir. Sept. 17, 2012).  Courts have typically dismissed these actions for the independent reason that information about the Defendants' practice of not recording assignments has been publicly available for some time, precluding qui tam and false claims act relief. See, e.g., id.

defendants' motion to dismiss); <u>Geauga Cnty. Prosecuting Attorney</u>
<u>v. MERSCORP, Inc.</u>, Case No. 11M001087 (Ohio Ct. Com. Pleas,
Geauga Cnty. filed Oct 13, 2011).

In Pennsylvania, Washington County has initiated a similar
lawsuit against U.S. Bank, N.A., in the Court of Common Pleas of
Washington County.  U.S. Bank attempted to remove the action to
the United States District Court for the Western District of
Pennsylvania, but, upon Washington County's motion, Judge Bissoon
remanded the action back to state court.  <u>County of Washington,</u>
<u>Pa. v. U.S. Bank Nat'l Ass'n</u>, Civ. No. 2:11-cv-1405-CB-CRE, ECF
No. 40 (W.D. Pa. Sept. 5, 2012) (order adopting report and
recommendation of Magistrate Judge Eddy and remanding the action
to state court); <u>see also</u> <u>County of Washington, Pa. v. U.S. Bank</u>
<u>Nat'l Ass'n</u>, Civ. No. 2:11-cv-1405-CB-CRE, 2012 WL 3860474, at
*16-27 (W.D. Pa. Aug. 17, 2012) (report and recommendation
recommending remand).

<u>D.  The Defendants' Motion to Dismiss</u>

The Defendants have moved to dismiss, arguing principally
that the Pennsylvania recording statute, 21 Pa. Stat. § 351, does
not require that mortgage assignments be recorded and that, even
if it did, no private right of action exists to enforce the
requirement.  (Def.'s Mem. at 8-22.)  The Defendants also argue
that the Plaintiff may not recover damages based on the
Defendant's failure to record mortgage assignments, <u>id.</u> at 22-23,

and that the Plaintiff has not stated a cause of action for
unjust enrichment or for declaratory or injunctive relief, id. at
23-27.

## II.   STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the
district court must "accept as true the factual allegations in
the complaint and all reasonable inferences that can be drawn
therefrom." Krantz v. Prudential Invs. Fund Mgmt., 305 F.3d 140,
142 (3d Cir. 2002) (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d
Cir. 1996)).  In so doing, we must consider whether the complaint
has alleged enough facts to state a claim for relief that is
plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544,
570 (2007).  A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 677-78
(2009).  Although the Court must accept well-pleaded facts as
true, it need not credit "bald assertions" or "legal
conclusions." In re Burlington Coat Factory Sec. Litig., 114
F.3d 1410, 1429 (3d Cir. 1997).  "The defendant bears the burden
of showing that no claim has been presented." Hedges v. United
States, 404 F.3d 744, 750 (3d Cir. 2005).

## III.   APPLICABLE LAW

In this diversity action, Erie R. Co. v. Tompkins, 304 U.S.

64 (1938) and its progeny require us "to follow state law as announced by the highest state court." Wayne Moving & Storage of N.J. Inc. v. School Dist. of Philadelphia, 625 F.3d 148, 154 (3d Cir. 2010) (internal quotations omitted). Because the Pennsylvania Supreme Court has not passed on several of the specific questions posed here, "[we] must predict how the state's highest court would resolve the issue." Id. (internal quotations omitted). "[W]e must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." Id. (internal quotations omitted).

## IV.  DISCUSSION

The parties have principally focused their briefing on two questions: (1) whether the Pennsylvania recording statute, 21 Pa. Stat. § 351, requires recordation of all conveyances, and (2) if so, whether the Legislature intended to create a right of action to enforce that requirement in the same statute. We conclude that the recording statute does require recordation of all conveyances. We further conclude that we need not reach the question whether the recording statute creates an implied right of action to enforce this requirement because the Legislature intended the quiet title action to permit such relief. And, because we conclude that the Plaintiff has pleaded sufficient

facts to state a quiet title claim, we deny the motion to dismiss on these bases.  We also conclude that the Plaintiff has pleaded sufficient facts to proceed on her unjust enrichment claim but not on her civil conspiracy claim; the civil conspiracy claim is therefore dismissed.

A.   21 Pa. Stat. § 351 Requires Recordation of All Conveyances

The Defendants argue that the Plaintiff fails to state a claim because the Pennsylvania recording statute, 21 Pa. Stat. § 351, does not make recording of conveyances compulsory.[6]  We predict that the Pennsylvania Supreme Court would conclude that the statute does make recording of conveyances compulsory,[7] so the Defendants have not met their burden to show that dismissal is proper on this basis.

The Pennsylvania recording statute provides:

> All deeds, conveyances, contracts, and other
> instruments of writing wherein it shall be
> the intention of the parties executing the
> same to grant, bargain, sell, and convey any
> lands, tenements, or hereditaments situate in
> this Commonwealth, upon being acknowledged by
> the parties executing the same or proved in
> the manner provided by the laws of this
> Commonwealth, shall be recorded in the office
> for the recording of deeds in the county

---

[6] None of the parties challenge the settled rule in Pennsylvania, a title theory state, that assignments of mortgages are conveyances of interests in land within the meaning of the recording statute.  See Pines v. Farrell, 577 Pa. 564, 575-76, 579, 848 A.2d 94 (2004).

