HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN KNECHT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FIDELITY NATIONAL TITLE INSURANCE COMPANY, et al., <br><br> Defendants. | CASE NO. C12-1575RAJ <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendants Deutsche Bank National Trust Company ("DB") and Mortgage Electronic Registration Systems, Inc. ("MERS"), a motion for summary judgment from Defendant Fidelity National Title Insurance Company ("Fidelity"), and a motion for partial summary judgment from Plaintiff John Knecht. The court finds oral argument unnecessary. For the reasons stated herein, the court GRANTS Defendants' motions in part and DENIES them in part, (Dkt. ## 67, 69) and DENIES Mr. Knecht's motion (Dkt. # 64). A bench trial on the claims that survive Defendants' motions will begin on November 12, 2014. A schedule for pretrial submissions concludes this order.

## II. BACKGROUND

The court has already considered this dispute in a March 11, 2013 order granting in part and denying in part Defendants' motions to dismiss. Although the court dismissed

ORDER – 1

some of Mr. Knecht's claims without prejudice, he declined to amend his complaint. The court now considers whether to grant summary judgment on the claims that survived the motions to dismiss: Mr. Knecht's claim for specific violations of the Washington Deed of Trust Act (RCW Ch. 61.24), his claim to enjoin a trustee's sale of his North Bend residential property, his claim for violations of the Washington Consumer Protection Act (RCW Ch. 19.86, "CPA"), and a few claims for declaratory relief.

Each of those claims arises from a $315,000 loan in 2006 from American Brokers Conduit ("ABC") to Mr. Knecht, which is memorialized in an adjustable-rate promissory note. ABC secured that loan with a deed of trust to Mr. Knecht's North Bend residential property. The deed of trust named ABC as the lender, Fidelity National Title Company of Washington (a different entity than Fidelity, the Defendant in this case) as the trustee, and MERS as the beneficiary of the deed of trust. The deed of trust stated that MERS acted "solely as a nominee for [ABC] and [ABC]'s successors and assigns."

Mr. Knecht is in default on that loan, which no one disputes. He has been in default since 2010. Mr. Knecht does not dispute that he has not made loan payments since then, and he does not dispute that he cannot afford to pay what he owes.

DB and Fidelity have three times attempted to foreclose Mr. Knecht's deed of trust. DB purports to be the owner of Mr. Knecht's note, and thus purports to be the beneficiary entitled to foreclose. It purports to have appointed Fidelity in September 2010 as the trustee entitled to conduct the foreclosure, and it was Fidelity who recorded notices of trustee's sales in October 2010, September 2011, and June 2012. Fidelity and DB ultimately abandoned each of these attempted foreclosures. There is no trustee's sale currently pending,[1] although Defendants are conspicuously silent about whether they intend to conduct a sale in the future. It is difficult to imagine that they have any other

---

[1] As the court noted in its previous order, the King County Superior Court issued a preliminary injunction enjoining any trustee's sale before Defendants removed the case to this court. Mar. 11, 2013 ord. (Dkt. # 20) at 2-3, 8. No Defendant has asked the court to set aside that injunction.

ORDER – 2

intent. Mr. Knecht is still in default on the loan; it would appear that DB's only means of cutting its losses is to foreclose.

The dispute at the core of this dispute requires two critical determinations. First, the court must decide if DB is entitled to summary judgment that it was, throughout its foreclosure efforts, the beneficiary of Mr. Knecht's deed of trust. If it was not, it had no authority to appoint Fidelity as a successor trustee, and Fidelity had no authority to conduct foreclosure proceedings. Second, the court must decide if either Fidelity or Mr. Knecht are entitled to summary judgment that Fidelity complied with RCW 61.24.030(7), the provision of the Deed of Trust Act that requires a trustee to have proof that the beneficiary is the owner of the note secured by the deed of trust. As the court will explain in Part III of this order, DB is not entitled to summary judgment that it was the beneficiary, and neither Mr. Knecht nor Fidelity is entitled to summary judgment that Fidelity had the requisite proof of DB's beneficiary status. Resolving both of those issues will require a bench trial. In Part IV, the court will address Mr. Knecht's specific claims to determine which will be at issue at trial.

