HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9  JOHN D. KNECHT,

10             Plaintiff,                      CASE NO. C12-1575RAJ

11       v.                                    FINDINGS OF FACT AND
                                               CONCLUSIONS OF LAW
12  FIDELITY NATIONAL TITLE                    FOLLOWING BENCH TRIAL
    INSURANCE COMPANY, et al.,
13
             Defendants.
14

15                          **I.   INTRODUCTION**

16        The court heard this matter in a bench trial that commenced on March 16, 2015

17  and concluded on March 18, 2015.  What remained for trial following orders on motions

18  to dismiss and motions for summary judgment were Plaintiff John Knecht's claims that

19  Defendants were liable via the Washington Consumer Protection Act (RCW Ch. 19.86,

20  "CPA") for violations of the Washington Deed of Trust Act (RCW Ch. 61.24).[1]  Mr.

21  Knecht also sought declaratory and injunctive relief.

22        The court summarizes its ruling: Mr. Knecht prevailed on none of his claims.  The

23  court concludes that since at least August 2006, Defendant Deutsche Bank National Trust

24  _____

    [1] The court's August 14, 2014 order on the parties' summary judgment motions allowed claims
25  for damages invoking the Deed of Trust Act, independently of the CPA, to proceed to trial.
    Since then, the Washington Supreme Court issued its decision in *Frias v. Asset Foreclosure*
26  *Services, Inc.*, 334 P.3d 529, 539 (Wash. 2014), which held that "Washington does not recognize
    an independent cause of action under the [Deed of Trust Act] seeking monetary damages for
27  alleged [Deed of Trust Act] violations absent a completed foreclosure sale."  No foreclosure sale
    occurred in this case, and Mr. Knecht does not contest that *Frias* is dispositive of his standalone
28  Deed of Trust Act damage claims.

    ORDER – 1

Company ("DB"), has been the beneficiary of the deed of trust securing the note that Mr. Knecht executed when he refinanced his home in April 2006.  DB had authority to appoint Defendant Fidelity National Title Insurance Company ("Fidelity") as the trustee of that deed of trust, and it did so.  It did so because Mr. Knecht had defaulted on his loan.  On three occasions from 2010 to 2012, Fidelity set dates for a trustee's sale of Mr. Knecht's property, although it abandoned all three sales, and Mr. Knecht remains the owner of his home for now.  Fidelity committed a single violation of the Deed of Trust Act in connection with those foreclosure proceedings, and that violation did not injure Mr. Knecht.  The third Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS"), had a limited role in the foreclosure proceedings.  In April 2010, it executed an Assignment that purported to convey certain interests to DB.  After that, it had no role at all.  The evidence demonstrated that the MERS Assignment did not injure Mr. Knecht. Mr. Knecht is not entitled to declaratory or injunctive relief.

The court now enters findings of fact and conclusions of law to support those rulings.  For the sake of clarity, the court has included some subsidiary conclusions of law with its findings of fact, and vice versa.

To lend context to the court's findings and conclusions, the court summarizes the deed of trust as it is used in Washington to secure residential property.  A deed of trust is a three-party transaction in which a borrower (the grantor of the deed of trust) conveys title to her property to a trustee, who holds the title in trust for the lender, who is the beneficiary of the deed of trust.  *Bain v. Metro. Mortgage Group, Inc.*, 285 P.3d 34, 38 (Wash. 2012).  The deed of trust grants the beneficiary a power of sale that it can invoke if the borrower defaults, in which case the trustee is empowered to sell the property at a trustee's sale.  *Id.*  Washington's Deed of Trust Act places non-waivable restrictions on the power of sale and the means by which the trustee can conduct a sale.  *Id.* ("The legislature has set forth in great detail how nonjudicial foreclosures may proceed.  We find no indication that the legislature intended to allow the parties to vary those

ORDER – 2

procedures by contract.")  Provided the trustee and beneficiary comply with the Deed of Trust Act, the trustee can sell the property without judicial oversight.