[7] Of course, the fact that 21 Pa. Stat. § 351 makes the recording of conveyances compulsory does not affect the well-settled principle that unrecorded conveyances can still validly transfer interests in land between the parties to the conveyance.  E.g., Fiore v. Fiore, 405 Pa. 303, 306, 174 A.2d 858 (1961).

> <u>where such lands, tenements, and</u>
> <u>hereditaments are situate</u>. Every such deed,
> conveyance, contract, or other instrument of
> writing which shall not be acknowledged or
> proved and recorded, as aforesaid, shall be
> adjudged fraudulent and void as to any
> subsequent bona fide purchaser or mortgagee
> or holder of any judgment, duly entered in
> the prothonotary's office of the county in
> which the lands, tenements, or hereditaments
> are situate, without actual or constructive
> notice unless such deed, conveyance,
> contract, or instrument of writing shall be
> recorded, as aforesaid, before the recording
> of the deed or conveyance or the entry of the
> judgment under which such subsequent
> purchaser, mortgagee, or judgment creditor
> shall claim. Nothing contained in this act
> shall be construed to repeal or modify any
> law providing for the lien of purchase money
> mortgages.

21 Pa. Stat. § 351 (emphasis added).  This statute appears under

the heading[8] "NECESSITY OF RECORDING AND COMPULSORY RECORDING."

<u>Id.</u>

    The statutory command is therefore quite clear: "all . . .

conveyances . . . shall be recorded in the [relevant] office for

the recording of deeds."  21 Pa. Stat. § 351.  The Defendants

nonetheless argue that the statute makes recording permissive, at

the election of the parties, and merely dictates the <u>location</u>

where a party who elects to record must do so if he or she <u>elects</u>

to record the conveyance.  (Def.'s Mem. at 10-11.)

    The Defendants' reading of the statute is not permissible.

_____

    [8] "The headings prefixed to titles, parts, articles, chapters, sections
and other divisions of a statute shall not be considered to control but may be
used to aid in the construction thereof."  1 Pa. Cons. Stat. § 1924.

The Defendants, in effect, argue that we should substitute the words "may be recorded" for the legislatively enacted text, "shall be recorded." Because "[i]t is not [a court's] function to read a word or words into a statute that do not actually appear in the text where, as here, the text makes sense as it is, and the implied reading would change the existing meaning or effect of the actual statutory language," Pa. Sch. Bds. Ass'n., Inc. v. Commonwealth Pub. Sch. Employees' Retirement Bd., 580 Pa. 610, 621, 863 A.2d 432 (2004), we predict that the Pennsylvania Supreme Court would not alter the legislatively enacted text as the Defendants urge.

Only the Legislature may so alter the statute, as it has in other statutes governing recording of other types of documents with the relevant office for recording deeds. These statutes expressly make recording permissive by stating that such documents "may be recorded [in the relevant county office]." See 21 Pa. Stat. §§ 381, 385, 386, 387, 390, 391, 400, 404, 451. Viewed alongside these statutes, see 1 Pa. Stat. 1932(a)-(b), the use of the term "shall," instead of "may," in 21 Pa. Stat. § 351 demonstrates that the Defendants' proffered interpretation of the statute is not permissible.

Even were the Defendants' interpretation of the statute permissible, the Legislature clearly expressed its intent to make recording of conveyances compulsory in other ways. Those

13

statutes which <u>permit</u> recording of certain types of documents all appear under the heading "INSTRUMENTS SUBJECT TO RECORD." <u>See</u> 21 Pa. Stat. §§ 381, 385, 386, 387, 390, 391, 400, 404, 451.  In contrast, 21 Pa. Stat. § 351, which makes recording of certain types of documents <u>compulsory</u>, appears under the heading "NECESSITY OF RECORDING AND COMPULSORY RECORDING."

Accordingly, we conclude that "all . . . conveyances . . . shall be recorded," 21 Pa. Stat. § 351, means that all conveyances shall be recorded.  Even were an alternate reading permissible, the Legislature's organization of the statutes respecting recording of different categories of documents shows that it intended precisely this result.  Dismissal on this basis is unwarranted.

<u>B.   The Plaintiff May Bring a Quiet Title Action to Compel the Defendants to Record Mortgage Assignments</u>

Even if 21 Pa. Stat. § 351 requires recordation, the Defendants argue, no private right of action exists which would permit the Plaintiff to enforce the requirement in this Court. We conclude that Pennsylvania law permits any person in any manner interested in a conveyance, such as a mortgage assignment, to bring a quiet title action under Pennsylvania Rule of Civil Procedure 1061(b)(3) to compel the person with the appropriate documents in his or her possession to record them.  We further conclude that the Plaintiff, in her capacity as Montgomery County Recorder of Deeds, has pleaded sufficient facts to establish a

14

plausible interest in the recording of mortgage assignments in possession of the Defendants.  The Defendants have therefore not met their burden to show that dismissal is proper on this basis.