The court applies the familiar summary judgment standard, which requires it to draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

ORDER – 3

### III.  ANALYSIS

**A.     Is DB the Beneficiary of Mr. Knecht's Deed of Trust?**

A deed of trust is a three-party transaction in which a borrower (the grantor of the deed of trust) conveys title to her property to a trustee, who holds the title in trust for the lender, who is the beneficiary of the deed of trust.  *Bain v. Metro. Mortgage Group, Inc.*, 285 P.3d 34, 38 (Wash. 2012).  The deed of trust grants the beneficiary a power of sale that it can invoke if the borrower defaults, in which case the trustee is empowered to sell the property at a trustee's sale.  *Id.*  Washington's Deed of Trust Act places non-waivable restrictions on the power of sale and the means by which the trustee can conduct a sale. *Id.* ("The legislature has set forth in great detail how nonjudicial foreclosures may proceed.  We find no indication that the legislature intended to allow the parties to vary those procedures by contract.")  Provided the trustee and beneficiary comply with the Deed of Trust Act, the trustee can sell the property without judicial oversight.

Mr. Knecht contends that DB is not (and was not) the beneficiary of his deed of trust.

#### 1.     MERS Falsely Declared Itself the Beneficiary of Mr. Knecht's Deed of Trust, and Purported to Convey to DB Rights That MERS Never Held.

From its inception, Mr. Knecht's deed of trust ran afoul of the Deed of Trust Act by designating MERS as its beneficiary.  The Act declares that the beneficiary of a deed of trust is "the holder of the instrument or document evidencing the obligations secured by the deed of trust . . . ."  RCW 61.24.005(2).  Banks and other well-heeled financial interests, in an effort to facilitate the easy transfer of mortgage obligations, created MERS in the mid 1990s.  *Bain*, 285 P.3d at 39-40.  MERS is, in essence, a database for tracking mortgage rights that permits MERS's member institutions to transfer mortgage obligations without publicly recording the transfers.  *Id.*  In Washington, lenders hoping to take advantage of the MERS system designated MERS as the beneficiary of deeds of trust, just as ABC did in Mr. Knecht's deed of trust.  But it is now clear that Washington

ORDER – 4

law does not permit MERS to act as a beneficiary unless it is also the "holder" of the note secured by the deed of trust. *Bain*, 285 P.2d at 47.

There is no suggestion that MERS ever held Mr. Knecht's note, and yet it purported in April 2010 to assign to DB "the Promissory Note secured by [the Knecht] deed of trust and also all rights accrued or to accrue under said Deed of Trust." The assignment, which is recorded in King County, was executed by "MERS as nominee for [ABC]," but there is no evidence that ABC actually authorized MERS to effect the transfer. *See Bavand v. OneWest Bank, FSB*, 309 P.3d 636, 649 (Wash. Ct. App. 2013) (noting MERS's failure to establish its agency relationship with a noteholder).

There is no dispute in this case that MERS lacked the power to transfer anything to DB. DB does not rest its claim to be the beneficiary of Mr. Knecht's deed of trust on the MERS assignment, or at least it does not do so in these motions. Indeed, DB consistently refuses to acknowledge that MERS purported to assign not only the deed of trust, but Mr. Knecht's note as well. DB avoids the MERS assignment, it appears, because it prefers that the court not focus on that apparently void transfer of the deed of trust and note. DB prefers that the court conclude that it acquired its interest in the deed of trust and note without MERS's assistance.

### 2. The Declaration from Mr. Knecht's Bankruptcy Does Not Entitle DB to Summary Judgment.

The court now considers DB's evidence that it obtained its alleged interest in Mr. Knecht's Note from a source other than MERS. DB relies on a version of Mr. Knecht's note that is endorsed in blank by ABC. Ewbank Decl. (Dkt. # 68), Ex. B. There is no evidence as to how DB acquired that note. The note is in the record via a declaration from DB's counsel stating merely that the endorsed document is a true and correct copy of the note. *Id.* ¶ 3. That statement raises more questions than it answers. The endorsement is undated, but it was plainly executed after Mr. Knecht signed the note.

ORDER – 5

There is no direct evidence that DB acceded to ABC's rights as the lender on the note and the beneficiary of the deed of trust.

Instead of direct evidence, DB asks the court to rely on documents filed in Mr. Knecht's 2010 bankruptcy proceeding, which preceded the foreclosure attempts at issue in this case.  In the bankruptcy proceeding, a person claiming to be the authorized agent of American Home Mortgage Servicing, Inc. ("AHMSI"), filed a March 2010 declaration stating that AHMSI was a servicer for DB.  Ewbank Decl. (Dkt. # 68), Ex. C.  It also stated that DB was "the holder and owner" of the Knecht note.  *Id.* ¶ 6.  The declaration purports to attach "documents evidencing the ownership of the loan including the Note and Deed of Trust," *id.*, but the only documents attached to it are the note and deed of trust.[2]  The declarant (a "Bankruptcy Specialist" residing in Florida) stated that he had "personal knowledge" of the facts to which he attested.  *Id.* ¶ 1.  But the only basis he states for his "personal knowledge" of the ownership of the note is that he "personally reviewed the business records related to this loan . . . ."  *Id.* ¶ 4.  He does not reveal what those business records are.  If DB (or anyone else) has business records that establish DB's ownership of Mr. Knecht's note, those records are not before the court.