## II.  FINDINGS OF FACT

1) On April 1, 2006, Mr. Knecht executed a note evidencing a loan of $315,000 from American Brokers Conduit ("ABC").  On the same date, he executed a deed of trust encumbering his residential property in North Bend, Washington, as security for the note.  The deed of trust named ABC as the lender and Fidelity National Title Company of Washington (not the Fidelity Defendant in this case) as trustee.  It also designated MERS as the beneficiary of the deed of trust, but "solely as a nominee for Lender and Lender's Successors and assigns."

2) Within a few weeks of Mr. Knecht's execution of the note, DB took possession of it.

3) When DB took possession of the note, it bore an indorsement in blank from ABC.  That indorsement stated as follows:

    WITHOUT RECOURSE
    BY: AMERICAN BROKERS CONDUIT
    CESAR COBOS
    ASST. SECRETARY

    A line above Mr. Cobos's name bore his signature.  At trial, DB produced the original note with the indorsement above.  DB proved to the court's satisfaction that it has been in continuous possession of the original note since at least August 2006.

4) At some time in 2006, DB became the trustee of GSR Mortgage Loan Trust 2006-0A1 ("GSR Trust").  The GSR Trust, established by an arm of the Goldman Sachs investment titan, is a depository for about 7,000 mortgages,[2] of which Mr. Knecht's mortgage was just one.  The GSR Trust was an entity

---

[2] The court uses the term "mortgage" to mean a loan secured by real property.  In Washington, a mortgage consists of a note and a deed of trust.  Other states structure mortgages differently.

ORDER – 3

designed to facilitate various third-party investments in either the stream of income from those mortgages or in investment vehicles for which that stream of income served as security.

5) In August 2006, the GSR Trust "closed," and DB (in its capacity as trustee) became the entity with the authority to enforce the Knecht note and the entity entitled to receive payments from that note.

6) The GSR Trust was governed by a Master Servicing and Trust Agreement as well as a supplement of "Standard Terms" to that Agreement. Exs. 103, 104. Those documents explained the obligations of the Goldman Sachs entity that was the depositor of the Trust corpus, the servicer of the loans in the Trust, and DB as both the trustee and custodian of the Trust's corpus.

7) At some point prior to 2010, American Home Mortgage Servicing, Inc. ("AHMSI") became the servicer for loans in the Trust. It is unnecessary to enumerate all of its obligations and rights as servicer; it suffices to observe that it was responsible for managing payments owed via the loans in the trust.

8) In 2009, DB executed a power of attorney (Ex. 137) that granted AHMSI a host of powers as the servicer of mortgages in several dozen trusts for which DB served as trustee. The GSR Trust was among them. Among other things, AHMSI had power to take all steps necessary to conduct a non-judicial foreclosure of a deed of trust securing a note held by the GSR Trust.

9) AHMSI underwent several corporate transitions, and is now known as "Ocwen." Those transitions are irrelevant in this case, except as they bear on changes in recordkeeping systems. The court thus refers to the servicer as "AHMSI" regardless of which name it was using.

10) By the beginning of 2010, Mr. Knecht had defaulted on his note. He has remained in default. At no time from the beginning of 2010 until the time of trial did Mr. Knecht have the resources to cure his default.

ORDER – 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11) In January and February 2010, AHMSI attempted to contact Mr. Knecht by telephone regarding his default more than 60 times.  Mr. Knecht ignored virtually all of those calls.  AHMSI also sent Mr. Knecht a letter on January 21, 2010.  Ex. 118.  That letter offered him a variety of options for addressing his default, including HUD financial counseling, temporary forbearance, a loan modification, Washington governmental resources, legal resources, and others.  The letter made clear that foreclosure was among AHMSI's options.  Mr. Knecht did not respond to the letter.

12) In March 2010, Mr. Knecht filed a Chapter 7 bankruptcy petition.  DB sought relief from the automatic stay and obtained that relief on May 11, 2010.  Mr. Knecht received a discharge of his personal liabilities on June 16, 2010.  His home remained secured by the deed of trust.