1.  *Availability of the Quiet Title Action*

In Pennsylvania, a quiet title action "may be brought . . . to compel an adverse party to . . . record . . . any document, obligation, or deed affecting any right, lien, title, or interest in land."  Pa. R. Civ. P. 1061(b)(3).  "Rule 1061 neither creates a new action nor changes the substantive rights of the parties or jurisdiction of the courts," Siskos v. Britz, 567 Pa. 689, 700, 790 A.2d 1000 (2002), and the Rule does not specify who may bring a quiet title action, see Pa. R. Civ. P. 1061(b)(3).  Accordingly, when determining whether a party may bring a quiet title action, Pennsylvania courts look to "the substantive rights and statutory jurisdiction established by the various Acts of Assembly (creating the legal action in Quiet Title)," Sutton v. Miller, 405 Pa. Super. 213, 220, 592 A.2d 83 (1991), and "case law interpreting [these predecessor statutes]," Siskos, 567 Pa. at 700.

Courts applying Pennsylvania law must look to these predecessor statutes even though the Legislature has repealed many of them.  United States v. Capobianco, 836 F.2d 808, 812-13 (3d Cir. 1988) (discussing continuing vitality of the Act of April 22, 1905, P..L. 265, § 4, the former 12 Pa. Stat. § 2537);

15

<u>Siskos</u>, 567 Pa. at 699-700 (discussing continuing vitality of the Act of March 8, 1889, P. L. 10, the former 12 Pa. Stat. § 1543); <u>Sutton</u>, 405 Pa. Super. at 219-221 (same).  Explaining this counterintuitive result requires some detailed history of the quiet title action in Pennsylvania, the Pennsylvania Rules of Civil Procedure, and the consolidation of the Pennsylvania Judicial Code.

Prior to the promulgation of the Pennsylvania Rules of Civil Procedure, an action to compel the recording of a conveyance fell under the Act of April 1, 1863, P. L. 188, the former 21 Pa. Stat. § 352 (the "Act").[9]  The Act permitted a "present owner . . .

---

[9] Section 1 of the Act, provided, in relevant part:

> Be it enacted . . . <u>That in all cases in which</u> any of the former owners, or <u>any other person, or persons, shall have, in his or their possession, any</u> bargains of sales, deeds, <u>conveyances</u>, or other instruments in writing, concerning any lands, tenements or hereditaments in this commonwealth, <u>he, or they, shall, upon six months' notice</u> being given to him, or them, by the present owner of such premises, or <u>by any other person, or persons, in any manner interested in any such</u> bargains of sales, deeds, <u>conveyances</u>, or other instruments of writing, <u>place the same upon record</u> in the proper county, or deliver the same into the hands, or possession, of the present owner, if such application be made by him.

Act of April 1, 1863, P. L. 188, § 1, <u>repealed in part by</u> 42 Pa. Cons. Stat. § 20002(a)[414] (emphasis added).  Section 2 of the Act provided, in relevant part:

> <u>That the courts of common pleas of this commonwealth shall have the power, upon petition</u> and affidavit, <u>setting forth that the petitioner believes that any person, or persons, has in his, or their, possession, any such</u> bargains of sale, deeds, <u>conveyances</u>, or other instruments of writing, <u>that the petitioner</u> is the present owner of the premises, or that he <u>is interested in such</u> bargains of sales, deeds, <u>conveyances</u>, or other instruments of writing, and that six months' notice has been given to the defendants,

16

. or . . . any other person, or persons, <u>in any manner interested</u> in any such . . . conveyances" to require the possessor of the operative legal documents, after giving notice of the interested party's desire for recordation, to record them.  Act of April 1, 1863, P. L. 188, § 1, <u>repealed in part by</u> 42 Pa. Cons. Stat. § 20002(a)[414] (emphasis added).  The Act further permitted a petitioner frustrated in his or her attempt to compel recordation pursuant to § 1 of the Act to commence an action to "decree and direct the said defendant, or defendants, to deliver up, or record, such bargain of sale, deeds, or conveyances, or other instruments."  Act of April 1, 1863, P. L. 188, § 2, <u>repealed in part by</u> 42 Pa. Cons. Stat. § 20002(a)[414].

Effective January 1, 1947, the Pennsylvania Supreme Court promulgated Pennsylvania Rule of Civil Procedure 1061, governing the practice and procedure of the quiet title action, and Rule 1455, suspending thirty statutes "insofar as they apply to the practice and procedure in actions to quiet title . . . in

---

or person, or persons, in whose possession the same is, or are alleged to be, <u>to deliver up, or record the same, to grant a rule upon such person, or persons, to show cause why the same should not be delivered up, or recorded</u>; upon the hearing of said rule, unless the defendant, or defendants, in the same, show, to the satisfaction of the court, why the same should not be delivered, or recorded, <u>the said court are hereby authorized and required to decree and direct the said defendant, or defendants, to deliver up, or record, such</u> bargain of sale, deeds, or <u>conveyances</u>, or other instruments, in said petition described; which decree shall be enforced by attachment.