DB relied on the declaration in the bankruptcy proceedings in its motion for relief from the automatic bankruptcy stay.  No one opposed that motion, and the Bankruptcy court merely signed DB's proposed order.  DB does not argue that the order is entitled to res judicata or issue preclusive effect.  It nonetheless suggests that because no one objected in the bankruptcy court to its assertion that it was entitled to foreclose, its status as beneficiary is now an established fact.  The court disagrees.

DB does not explain the apparent inconsistency between the bankruptcy declaration and MERS's assignment of the note and deed of trust on April 1, 2010.  If the bankruptcy declaration accurately claimed that DB was the "holder and owner" of Mr.

---

[2] DB did not include the exhibits to the declaration when it filed the bankruptcy declaration in this court.  The court verified the existence of the attachments by examining the bankruptcy court's records.

ORDER – 6

Knecht's note as of late March 2010, why did MERS purport to assign the note to DB at the beginning of April 2010? DB suggests no answer.

### 3. Trial is Necessary to Determine Whether DB Is the Beneficiary of the Deed of Trust.

Perhaps recognizing that its own proof is shaky, DB insists that it is Mr. Knecht's burden to prove that DB does not own the note. The only authority it cites for that proposition is a decision from one of this District's judges in which the court held that where the beneficiary attempting to foreclose "was the original lender," conclusory allegations that the beneficiary had no authority to foreclose were inadequate to state a claim. *Coble v. Suntrust Mort., Inc.*, No. C13-1978JCC, 2014 U.S. Dist. LEXIS 23921, at *10 (W.D. Wash., Feb. 18, 2014). The court in *Coble* did not address anyone's burden of proof, and granted the borrower leave to amend to more particularly state allegations that the original lender did not own the note. *Id.* at *10-12. Here, DB was not the original lender, and *Coble* is of no assistance to DB.

Even assuming that Mr. Knecht bears the burden to prove that DB is not the beneficiary of his deed of trust, an issue the court does not decide,[3] the evidence he has provided is sufficient to create a genuine issue of material fact that only a trial can resolve. Mr. Knecht has offered two pieces of evidence: his original note and deed of trust, in which DB held no interest; and the MERS assignment, which was a legal nullity. A trier of fact could determine that this evidence makes it more likely than not that DB has no valid interest in Mr. Knecht's note or deed of trust.

On this record, a reasonable trier of fact could conclude that DB was the beneficiary of Mr. Knecht's deed of trust or that it was not. A trier of fact would likely wonder why DB, which claimed to have its interest in Mr. Knecht's deed of trust as of

---

[3] The court observes that it is the beneficiary, not the borrower, who can be expected to possess evidence that it is the holder or owner of a promissory note. The court finds it unlikely that a Washington court would burden the borrower alone with providing that evidence. As the *Bain* court observed, in cases where "the original lender ha[s] sold the loan, th[e] purchaser would need to establish ownership of that loan, either by demonstrating that it actually held the promissory note or by documenting the chain of transactions." 285 P.3d at 47-48.

ORDER – 7

March 2010, needed to record an assignment of that interest executed in April 2010.  The trier of fact would likely be puzzled by DB's paltry evidence.  If DB holds or owns the note, it is surprising that it has not offered evidence from a DB representative with personal knowledge about how DB acquired the note.  Instead, DB relies on the bankruptcy declaration, sworn by a person whose claim to personal knowledge is dubious.  Mr. Knecht's evidence is no better.  He apparently conducted no discovery to help prove his contention that DB does not own the note.  Despite these evidentiary shortcomings, the court can only rule on the record before it, and on that record, no one is entitled to judgment as a matter of law on the factual question of whether DB acquired a beneficiary interest that permitted it to foreclose Mr. Knecht's deed of trust.

**B.     Did Fidelity Comply With Its Obligations as a Trustee?**

DB purported to appoint Fidelity as the trustee for Mr. Knecht's deed of trust in September 2010.  The beneficiary of a deed of trust has authority to appoint a successor trustee.  RCW 61.24.010(2).  The purported appointment of a trustee by a non-beneficiary is a void act, and the purported trustee has no authority to foreclose. *See, e.g.*, *Walker v. Quality Loan Serv. Corp.*, 308 P.3d 716, 721 (Wash. Ct. App. 2013); *Bavand*, 309 P.3d at 649.  For purposes of examining whether Fidelity is liable for its actions as a trustee, the court assumes that DB had the power to appoint Fidelity.