13) In May 2010, AHMSI resumed efforts to contact Mr. Knecht about his default.  It sent another letter on May 14, 2010 that was essentially identical to the January 21, 2010 letter.  Mr. Knecht again did not respond.

14) In September 2010, foreclosure proceedings began.  AHMSI sent a "foreclosure referral" on September 8 which reached Fidelity via the Lender Processing Services ("LPS") computer network.  Ex. 127.  Although no one introduced evidence of Fidelity's appointment as trustee of Mr. Knecht's deed of trust, the court takes judicial notice of an "appointment of successor trustee" executed by DB on September 14, 2010 and recorded in King County on September 16, 2010.  Putting aside Mr. Knecht's assertion that DB had no authority to appoint Fidelity, an assertion the court will reject in its later conclusions of law, there was no dispute at trial that Fidelity acted as the trustee for Mr. Knecht's deed of trust beginning in September 2010.

15) Fidelity's appointment as trustee marked the beginning of two parallel efforts to address Mr. Knecht's default.  AHMSI continued in its efforts to obtain

ORDER – 5

payments from Mr. Knecht, efforts that included offering him many alternatives, including but not limited to loan modifications and forbearance. At AHMSI's direction, Fidelity three times instituted and three times abandoned foreclosure proceedings. The court refers to those proceedings as the first foreclosure proceeding, the second foreclosure proceeding, and the third foreclosure proceeding. The court focuses on the foreclosure proceedings, as they are the focus of Mr. Knecht's claims. The court finds, however, that AHMSI continued its efforts to offer Mr. Knecht alternatives to foreclosure throughout those foreclosure proceedings. Mr. Knecht either ignored those offers or was unable to take advantage of them.

16) On September 8, 2010, Fidelity received an undated declaration from Silena Rivera. Ex. 135. The document, like many that Fidelity received from representatives of either DB or AHMSI, is difficult to decipher. Testimony at trial established that Fidelity received it from AHMSI via the LPS system. It refers to "Chapter 61.24 RCW (SB 5810)." It declares as follows:

> The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in section 2(5) of the act and, after waiting 14 days after the requirements in section 2 of this act were satisfied, the beneficiary or the beneficiary's authorized agent sent to the borrower(s), by certified mail, return receipt requested, the letter required under section 2 of the act.

The court takes notice that Washington Senate Bill 5810, which became law in 2009, made changes to the Washington Deed of Trust Act, including the addition of RCW 61.24.031, which required "a trustee, beneficiary, or authorized agent" to take certain steps before issuing a notice of default, and also required certain disclosures in a notice of default. RCW 61.24.031 has since been amended, as the court will later discuss.

17) Fidelity issued Mr. Knecht a Notice of Default on September 17, 2010. Ex. 124.

ORDER – 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

18) On October 4, 2010, Fidelity received a beneficiary declaration from AHMSI dated September 24, 2010.  Ex. 2.  The declaration identified Mr. Knecht, his loan number, and his property address.  It stated that the "undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that the beneficiary is the owner of the Promissory Note or other obligation secured by the Deed of Trust."  An AHMSI representative signed the declaration.  Other information in the LPS system allowed Fidelity to verify that DB was the beneficiary associated with the note and that AHMSI was DB's servicer for that note.

19) Fidelity issued Mr. Knecht a Notice of Trustee's Sale on October 21, 2010, setting a sale date of January 28, 2011.  Ex. 129.  Fidelity recorded the document in King County.

20) At AHMSI's request, Fidelity discontinued the foreclosure process before the January 28, 2011 trustee's sale.  AHMSI did so because discussions with Mr. Knecht (mostly via his girlfriend, Joni Allen, who obtained authorization to deal with AHMSI on his behalf) indicated that a loan modification or repayment plan might be feasible.