Act of April 1, 1863, P. L. 188, § 2, <u>repealed in part by</u> 42 Pa. Cons. Stat. § 20002(a)[414] (emphasis added).

accordance with Section 1 of the Act approved June 21, 1937, P.L. 1982, No. 392 [i.e. the former 17 Pa. Stat. § 61]."  Pa. R. Civ. P. 1455, rescinded 21 Pa. Bull. 1274, 1280-82 (Mar. 11, 1991).[10] The Act was one of the predecessor statutes to the quiet title action suspended as to practice and procedure upon the promulgation of Rule 1061.  Pa. R. Civ. P. 1455(9), rescinded 21 Pa. Bull. 1274, 1280-82 (Mar. 11, 1991).

Under the former 17 Pa. Stat. § 61, as under its replacement, 42 Pa. Cons. Stat. § 1722(a), the Pennsylvania Rules of Civil Procedure, like all rules promulgated by the Pennsylvania Supreme Court, may neither "abridge, enlarge, nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court."  42 Pa. Cons. Stat. § 1722(a); Sutton, 405 Pa. Super. at 220 (quoting the former 17 Pa. Stat. § 61).  As a result, during the period when Rule 1455 suspended the predecessor statutes to the quiet title action as to practice and procedure, Pennsylvania courts consistently held that "[t]he substantive requirements of [the statutes suspended by Rule 1455] remain in force."  Hoffman v. Bozitsko, 198 Pa. Super. 553, 557, 182 A.2d 113 (1962); accord, e.g., Seven Springs Farm, Inc. v. King, 235

---

[10] The Pennsylvania Supreme Court also promulgated many other Rules of Civil Procedure suspending the operation of other statutes as to practice and procedure.  E.g., Pa. R. Civ. P. 3241, rescinded 28 Pa. Bull. 2026 (Apr. 20, 1998) (suspending, inter alia, the Act of April 22, 1905, P. L. 265, § 4, the former 12 Pa. Stat. § 2537, as to practice and procedure).

Pa. Super. 450, 454, 344 A.2d 641 (1975).

As part of the attempted consolidation of statutes relating to the Pennsylvania judiciary, the Legislature enacted the the Judiciary Act Repealer Act of 1978 ("JARA"). JARA repealed the Act, along with some 1,500 other statutes. 42 Pa. Cons. Stat. § 20002(a)[414]; see generally 42 Pa. Cons. Stat. § 20002(a). As to the interpretation of its actions, the Legislature declared that, "[t]he specific repeals effected by [42 Pa. Cons. Stat. § 20002(a)] are intended to eliminate obsolete, unnecessary or suspended statutory provisions," 42 Pa. Cons. Stat. § 20003(b), and that, with respect to the repeal of statutes as obsolete, 1 Pa. Cons. Stat. § 1978[11] would apply to preserve certain statutorily created rights after repeal of the relevant statute, 42 Pa. Cons. Stat. § 20003(a).

Here, Rule 1455 plainly did not suspend the Act's substantive provisions, including the definition of parties entitled to seek relief under it, meaning that those provisions were in force when the Legislature enacted JARA. See Pa. R. Civ.

---

[11] This statute provides:

> Whenever a statute which created a personal or property right in derogation of the common law is repealed as obsolete or by a code which does not contain an express provision with respect to such personal or property right, the repeal shall not be construed to revive the prior inconsistent common law rule, but such repeal shall be construed as a recognition by the General Assembly that such personal or property right has been received into and has become a part of the common law of this Commonwealth.

1 Pa. Cons. Stat. § 1978.

19

P. 1455(9), rescinded 21 Pa. Bull. 1274, 1280-82 (Mar. 11, 1991)

(suspension only effective as to "practice and procedure"); see

also 42 Pa. Cons. Stat. § 1722(a) (procedural rules may not

"abridge, enlarge [ ]or modify the substantive rights of any

litigant"). And because Rule 1061(b)(3) does not define who may

seek to compel recordation in a quiet title action, the

definition of the parties entitled to seek such relief contained

in the Act, the relevant predecessor statute, is both consistent

with the Rule and far from unnecessary or obsolete. See Pa. R.

Civ. P. 1061(b)(3). Because the substantive provisions of the

Act, including its definition of who could bring a suit to compel

recordation of conveyances, were not obsolete, unnecessary, or

suspended when the Legislature enacted JARA, it follows that the

Legislature did not intend to repeal these provisions. See 42

Pa. Cons. Stat. § 20003(b). We therefore predict that the

Pennsylvania Supreme Court would conclude that the Act's

substantive definition of who may sue to compel recordation

continues to govern who may bring Rule 1061(b)(3) actions.[12]

--------------------------------------------------------------

[12] If we harbored any further doubt that the Legislature intended this result or that the Pennsylvania Supreme Court would conclude the same, we would note that the Legislature has foreclosed such doubt. In JARA, it expressly referred to the provision of the Statutory Construction Act saving rights created by statute in derogation of the common law even after the statute's repeal. 42 Pa. Cons. Stat. § 20003(a). This provision, 1 Pa. Cons. Stat. § 1978, directs courts interpreting Pennsylvania law to construe the repeal of a statute which "created a personal or property right in derogation of the common law" not as reviving the old common law rule but, instead, to construe the repeal as recognizing that the statutory rule has become part of the common law of Pennsylvania. 1 Pa. Cons. Stat. § 1978. The Act, insofar as it created a cause of action for relief previously only available in equity, was enacted in derogation of the common law, see Sutton, 405 Pa. Super. at 218-20, and created a personal right to bring an action for "any