The Deed of Trust Act imposes duties on a trustee.  First, although a trustee has no fiduciary duty, RCW 61.24.010(3), it has a "duty of good faith to the borrower, beneficiary, and grantor."  RCW 61.24.010(4).  In addition, one of the statutory requisites of a trustee's sale is as follows:

> [F]or residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust.  A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

RCW 61.24.030(7)(a).

ORDER – 8

### 1. Fidelity Had No Beneficiary Declaration That Complied with the Final Sentence of RCW 61.24.030(7)(a).

According to Fidelity, it received two declarations that satisfy RCW 61.24.030(7)(a). The declarations are nearly identical. Yellin Decl. (Dkt. # 70), Exs. 1 & 2. Both suggest that someone other than DB prepared them, because they state: "PLEASE COMPLETE AND EXECUTE THE BELOW DECLARATION:" *Id.* Both declarations state as follows:

> The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that the beneficiary is the owner of the Promissory Note or other obligation secured by the Deed of Trust[.]

*Id.* DB signed neither declaration. Instead, a representative of AHMSI signed each. Below each signature was the notation "Signature of Mortgagee, Beneficiary of Authorized Agent." *Id.* One declaration plainly bears a September 24, 2010 date. *Id.*, Ex. 1. The other appears to be dated May 14, 2014, or about 7 weeks *before* Fidelity filed it in this case. *Id.*, Ex. 2. DB and Fidelity refuse to acknowledge that the document facially bears a 2014 date, and Fidelity attempts to demonstrate that the document was "uploaded" to Fidelity's computer systems in August 2012. Yellin Decl. (Dkt. # 75) ¶ 3 & Ex. 1. The earlier declaration does not mention DB. Yellin Decl. (Dkt. # 70), Ex. 1. The later declaration has DB's name sandwiched between the date and the signature of the AHSMI representative. *Id.*, Ex. 2.

These declarations are woeful. Taken literally, they state that AHMSI is the "Mortgagee, Beneficiary of Authorized Agent." But AHMSI is not the mortgagee (*i.e.*, the entity holding the security interest that secures the deed of trust), and the phrase "Beneficiary of Authorized Agent" is nonsense in this context. Assuming a typographical error, the declarations meant to state that AHMSI was the "Mortgagee, Beneficiary, *or* Authorized Agent," without stating which of those three labels applies to AHMSI. The declarations do not identify who the beneficiary is. One declaration appears to bear the wrong date. Although the declarations themselves are dated, there is

ORDER – 9

no evidence as to when Fidelity received either declaration. As to the later one, which Fidelity asserts is dated May 14, 2011, Fidelity asserts that it "uploaded" the document 15 months later, in August 2012, which was two months *after* Fidelity recorded the last of the three notices of trustee's sale it issued with respect to Mr. Knecht's property.

On this record, Fidelity had no beneficiary declaration that complied with RCW 61.24.030(7). First, there is no evidence that Fidelity had those declarations before it issued notices of trustee's sales to Mr. Knecht. Second, the first of the declarations does not identify DB, and thus is of no value (without more evidence) in asserting DB's beneficiary status. The second of the declarations at least states DB's name, but it does not do so in a way that compels the conclusion that DB purports to be the beneficiary. Third, neither declaration is executed "by the beneficiary," as the statute requires. It is possible that a declaration issued by an appropriately-authorized agent of a beneficiary would suffice to comply with RCW 61.24.030(7), but the declarations on which Fidelity purports to have relied neither squarely declare that AHMSI is an appropriately-authorized agent nor provide any reason to believe that AHMSI is an appropriately-authorized agent.[4]

In ruling that Fidelity had no statutorily-compliant beneficiary declaration, the court has considered the recent ruling of the Washington Court of Appeals in *Trujillo v. NW Trustee Servs., Inc.*, 326 P.3d 768 (Wash. Ct. App. 2014). There, the court considered whether a trustee could rely on a beneficiary declaration from the beneficiary itself declaring that it was "the actual holder of the promissory note . . . evidencing the [borrower's] loan or has the requisite authority under RCW 62A.3-301 to enforce said [note]." *Id.* at 770. The court explained the difference between the "owner" of a note (the person or entity entitled to the note's economic benefits) and the "holder" of a note

---

[4] Mr. Knecht asserts that the beneficiary declaration is invalid because it does not comply with RCW 9A.72.085, which contains requirements for declarations under penalty of perjury that Fidelity's declarations plainly do not satisfy. The statute, however, applies only to declarations submitted in an "official proceeding." A declaration from a beneficiary to a trustee in accordance with RCW 61.24.030(7) is not a declaration submitted in an official proceeding.