21) In late January 2011, Mr. Knecht and AHMSI reached agreement on a repayment schedule.  Ex. 114.

22) Mr. Knecht made several payments according to the schedule in early 2011, but those payments stopped in June 2011.  AHMSI notified Fidelity on August 26, 2011 that it should resume foreclosure efforts.  Ex. 177.

23) On September 12, 2011, Fidelity issued a Notice of Trustee's Sale setting a sale date of December 16, 2011.  Ex. 131.  Fidelity recorded the document in King County.  This Notice of Trustee's sale, like its predecessor, referred to the September 2010 notice of default.  There is no evidence that a new notice of default was issued.

ORDER – 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24) Also on September 12, 2011, Fidelity issued a Notice of Discontinuance of Trustee's Sale, discontinuing the foreclosure process related to the October 21, 2010 Notice of Trustee's Sale.  Ex. 130.  Fidelity also recorded that document in King County.  It is not clear why Fidelity issued that notice, as the January 28, 2011 trustee's sale date had long passed, as had the expiration of the 120-day period that RCW 61.24.040(6) provides for continuing that sale.  No witness offered a persuasive explanation of the reason for this notice.  There is no basis, however, to find that the Notice of Discontinuance had any material impact on Mr. Knecht, directly or indirectly.

25) Fidelity declined to follow through on the December 16, 2011 sale.  Someone at AHMSI determined that the Notice of Default preceding the Notice of Trustee's sale was missing language required by Senate Bill 5810.  Ex. 178.  It is not clear whether the AHMSI representative was referring to the Notice of Default issued in September 2010 or a later notice of default that was not part of the record at trial.

26) In late September or early October 2011, AHMSI likely sent a letter whose content (if not its timing) complied with RCW 61.24.031.  Trial testimony along with AHMSI's records established that a "Washington Initial Contact Letter" was sent around those dates.  Trial testimony established that AHMSI could not obtain the letter because it resided on legacy recordkeeping systems that it could no longer access.

27) On April 16, 2012, Fidelity received a declaration bearing the same date from AHMSI.  It bore Mr. Knecht's name, his loan number, and the address of his property.  An AHMSI representative declared that "[t]he beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in RCW 61.24.031(5)."

28) Fidelity issued Mr. Knecht a Notice of Default on April 17, 2012.  Ex. 183.

ORDER – 8

29) On May 15, 2012, Fidelity received from AHMSI a beneficiary declaration substantially identical to the one it received on October 10, 2010. Ex. 3. It declared that the "undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that the beneficiary is the owner of the Promissory Note or other obligation secured by the Deed of Trust." This declaration was also signed by an AHMSI representative. It appears on its face to have been executed on May 14, 2014. Testimony at trial established that Fidelity received the document on May 15, 2012. The court thus finds that despite its appearance, AHMSI executed the declaration prior to May 15, 2012, most likely on May 14, 2012. The apparent reference to the year 2014 was either dreadful handwriting or a scrivener's error.

30) Fidelity issued a Notice of Trustee's Sale on June 5, 2012. Ex. 133. It set a sale date of September 7, 2012. Fidelity recorded the document in King County.

31) Also on June 5, 2012, Fidelity executed a Notice of Discontinuance of Trustee's Sale (Ex. 132), discontinuing the sale date set in the September 12, 2011 Notice of Trustee's Sale. It recorded that Notice in King County. As was the case with the earlier Notice of Discontinuance, it is not clear why Fidelity issued that notice, as the December 16, 2011 trustee's sale date had long passed, as had the expiration of the 120-day period that RCW 61.24.040(6) provides for continuing that sale. No witness offered a persuasive explanation of the reason for this notice. There is no basis, however, to find that the Notice of Discontinuance had any material impact on Mr. Knecht or the foreclosure proceedings.