The Pennsylvania courts and the Third Circuit have come to the same conclusion about the continued vitality of similar repealed statutes. In <u>Sutton</u>, Superior Court considered whether the plaintiffs properly brought an action under Rule 1061(b)(1). <u>Id.</u> at 217-18. Superior Court comprehensively reviewed the history of Pennsylvania Rules of Civil Procedure 1061 and 1455 and the effect of the repeal of the quiet title action's predecessor statutes by JARA. <u>Id.</u> at 218-23; <u>see also</u> 42 Pa. Cons. Stat. § 20002(a)[752] (repealing the former 12 Pa. Stat. § 1543). Superior Court concluded that certain substantive elements of the predecessor statute, 12 Pa. Stat. § 1543, including the "designation of who may sue," survived both consolidation under the Pennsylvania Rules of Civil Procedure and repeal by JARA.[13] <u>Sutton</u>, 405 Pa. Super. at 220-222 (citing, <u>inter alia</u>, 42 Pa. Cons. Stat. § 1722(a) (procedural rules may

_____

person, or persons, in any manner interested" in the conveyances to be recorded, <u>see</u> Act of April 1, 1863, P. L. 188, §§ 1-2, <u>repealed in part by</u> 42 Pa. Cons. Stat. § 20002(a)[414]. Pursuant to the Statutory Construction Act, if we construed JARA to have repealed the Act, we should consider the subsequent repeal of the Act as recognizing that the personal right to bring an action to compel recordation along the lines stated in the Act had entered the common law; we should not construe the repeal as reviving the earlier common law rule, which did not permit such relief. <u>See</u> 1 Pa. Cons. Stat. § 1978. Accordingly, although we conclude that JARA did not repeal the Act's substantive definition of who may bring an action to compel recordation, concluding that JARA <u>did</u> repeal that portion of the Act would not change the conclusion that the Act's definition of who may sue continues to govern in Rule 1061(b)(3) actions.

[13] The <u>Sutton</u> Court noted that the repealed predicate statute there, the Act of March 8, 1889, P. L. 10, the former 12 Pa. Stat. § 1543, was repealed only insofar as inconsistent with 42 Pa. Cons. Stat. 1722(b). This is wrong. JARA purported to repeal the statute in its entirety effective in 1980; it was repealed <u>immediately</u> only insofar as it was inconsistent with 42 Pa. Cons. Stat. 1722(b). 42 Pa. Cons. Stat. §§ 20002(a)[752], 20004(b).

not "abridge, enlarge []or modify the substantive rights of any litigant")). The Pennsylvania Supreme Court subsequently adopted this reasoning with respect to the former 12 Pa. Stat. § 1543 in Siskos. See 567 Pa. at 699-700.

The Third Circuit predicted that the Pennsylvania Supreme Court would reason similarly with respect to the substantive elements of another statute ostensibly repealed by JARA, the Act of April 22, 1905, P. L. 265, § 4, the former 12 Pa. Stat. § 2537. Capobianco, 836 F.2d at 811-13. That statute provided that delivery of a deed to a sheriff for purposes of recording operated as a constructive delivery of the deed to the named grantee. Id. at 811-12. The Pennsylvania Supreme Court had suspended the statute as to practice and procedure by Rule, and the Legislature purported to repeal it as part of JARA. Id. at 812. The Court stated:

> [W]e believe that the state supreme court would conclude that the Act of 1905-insofar as it gives substantive effect to constructive delivery-was not affected by the 1960 promulgation of Pennsylvania Rule of Civil Procedure 3135.
>
> Whether JARA repealed the constructive delivery provision is subject to some doubt. Although JARA declares the 1905 statute repealed, the constructive delivery provisions arguably are not "obsolete, unnecessary, or suspended." [42 Pa. Cons. Stat. § 20003(b)]. By its terms, JARA was designed to affect procedure and not to abrogate existing substantive law.
>
> . . .

> The question then is whether constructive
> delivery, enforced by legislation for more
> than seventy-five years and which today
> remains consistent with the newly adopted
> procedural rule, is to be abrogated by
> implication through a statutory provision
> adopted primarily for procedural and
> housekeeping reasons.  We think not.  From
> our study of the relevant statutes, their
> history, the procedural rules, and the sparse
> case law available, we predict that the
> Supreme Court of Pennsylvania would hold that
> a sheriff's transmittal of a deed for
> recordation constitutes constructive delivery
> sufficient to pass legal title.

Id. at 812-13.

Here, the Act has the same history of enactment, suspension as to practice and procedure by Rule, and ostensible repeal by JARA as the former 12 Pa. Stat. § 2537 and the former 12 Pa. Stat. § 1543.  We share the view that the Act, a long-standing legislative enactment which remains consistent with the modern quiet title action codified in Rule 1061, was not "abrogated by implication through a statutory provision adopted primarily for procedural and housekeeping reasons."  See Capobianco, 836 F.2d at 813.  The analysis of the continued vitality of the statutes at issue in Capobianco, Siskos, and Sutton therefore reinforces our conclusion that the Pennsylvania Supreme Court would hold that the Act continues to govern who may bring a quiet title action to compel recordation under Rule 1061(b)(3).  See Capobianco, 836 F.2d at 811-13; Siskos, 567 Pa. at 699-700; Sutton, 405 Pa. Super. at 218-23.