ORDER – 10

(the person or entity entitled to enforce the note). *Id.* at 774-76.  It explained that a person or entity can be both the holder and owner of a note, or a note can have an owner and a separate holder. *Id.* at 775-76.  It concluded that despite ambiguity in RCW 61.24.030(7)(a), a beneficiary declaration need only establish that the beneficiary is the *holder* of the note secured by the deed of trust. *Id.* at 776 ("RCW 61.24.030(7)(a), properly read, does not require [the beneficiary] to also be the 'owner' of the note.  Rather, it requires that a person entitled to enforce a note be a holder and need not also be an owner."). *Trujillo* suffices to dispense with Mr. Knecht's argument that the beneficiary declarations on which Fidelity relied are invalid because they do not declare anyone to be the "owner" of his note.  It does not, however, shelter Fidelity from the other deficiencies the court has identified in its beneficiary declarations.

      **2.**    **Trial Is Necessary to Determine Whether Fidelity Had Sufficient Proof That DB Was the Beneficiary.**

That Fidelity had no beneficiary declaration that complied with the Deed of Trust Act is not dispositive of whether Fidelity followed the law.  A beneficiary declaration is "sufficient proof" under RCW 61.24.030(7)(a), not necessary proof.  A trustee who has no beneficiary declaration can act as long as it has "proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust."  RCW 61.24.030(7)(a).

On this record, a trier of fact could reach different conclusions as to whether Fidelity had proof of DB's beneficiary status.  This is, again, primarily a consequence of the paltry record before the court.  The beneficiary declarations that Fidelity has submitted did not materialize out of thin air, but the evidence before the court is silent as to their provenance.  Fidelity offers no evidence of where they came from and neither does Mr. Knecht.  A finder of fact considering this evidence would likely be flummoxed.  The court cannot say with any certainty what conclusions a finder of fact would reach.

ORDER – 11

## IV.  ANALYSIS OF MR. KNECHT'S INDIVIDUAL CLAIMS

The court's March 2013 order identified which claims in Mr. Knecht's complaint survived Defendants' motion to dismiss.  Mr. Knecht did not amend his complaint thereafter.  The court now considers which of those claims will proceed to trial.

The claims that survived the motions to dismiss are:

1) Violations of the Deed of Trust Act:

   a. DB's initiation of foreclosure, including the appointment of Fidelity as a trustee, when it had no authority to do so because it was not the beneficiary of Mr. Knecht's deed of trust;

   b. Violation of RCW 61.24.030(7), based on Fidelity's lack of proof that DB was the beneficiary of Mr. Knecht's deed of trust; and

   c. Violation of RCW 61.24.030(8), 61.24.030(9), 61.24.031, and 61.24.040(1), which govern the timing of a letter explaining a borrower's pre-foreclosure right to request a meeting with the beneficiary, a subsequent notice of default, and the timing of a notice of trustee's sale.

2) A claim to enjoin a future trustee's sale based on the Deed of Trust Act violations identified above.

3) A claim for violation of the CPA based on the Deed of Trust Act violations identified above.

4) Requests for declaratory judgment

   a. that MERS's assignment of the note and deed of trust to DB is void

   b. that DB is not the holder of Mr. Knecht's note, is not the beneficiary of his deed of trust, and that its purported appointment of Fidelity as trustee was invalid

5) A claim to quiet title by voiding Defendants' interests in the property and declaring the deed of trust void.

ORDER – 12

Mr. Knecht attempted to introduce a new claim in his motion for partial summary judgment, contending that Defendants violated the requirements of RCW 61.24.030(8)(g)-(j), which require certain content in a notice of default. That claim appears nowhere in Mr. Knecht's complaint, the court did not acknowledge it as a claim that survived the motions to dismiss, and Mr. Knecht made no timely request to amend his complaint to include that claim. It is not part of this case.

Also not part of this case is a claim Mr. Knecht presented for the first time in his opposition to Fidelity's motion – a claim that Fidelity breached the duty of good faith that RCW 61.24.040 imposes.

**A.     The Core Disputes Identified Above Are Sufficient to Carry Several Claims to Trial.**

The dispute over whether DB was the beneficiary of Mr. Knecht's deed of trust means that trial is necessary to resolve many of Mr. Knecht's claims. The Deed of Trust Act itself permits a cause of action against a beneficiary and a trustee who wrongfully initiate foreclosure proceedings, even where no trustee's sale occurred. *Walker*, 308 P.3d at 720 (eschewing "wrongful foreclosure" label, characterizing borrower's claim "as a claim for damages arising from DTA violations").[5] A Deed of Trust Act claim arises "when an unlawful beneficiary appoints a successor trustee," *Walker*, 308 P.3d at 721, just as DB may have done in this case.