32) No trustee's sale of Mr. Knecht's property occurred on September 7, 2012. Mr. Knecht testified that he went to the location of the trustee's sale to deliver

ORDER – 9

what he described as a "stay on the auction," and that a sale did not occur. The court takes judicial notice of the docket in this action, which indicates that before Defendants removed it from King County Superior Court, Mr. Knecht moved for a temporary restraining order. That court issued a temporary restraining order on September 5, 2012, barring the trustee's sale set for two days later. The temporary restraining order does not explain the state court's reasons for entering it. Defendants have not since attempted to conduct a trustee's sale.

33) Although the court will not recount the evidence in detail, trial exhibits and testimony established to the court's satisfaction that Fidelity or its designees ensured that all notices of default, notices of trustee's sale, and other documents essential to the foreclosure process were delivered to Mr. Knecht in the manner the law requires.

34) On April 1, 2010, a MERS representative executed an "Assignment of Deed of Trust" ("MERS Assignment"). It stated as follows:

> For value received, the undersigned corporation hereby grants, assigns, and transfers to [DB], as Trustee for [the GSR Trust], all beneficial interest under that certain Deed of Trust dated 04/01/2006 executed by John D. Knecht . . . .
>
> Together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

The MERS Assignment was signed by Michelle Halyard, an AHMSI employee who also had signatory authority on behalf of MERS. She signed the declaration as a representative of MERS "as nominee for [ABC]." Someone acting at the direction of MERS or AHMSI recorded the assignment in King County.

35) There was no direct evidence as to why Ms. Halyard executed the MERS Assignment. There was some evidence from a Fidelity representative that, in

ORDER – 10

general, assignments like these facilitate obtaining title insurance after a trustee's sale.

36) MERS's counsel offered an interpretation of the MERS Assignment in closing argument.  That interpretation is not evidence, and it does not overcome the language of the MERS Assignment, which suggests that MERS was assigning a promissory note and deed of trust that it did not have, and that it did so as a nominee of ABC, an entity that had long ago disposed of any interest in that note and deed of trust.

37) The MERS Assignment is, so far as the court can ascertain, a legal nullity.  The court need not reach that conclusion, however, in light of two findings:

   a.  Mr. Knecht was in no way deceived or otherwise directly impacted by the MERS Assignment.  He did not see it until well after this litigation commenced.

   b.  There is no evidence that Fidelity, DB, or AHMSI relied on the MERS Assignment in any way that is material to this action.  Mr. Knecht's foreclosure proceedings would have been conducted just as they were regardless of the MERS Assignment.

38) Mr. Knecht spent substantial time and money attempting to address the possible loss of his home.  Much of that time and money, however, was expended in efforts to address his default, as opposed to directly resisting foreclosure efforts.  To the extent that Mr. Knecht incurred any injury resisting foreclosure efforts, the court finds that Mr. Knecht would have made the same efforts regardless of the timing of the foreclosure proceedings.

## III.   CONCLUSIONS OF LAW

**A.    MERS Is Not Liable to Mr. Knecht.**

1)  The only act of MERS's to which Mr. Knecht has pointed as a basis for liability is the execution and recording of the MERS Assignment.

ORDER – 11

2) The execution and recording of the MERS Assignment caused no injury to Mr. Knecht.  Even if it had, and Mr. Knecht could tie that injury to a statutory or common law right of action, Mr. Knecht suffered no compensable damage as a result of the MERS Assignment.

3) Mr. Knecht asked the court to order MERS to expunge the MERS Assignment from the records of the King County Recorder.  Mr. Knecht has pointed to no authority that allows recorded documents to be expunged.  Mr. Knecht is welcome to record this order, which declares among other things that MERS had no interests in Mr. Knecht's deed of trust or his note at the time it recorded the MERS Assignment, and neither did ABC.

**B.    DB Has Been the Beneficiary of Mr. Knecht's Deed of Trust Since August 2006.**

4) The Knecht note, from its inception, has been a negotiable instrument within the meaning of RCW 62A.3-104.