23

We therefore predict that the Pennsylvania Supreme Court would hold that the Act continues to govern in Rule 1061(b)(3) actions to compel recordation.  It follows that a plaintiff states a claim for quiet title relief by pleading, among other elements, that she is "the present owner of such premises, or . . . any other person, or persons, _in any manner interested_ in any such . . . conveyances."  Act of April 1, 1863, P. L. 188, § 1, _repealed in part by_ 42 Pa. Cons. Stat. § 20002(a)[414] (emphasis added).

2.   *The Defendants' Quiet Title Argument*

The Plaintiff did not expressly invoke the availability of quiet title relief in her pleadings.  (_See generally_ Compl.)  Nor did she argue that the facts she pleaded state a quiet title claim.  (_See generally_ Pl.'s Response.)  But the _Defendants_, in their briefing, asserted that the quiet title action only permits present owners to bring quiet title actions to compel recordation against former owners.  (Def.'s Mem. at 20-21.)  This limited right to relief, the Defendants argued, precludes the conclusion that the Legislature intended an implied right of action to exist in 21 Pa. Stat. § 351.  _Id._

The Defendants' limiting construction of the quiet title action finds no basis in the text of the Rule, _see_ Pa. R. Civ. P. 1061(b), or the text of the Act, Act of April 1, 1863, P. L. 188, § 1, _repealed in part by_ 42 Pa. Cons. Stat. § 20002(a)[414].  The

24

Pennsylvania Supreme Court has held that a quiet title action to compel recordation is available against parties other than former owners. Mower v. Mower, 367 Pa. 325, 328, 80 A.2d 856 (1951) (quiet title action permitted against custodian bank); see also Mack v. Schuylkill Trust Co., 33 Pa. Super. 128, 1907 WL 3595, at *2-3 (1906) (action against title insurer permitted under the Act). The Defendants' argument on this point is therefore meritless.

Moreover, upon the Defendants' invocation of the quiet title action, we have determined that the quiet title action is available on much broader terms than those advanced by the Defendants. See Section IV.B.1 supra. Construing the pleadings to do substantial justice, as we must, see Fed. R. Civ. P. 8(e), and noting that "[a]dherence to the rigid theory-of-the-pleadings doctrine has been abolished by the Federal Rules of Civil Procedure," Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 920, 923 (3d Cir. 1984), we consider whether the Plaintiff has pleaded sufficient facts to entitle her to relief under a quiet title theory.[14]

3.   The Plaintiff's Interest in Recordation of Mortgage

---

[14] If the Plaintiff has successfully pleaded sufficient facts to state a claim on a quiet title theory, she need not amend her complaint to identify this legal theory expressly. Indeed, the Supreme Court and the Third Circuit have instructed that a district court may disregard any "legal conclusions" found in a pleading. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009)). Because the identification of a legal theory is, by definition, a "legal conclusion," it follows that a plaintiff need not expressly identify any legal theory in order to state a valid claim. See id.

*Assignments*

Having concluded that the Pennsylvania Supreme Court would permit a party in any manner interested in a conveyance, such as a mortgage assignment, to bring a quiet title action under Rule 1061(b)(3), we now turn to the Plaintiff's factual allegations to determine whether she has stated a sufficient interest in the mortgage assignments at issue here. We conclude that she has.

The Act, in permitting an action to compel recordation by any person "in any manner interested" in a conveyance, see Act of April 1, 1863, P. L. 188, § 1, repealed in part by 42 Pa. Cons. Stat. § 20002(a)[414], creates a broad right of enforcement. Similarly, Rule 1061 "was intended to be extremely broad in scope," Bruker v. Burgess and Town Council of Borough of Carlisle, 376 Pa. 330, 333-34, 102 A.2d 418 (1954), and "is to be given a liberal construction," White v. Young, 409 Pa. 562, 566, 186 A.2d 919 (1963).

Despite this broad right of enforcement, we conclude that a plaintiff must still show an interest of some type in the land at issue or some pecuniary interest which is affected by the status of the relevant documents as recorded or unrecorded.[15] We conclude that this standard is most consistent with the Act's broad "in any manner interested" language, see Act of April 1, 1863, P. L. 188,

---

[15] Notably, the Act refers to the relevant interests as in the transactions documented in the writings to be recorded, not necessarily in the land at issue. See Act of April 1, 1863, P. L. 188, §§ 1-2, repealed in part by 42 Pa. Cons. Stat. § 20002(a)[414].

§ 1, repealed in part by 42 Pa. Cons. Stat. § 20002(a)[414], while still preserving the requirement that a plaintiff "show a substantial, direct and immediate interest in the subject matter of the litigation" sufficient to confer standing generally under Pennsylvania law.[16]  See In re Incorporation of Borough Valley-Hi, 33 Pa. Commw. 180, 183-84, 381 A.2d 204 (1977) (citing William Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975)).