Mr. Knecht has triable CPA claims for the same reasons. That claim would require Mr. Knecht to prove "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact, (4) [an] injury to plaintiff in his or her business or property, [and] (5) causation." *Hangman Ridge Training Stables, Inc. v.*

---

[5] Another judge in this District has certified to the Washington Supreme Court some of the same questions that *Walker* answered. *See Frias v. Asset Foreclosure Servs., Inc.*, No. C13-760MJP, 2013 U.S. Dist. LEXIS 147444 (W.D. Wash. Sept. 25, 2013). The court takes judicial notice of the Washington Supreme Court docket, which reveals that the court heard oral argument in *Frias* in February of this year, but has yet to issue a decision. Pending that court's decision, the court will follow *Walker*. The court observes that Defendants' failure to cite *Walker* or address its reasoning did not serve them well in the motions before the court.

ORDER – 13

*Safeco Title Ins.*, 719 P.2d 531, 523 (Wash. 1986). Mr. Knecht may be able to prove a variety of unfair or deceptive acts or practices. MERS purported to transfer interests in Mr. Knecht's deed of trust and note to DB even though it had no interests to assign. *See Bain*, 285 P.3d at 51 ("[C]haracterizing MERS as the beneficiary has the capacity to deceive and thus . . . presumptively the first element [of a CPA claim] is met."). For the same reason, DB's appointment of Fidelity as a trustee is unfair or deceptive if the trier of fact concludes that DB had no authority to make the appointment. DB and MERS contend that their acts had no public interest impact, but that contention is wholly unpersuasive. *See Bain*, 285 P.3d at 51 (holding that MERS's deceptive conduct "presumptively" meets the public interest requirement of a CPA claim); *Bavand*, 309 P.3d at 652 (holding that action based on unlawful beneficiary's unlawful appointment of successor trustee was sufficient to withstand summary judgment).

Mr. Knecht has evidence of damages caused by MERS's and DB's conduct. Mr. Knecht did what many homeowners faced with the prospect of foreclosure would do: he investigated. His evidence establishes that he spent substantial time on that investigation, and that suffices to establish a CPA injury. *Walker*, 308 P.3d at 727 ("Investigative expenses, taking time off from work, travel expenses, and attorney fees are sufficient to establish injury under the CPA."). DB and MERS insist that the cause of Mr. Knecht's injury was his default, not their wrongdoing, but they are mistaken. If a jury concludes that DB had no authority to foreclose, then a trier of fact could infer that the cause of his need to investigate was DB's wrongfully-initiated foreclosure proceedings. Mr. Knecht already knew he was in default on his loan; he appears to have never disputed that. As to MERS, a trier of fact could conclude that Mr. Knecht needed to investigate, at least in part, because of MERS's attempt to assign rights in the deed of trust and note to DB. Defendants assert that the purpose of the MERS assignment is to "provide notice to third parties of the security interest, not to provide notice to the borrower." Defs.' Mot. (Dkt. # 67) at 9. Whatever the purpose of the assignment, it is a recorded document visible to

ORDER – 14

the borrower. It has the capacity to deceive the borrower into believing that a valid transfer of rights has occurred. It also has the capacity to deceive the borrower into believing that the assignee rests its claim to lawful beneficiary status on the assignment. And even if it lacks the capacity to deceive, it may nonetheless be an "unfair" act within the scope of the CPA. *See Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013) ("We note in passing that an act or practice can be unfair without being deceptive . . . .").

The court also declines to decide whether Mr. Knecht's claim to enjoin a trustee's sale is moot. As the court has noted, DB steadfastly refuses to state whether it intends to resume foreclosure efforts, and it is reasonable to suspect that DB will do so. In future foreclosure efforts, DB might take a different approach, perhaps an approach that complies with the Deed of Trust Act. That does not prevent the court, however, from enjoining DB from repeating the potentially unlawful conduct of its first three foreclosure attempts. Trial will determine to what extent an injunction is appropriate.

Because a trier of fact might conclude that Fidelity lacked proof of DB's beneficiary status, Mr. Knecht has a claim against Fidelity arising under both the Deed of Trust Act and the CPA.

Mr. Knecht's requests for declaratory judgment are ancillary to the core dispute underlying his Deed of Trust Act and CPA claims. For that reason, the court will not grant summary against his request for a declaration that the MERS assignment was void, or that DB is not the holder of Mr. Knecht's note and thus has no authority to initiate a nonjudicial foreclosure.