5) Although the Knecht note was payable to ABC, it became payable to its bearer by virtue of ABC's indorsement in blank of the note.  RCW 62A.3-109(c) ("An instrument payable to an identified person may become payable to bearer if it is indorsed in blank pursuant to RCW 62A.3-205(b)."); RCW 62A.3-205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").

6) As the possessor of the Knecht note beginning no later than August 2006, DB became the note's holder.  RCW 62A.1-201(21)(A) (defining holder as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession").

7) Although it is ultimately immaterial, the court concludes that DB was also the owner of the Knecht note. *See Trujillo v. NW Trustee Servs., Inc.*, 326 P.3d 768, 774-76 (Wash. Ct. App. 2014) (explaining that the "owner" of a note is

the person or entity entitled to the note's economic benefits whereas the "holder" of a note is the person or entity entitled to enforce it).  A person or entity can be both the holder and owner of a note, or a note can have an owner and a separate holder.  *Id.* at 775-76.

8) As the holder of the Knecht note, DB was the entity entitled to enforce the note within the meaning of RCW 62A.3-301.

9) No one other than DB had any direct interest in the Knecht note, had any direct claim to payments on the note, or had any right to enforce the deed of trust securing that note.  Mr. Knecht's suggestion at trial that investors in the GSR Trust had rights arising under the deed of trust were unsupported by evidence or valid legal argument.

10) DB was the beneficiary of Mr. Knecht's deed of trust within the meaning of the Deed of Trust Act.  The Act defines a "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding such person holding the same as security for a different obligation."  RCW 61.24.005(2); *see also Bain*, 285 P.3d at 43 ("[T]he legislature meant to define 'beneficiary' to mean the actual holder of the promissory note or other debt instrument.").  The court has already concluded that DB was the holder of the Knecht note.  There was no evidence that DB held the Knecht note (or any other note) as security for another obligation.  Although RCW 61.24.030(7)(a) does not require a beneficiary to also be the owner of a note, *Trujillo*, 326 P.3d at 776, the court has already concluded that DB was the note's owner.

11) No formal transfer of Mr. Knecht's deed of trust was necessary, because the deed of trust, as a security instrument, follows the obligation that it secures.  *E.g.*, *Am. Savings Bank & Trust Co. v. Helgesen*, 64 Wash. 54, 61 (Wash.

ORDER – 13

1911), *Bain*, 285 P.3d at 44 ("Washington's deed of trust act contemplates that the security instrument will follow the note, not the other way around.").

12) Mr. Knecht's deed of trust vested DB, as beneficiary, with a power of sale that it could exercise in the event that Mr. Knecht defaulted on his obligation to repay the note.  DB lawfully delegated that power to AHMSI as its agent.

13) Mr. Knecht has been in default on his obligation to pay the note since at least June 2010.

**C.  Fidelity Had Sufficient Proof that DB Was the Beneficiary Throughout Its Foreclosure Efforts.**

14) DB lawfully appointed Fidelity the trustee of Mr. Knecht's deed of trust in mid-September 2010.  *See* RCW 61.24.010(2) (granting beneficiary authority to appoint a successor trustee).  Fidelity remained the trustee at least through the time of trial.

15) RCW 61.24.030(7)(a) states as follows:

> [F]or residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust.  A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

16) As to each of the notices of trustee's sale that Fidelity issued, Fidelity had proof that DB was the owner of the Knecht note.  The court reaches that conclusion even without relying on the beneficiary declarations Fidelity received from AHMSI October 2010 and May 2012.

17) In the alternative, the court rules that the two beneficiary declarations that Fidelity received from AHMSI as DB's agent were "sufficient proof" satisfying the requisites of RCW 61.24.030(7).

ORDER – 14

**D.** **Fidelity Complied with RCW 61.24.031 as to the First and Third Foreclosure Proceedings, but Not as to the Second.**

18) RCW 61.24.031, enacted in 2009, required certain acts in advance of issuing a notice of default on an obligation secured by a deed of trust.  As originally enacted, the statute required a "trustee, beneficiary, or authorized agent" to wait at least 30 days after either contacting the borrower regarding default or exercising due diligence to do so.  RCW 61.24.031(1)(a) (2009).  The court uses the phrase "foreclosure agent" as a shorthand for "trustee, beneficiary, or authorized agent."  The statute required the foreclosure agent to contact the borrower by telephone and with a letter with specified content.  RCW 61.24.031(1)(b) (2009).