Here, the Plaintiff has pleaded that, during the securitization process, the beneficial ownership of a mortgage passes through several special purpose entities on its way to the ultimate owner, typically a securitized trust.  (Compl. ¶¶ 23-29.) She has further pleaded that, because MERS purports to be the "nominee" for the mortgage owner and is the named mortgagee on the recorded instrument, none of these transfers - assignments of the mortgage - are recorded.  Id.  And, without recording, the Plaintiff's office may collect no fee.  See id. ¶ 21.

The Plaintiff has also pleaded that recording fees "are allocated to maintain the county recorders' records," as well as

---

[16] A party who pleads sufficient facts to satisfy the Act's standard will also satisfy the Article III standing requirements to "demonstrate that he suffered a concrete and particularized injury-in-fact that is 'actual or imminent, not conjectural or hypothetical' and to show that the "injury [is] fairly traceable to the actions of the defendants and likely to be redressed by a favorable decision."  Askew v. Trustees of General Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc., 684 F.3d 413, 418 (3d Cir. 2012) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

for other county purposes.  Id.  The Plaintiff has recorded at least 130,000 mortgages in the name of MERS as nominee for the lender and the lender's successors and assigns, and we infer from the complaint that the beneficial owner of some of these mortgages has changed as a result of activity on the secondary mortgage market.  See id. ¶¶ 16, 21.  As a result, if mortgage assignments from one beneficial owner to another must be recorded, the Plaintiff has pleaded that her office would be entitled to the resulting fees.  See id.  Accordingly, the Plaintiff has pleaded a pecuniary interest which is affected by whether the mortgage assignments which MERS tracks are recorded.[17]  See id.  The Plaintiff has therefore pleaded sufficient facts to establish herself as a party "in any manner interested" in the assignment – i.e. conveyance – of mortgages recorded in the name of MERS as nominee to proceed with a quiet title action to compel recordation of such assignments.

4.  *Declaratory and Injunctive Relief*

Because the Plaintiff has pleaded sufficient facts to state a quiet title claim, she may also pursue declaratory and injunctive

---

[17] The Plaintiff also cites to Franklin Township and Cnty. of Fayette v. Department of Environmental Resources and Elwin Farms, Inc., 500 Pa. 1, 452 A.2d 718 (1982) and South Fayette Township v. Commonwealth, 73 Pa. Commw. 495, 501-502, 459 A.2d 41 (1983) for the proposition that a political subdivision may have standing to sue in order to enforce its own statutorily prescribed responsibilities.  The Plaintiff points to her statutory responsibility to maintain accurate property records as an additional source of her standing to bring this action.  (Pl.'s Response at 20-23.)  Because we conclude that the Plaintiff has adequately alleged that she meets the relevant standing requirements based on her office's pecuniary interest, we need not reach this question.

relief. Rule 1066 governs the remedies available to a plaintiff who prevails in a quiet title action. As relevant here, the Rule provides:

> "[u]pon granting relief to the plaintiff, the court . . . (3) shall enter a final judgment ordering the defendant . . . to . . . record . . . any plan, document, obligation or deed determined to be valid, invalid, satisfied or discharged, and to execute and deliver any document, obligation or deed necessary to make the order effective; or (4) shall enter any other order necessary for the granting of proper relief."

Pa. R. Civ. P. 1066(b)(3)-(4). Because the Plaintiff has pleaded a plausible claim pursuant to Rule 1061(b)(3), we have the authority to order the Plaintiff's requested declaratory and injunctive relief should she prevail on the merits and show that an injunction or declaratory judgment is "necessary for the granting of proper relief." See Pa. R. Civ. P. 1066(b)(4).

5. *Damages*

The Defendants assert that the Plaintiff may not recover damages based on the past failure to record mortgage assignments, arguing that the Plaintiff may not charge a fee unless her office actually records a document. (Def.'s Mem. at 22-23.) The Plaintiff responds that she seeks no damages based on failure to record mortgage assignments but, instead, seeks only to compel the Defendants to record mortgage assignments past, present, and future and, at the time of recordation, collect the appropriate fee. (Pl.'s Response at 26-27.) We have concluded that the

Plaintiff has stated a claim to compel the Defendants to record mortgage assignments.  The Defendants have not cited any authority which would prevent the Plaintiff from charging the typical recordation fee on any mortgage assignments the Defendants must record if she prevails in this action, so we conclude that she may pursue this relief.

C.  We Need Not Decide Whether an Implied Right of Action Exists in 21 Pa. Stat. § 351

The Plaintiff, in both the complaint and in her response to the Defendant's motion, frames the cause of action she asserts as an implied right of action under 21 Pa. Stat. § 351.  (See Compl. ¶ 34-36; Pl.'s Response at 24-26.)  The touchstone of the implied right of action analysis is the intent of the enacting legislature.  See Wisniewski v. Rodale, Inc., 510 F.3d 294, 301 (3d Cir. 2007); Schappell v. Motorists Mut. Ins. Co., 594 Pa. 94, 103, 934 A.2d 1184 (2007).  Our review of the Legislature's intent reveals that it intended that any interested party be permitted to seek the relief the Plaintiff seeks here in a quiet title action. See Section IV.B supra.  Because we have concluded that the Plaintiff has pleaded sufficient facts to proceed under a quiet title theory, see id., we need not decide whether, if a quiet title action were unavailable, the Plaintiff could nonetheless proceed under an implied right of action contained in 21 Pa. Stat. § 351.