**B.   Mr. Knecht May Try His Claim Regarding the Pre-Foreclosure Letter Requirement and Its Impact on the Timing of the Notices of Default and Notices of Trustee's Sales.**

Mr. Knecht raised only one claim that does not implicate the core disputes the court has identified. He declares that Defendants did not provide him with the pre-foreclosure disclosures that the Deed of Trust Act mandates. Knecht Decl. (Dkt. # 80), ¶ 3.

ORDER – 15

     Defendants offer no evidence that they provided the pre-foreclosure letter that RCW 61.24.031 mandates, nor that they complied with the timing requirements for the notice of default and notice of trustee's sale that depend on when that letter is sent.  RCW 61.24.030(8) (requiring notice of default at least thirty days before a notice of trustee's sale); RCW 61.24.030(9) (requiring compliance with RCW 61.24.031 before notice of trustee's sale); RCW 61.24.031(1)(a) (requiring 30 or 90 days before issuing notice of default, depending on borrower's response to pre-foreclosure letter); RCW 61.24.040(1) (requiring notice of trustee's sale 90 or 120 days before sale, depending on whether pre-foreclosure letter is required).  They instead insist that this issue is moot, because they have abandoned their past foreclosure efforts.  That does not, however, moot Mr. Knecht's claims for damages arising out of those past efforts.

     Mr. Knecht has no evidence of damages caused by the timing of the notices, but he has evidence of damages that may have been caused by Defendants' apparent failure to send the pre-foreclosure letter.  That letter is important, because it advises borrowers of their right to request a meeting with the beneficiary of their deed of trust.  RCW 61.24.031(1)(c)(iv).  It also requires a beneficiary to make telephone calls to the borrower to follow up on the letter.  RCW 61.24.031(5).  A trier of fact could reasonably infer from the evidence before the court that Mr. Knecht may have been able to stop these foreclosure efforts sooner if DB or its authorized agent had complied with these requirements.  A trier of fact could also reasonably infer that he would have spent less time investigating the foreclosure if Defendants had provided the pre-foreclosure letter.

     Because the parties have paid little attention to Mr. Knecht's claims arising under these portions of the Deed of Trust Act, they have provided no analysis of when the requirements related to the pre-foreclosure letter first took effect.  The court declines to conduct that analysis for them.  It assumes, without deciding, that the requirements applied to all three of DB's foreclosure efforts.

ORDER – 16

### C. Some of Mr. Knecht's Claims Cannot Proceed to Trial.

Mr. Knecht provides no evidence from which any trier of fact could conclude that his note has become split from his deed of trust. The *Bain* court acknowledged the possibility that a deed of trust in which MERS falsely claimed a beneficial interest might "split the deed of trust from the obligation, making the deed of trust unenforceable," but it did not chart a path for a borrower to prove as much. 285 P.3d at 48. Mr. Knecht offers neither evidence nor argument sufficient to chart that path, and the court rules that he has not demonstrated a "split" in his note and deed of trust as a matter of law. Moreover, he does not establish that he would benefit from showing a "split" of the note from the deed of trust. *See Bain*, 285 P.3d at 48 (noting possibility that current noteholder would become equitable mortgagee if a split occurred).

The court also rejects Mr. Knecht's claim that his note was not negotiable, either because it was an adjustable rate note or because it was sold to an entity that pooled it with other loans to issue mortgage-backed securities. He offers no evidence, precedent, or argument that necessitates further discussion of that issue.

Similarly unavailing is Mr. Knecht's claim to quiet title to his property. He may succeed at trial in proving that DB has no interest in his note or deed of trust, which would quiet title as to DB. Nonetheless, someone is presumably entitled to enforce the note and deed of trust. As noted, Mr. Knecht fails as a matter of law to demonstrate a "split" between the note and deed of trust. Mr. Knecht admits he has not paid the note and does not contend that he can do so. So, just like the state courts who have considered similar claims, the court rules that Mr. Knecht cannot quiet title as a matter of law. *See*, *e.g.*, *Walker*, 308 P.3d at 729 (dismissing quiet title claim premised on designation of MERS as beneficiary of deed of trust); *Bavand*, 309 P.3d at 650 (following rule from *Walker* that plaintiff seeking to quiet title "must succeed on the strength of his own title and not on the weakness of his adversary").