19) There is ample evidence that AHMSI made telephone contact with Mr. Knecht as the statute required, or that it exercised due diligence to do so.  Trial established that AHMSI worked extensively with Mr. Knecht or Ms. Allen (or attempted to do so) from at least January 2010 until Mr. Knecht filed this lawsuit in 2012.  AHMSI extended many options for Mr. Knecht to avoid or cure his default, and he was unwilling or unable to take advantage of any of them.

20) No one was able to produce the letter that AHMSI sent to Mr. Knecht in 2010 to comply with RCW 61.24.031.  Testimony from Mr. Knecht established that he did not keep reliable records of the foreclosure proceedings, so the fact that he did not have the letter does not convince the court that he did not receive it.  The September 8, 2010, declaration of Silena Rivera convinces the court, on a more-probable-than-not basis, that AHMSI timely sent a letter in compliance with the statute.

21) As to Fidelity's second notice of trustee's sale, issued in September 2011, the letter in compliance with RCW 61.24.031 is not in evidence.  If AHMSI sent a letter at all, it sent it in late September or early October 2011, which is too late

to satisfy any version of RCW 61.24.031.  Because any right to conduct a trustee's sale based on the September 2010 notice of default had long expired, the letter AHMSI sent in 2010 did not constitute compliance with RCW 61.24.031 as to the second foreclosure proceeding.

22) In April 2011, Washington enacted changes to RCW 61.24.031 that gave more protection to borrowers.  Among other things, a borrower who responded to the letter that the statute required could delay a notice of default by an additional 60 days.  RCW 61.24.031(1)(a)(ii) (2011).

23) Although no one produced a letter that complied with RCW 61.24.031, the April 2012 declaration establishes, on a more-probable-than-not basis, that AHMSI complied with RCW 61.24.031 as to the third foreclosure proceedings by making the required contact with Mr. Knecht by letter and telephone.

**E.      Mr. Knecht Suffered No Injury as a Result of Fidelity's Single Violation of the Deed of Trust Act.**

24)  The only legal violation proven at trial was that Fidelity failed to send (or verify that AHMSI had sent) the letter that RCW 61.24.031 required as part of the second foreclosure proceeding.

25) Mr. Knecht can recover for Fidelity's violation of the Deed of Trust Act only via the CPA.  *Frias*, 334 P.3d at 539 (holding that the Deed of Trust Act does not provide standalone cause of action for violations of deed of trust act in absence of completed foreclosure sale).  To prevail on a CPA claim, Mr. Knecht was obligated to prove "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact, (4) [an] injury to plaintiff in his or her business or property, [and] (5) causation."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*, 719 P.2d 531, 523 (Wash. 1986).

ORDER – 16

26) Fidelity's failure to send the RCW 61.24.031 letter did not cause Mr. Knecht an injury.  As the court has already found, much of the time and effort Mr. Knecht expended was in an effort to modify his loan, obtain forbearance, or otherwise cure or avoid his default.  To the extent he expended time or money directly responding to foreclosure efforts, the court concludes that Mr. Knecht would have made the same efforts with respect to saving his home from foreclosure regardless of the receipt of an additional RCW 61.24.031 letter.

27) Mr. Knecht is not entitled to damages, and he is not entitled to declaratory or injunctive relief.  To the extent it remained in effect previously, the temporary restraining order that the King County Superior Court issued in this case before its removal is not in effect as of today.

## IV.  CONCLUSION

For the reasons previously stated, the court finds in favor of Defendants on all claims.  The clerk shall enter judgment for Defendants.

DATED this 9th day of June, 2015.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 17