D.  Unjust Enrichment

The Plaintiff further pleads a claim of unjust enrichment. "The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case." MetroClub Condo. Ass'n v. 201-59 N. Eighth Street Assocs., LP, 47 A.3d 137, 148 (Pa. Super. 2012).

Here, the Plaintiff has adequately alleged that the Defendants availed themselves of the benefits of the recording system by recording mortgages in the name of MERS as nominee.[18] (Compl. ¶¶ 26-29, 41-45.) The Plaintiff has further alleged that the Defendants, by tracking the transfer of beneficial interests in a MERS-as-nominee mortgage, have evaded recording fees that the beneficial owners would otherwise owe based on these transfers. Id. And the Plaintiff has alleged that the Defendants, by recording mortgages in the name of MERS-as-nominee but continuing to transfer the beneficial interests in these mortgages, artificially and unlawfully created gaps in the chain of title of these mortgages. Id. Finally, she has pleaded that the Defendants, despite these gaps in the chain of title, have

---

[18] The Defendants' actions on this point speak louder than their arguments before this Court. If recording conveyed no benefits, then MERS would not exist. See Section I.A supra.

31

represented and continue to represent that no such gaps exist and that all relevant documents were properly recorded, especially during mortgage foreclosure proceedings.  See id. ¶¶ 28-29; see also Section IV.A supra.

Accordingly, construing the pleadings in her favor, the Plaintiff has successfully pleaded that the Defendants have enjoyed the full benefits of the recording system without paying the full value for these benefits in the form of the fees properly due for each transfer of the beneficial interest of a mortgage. (See Compl. ¶¶ 26-29, 41-45.)  She has further successfully alleged that the Defendants did so in violation of a statutory command to record such assignments.  See id.; Section IV.A supra. Because a plaintiff may recover when "it would be inequitable for the defendant to retain the benefit without paying full value for it," In re Lampe, 665 F.3d 506, 520 (3d Cir. 2011) (citing Schenck v. K.E. David, Ltd., 446 Pa. Super. 94, 666 A.2d 327, 328 (1995)) (emphasis added), these allegations state a viable unjust enrichment claim.

E.  Civil Conspiracy

The Plaintiff also pursues a cause of action for civil conspiracy.  "The essential elements of a claim for civil conspiracy are: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act

32

done in pursuance of the common purpose; and, (3) actual legal
damage. . . . Proof of malice, or an intent to injure, is also an
essential part of a cause of action for conspiracy." Commonwealth
v. TAP Pharmaceutical Prods., Inc., 36 A.3d 1112, 1144 (Pa. Commw.
2011). Malice requires proof that the conspirators took unlawful
actions with the specific intent to injure the plaintiff, instead
of simply furthering their own interests through unlawful means.
See id. at 1185 (collecting cases).

Here, the Plaintiff only pleads that "Defendants acted in
combination . . . with the specific purpose of unlawfully failing
to record assignments of mortgages and paying the associated
fees." (Compl. ¶ 39.) Plaintiffs pointedly do not allege that
the Defendants or their purported co-conspirators acted with the
specific intent to harm the Plaintiff or any other county
recorder's office. See id. Although the Plaintiff has adequately
alleged that the Defendants unlawfully elected not to record
certain documents, she has not adequately alleged that the
Defendants, along with their purported co-conspirators, did so
with the requisite malice. See id. The civil conspiracy claim is
dismissed.

F. Colorado River Abstention

Finally, now that the United States District Court for the
Western District of Pennsylvania has remanded a similar action by
a different Pennsylvania county to state court, we sua sponte

33

consider whether to abstain under the doctrine of Colorado River
Water Conservation District v. United States, 424 U.S. 800 (1976)
and its progeny.  We conclude that the circumstances here do not
warrant abstention.

"The threshold requirement for a district court to even
entertain abstention is a contemporaneous parallel judicial
proceeding.  For judicial proceedings to be parallel, there must
be identities of parties, claims, and time. . . .  [P]arallel
cases involve the same parties and substantially identical claims,
raising nearly identical allegations and issues. . . . [The Third
Circuit] ha[s] never required complete identity of parties for
abstention. . . .  However, even when there is a substantial
identity of parties and claims, abstention is still appropriate
only when there are ongoing, not completed parallel state
proceedings."  IFC Interconsult, AG v. Safeguard Int'l Partners,
LLC, 438 F.3d 298, 306 (3d Cir. 2006) (internal quotations and
citations omitted).

Now that the Washington County action is proceeding in state
court, a contemporaneous state proceeding exists which raises
substantially identical allegations and issues.  But, because
Washington County, a different political subdivision, is
proceeding against U.S. Bank, N.A., a non-party to this action,
insufficient identity of parties exists to call that action
"parallel" to this one.  Colorado River abstention is not

34

appropriate here.

## IV.  CONCLUSION

For the reasons so stated, the Defendants' Motion to Dismiss is granted as to Count II of the complaint, alleging civil conspiracy, and denied as to the remaining counts.  An appropriate order follows.