ORDER – 17

**D.    Mr. Knecht's Invocation of the Washington Constitution is Unavailing.**

Finally, the court rejects Mr. Knecht's invitation that the court rewrite RCW 61.24.030(7) (and perhaps much more of the Deed of Trust Act) in the guise of interpreting the Act to comply with the Washington Constitution. Mr. Knecht does not dispute that he has failed to timely assert a claim that the Deed of Trust Act (or any portion of it) is unconstitutional. He also does not dispute that he has not notified Washington's Attorney General of a constitutional challenge, as Federal Rule of Civil Procedure 5.1 requires. Instead, citing the canon of statutory construction requiring a court to construe statutes such that they do not violate the Washington constitution, he contends that the court should "interpret" RCW 61.24.030(7) in a manner wholly divorced from its plain meaning.

Citing the Washington Constitution's declaration that the State's superior courts "shall have original jurisdiction in all cases at law which involve the title or possession of real property," Art. IV, § 6, Mr. Knecht contends that the Deed of Trust Act's decision to vest discretionary authority in a trustee is unconstitutional. How the court could "interpret" any aspect of the Deed of Trust Act consistent with this argument, he does not explain. The Deed of Trust Act unambiguously permits nonjudicial foreclosures. Mr. Knecht advances no "interpretation" of the words of any portion of the Act that would prohibit nonjudicial foreclosures, and the court cannot conceive of one. Mr. Knecht asks the court to rewrite the Deed of Trust Act, not to interpret it.

Citing the Washington Constitution's guarantee of due process, Art. I, § 3, Mr. Knecht contends that the court should "interpret" the Deed of Trust Act so that it gives borrowers the right to be heard before they lose their homes. Of course, the Deed of Trust Act does just that, it permits a homeowner to seek relief from a court (as Mr. Knecht did) to enjoin a trustee's sale. Four of the Washington Supreme Court's current justices have contended that their Court has had "no occasion to fully analyze whether the nonjudicial foreclosure act" complies with the Washington Constitution's due process

ORDER – 18

clause. *Klem*, 295 P.3d at 1189 n.11. If Mr. Knecht wished to take up this invitation to challenge the constitutionality of the Deed of Trust Act, he ought to have made a proper constitutional challenge. To require more process than the Deed of Trust Act's explicit right to challenge a trustee's sale is not to "interpret" the statute, it is to rewrite it. For example, Mr. Knecht asks the court to "interpret" RCW 61.24.030(7)'s statement that a trustee may rely on a beneficiary declaration to require the trustee to provide the declaration to the borrower. That is not interpretation, is writing into the statute a requirement that the legislature did not impose.

Also unavailing is Mr. Knecht's invitation to "interpret" the Deed of Trust Act to comply with the Washington Constitution's guarantee that "[j]ustice in all cases shall be administered openly . . . ." Art. I, § 10. Mr. Knecht believes that because nothing obligates a trustee to prove to the borrower in advance of a foreclosure sale that it has complied with the Deed of Trust Act, the Act ought to be construed to impose that obligation in order to guarantee the open administration of justice. He relies on that argument to insist again that the court "interpret" the Deed of Trust Act to require a trustee to provide a borrower with a copy of a beneficiary declaration. Again, this is not "interpreting" the Deed of Trust Act, it is rewriting it.

In addition to his demands for statutory "interpretation," Mr. Knecht asks the court to certify his questions of interpretation to the Washington Supreme Court. The court will not exercise its discretion to do so. The court declines to have the Washington Supreme Court confirm that rewriting the Deed of Trust Act as Mr. Knecht prefers is not an exercise in statutory interpretation.

## V. CONCLUSION

For the reasons previously stated, the court GRANTS Defendants' motions in part and DENIES them in part, (Dkt. ## 67, 69) and DENIES Mr. Knecht's motion (Dkt. # 64). A bench trial on the claims that survive Defendants' motions will begin on November 12, 2014. The court imposes the following pretrial schedule:

ORDER – 19

1) The parties must file motions in limine no later than October 2, 2014. Those motions shall comply with Local Rules W.D. Wash. LCR 7(d)(4). Defendants must cooperate in filing their motions in limine such that the cumulative length of their motions is 18 pages or fewer, and must do the same with respect to their oppositions to Mr. Knecht's motion in limine. Mr. Knecht's opposition to each Defendants' motion may contain no more pages than the motion to which it responds. All parties' motions must take into account that this case will be decided at a bench trial, not a jury trial.

2) The parties must file their agreed pretrial order no later than October 14, 2014.

3) The parties must submit trial briefs of 15 pages or fewer no later than October 29, 2014.

4) The parties must submit trial exhibits and deposition designations no later than October 31, 2014. The format of the trial exhibits shall comply with the court's previous scheduling order. Dkt. # 27.

5) The parties shall not submit proposed findings of fact or conclusions of law unless the court requests them.

DATED this 14th day of August, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 20